**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **IMPLICIT, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No. 2:18-cv-53-JRG** |
| **v.** | § | **LEAD CASE** |
| | § | |
| **NETSCOUT SYSTEMS, INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF IMPLICIT, LLC'S
REPLY CLAIM CONSTRUCTION BRIEF**

Pursuant to Local P.R. 4-5(c), Plaintiff Implicit, LLC ("Implicit") respectfully submits this Reply Brief addressing issues raised in Defendants' Responsive Claim Construction Brief.

## A.     sequence of [two or more] routines / list of conversion routines[1]

Twice this Court and twice Judge Illston have construed the scope of the Mosberger disclaimer with almost identical language.  Implicit respectfully proposes the same construction. Defendants presume to expand the disclaimer based on the errant (and unsupported) premise that "Implicit is applying the term 'identified' to mean 'selected from pre-configured paths,'[2] which is precisely the claim scope that Implicit disclaimed."  Resp. at 4.  But Implicit took no such position in *PAN* and takes no such position here.  Rather, Defendants manufacture this "dispute" out of thin air as a pretext for the Court to reverse its prior holdings and narrow the claims to nonsense.  And, they expand the Mosberger disclaimer to exclude even the preferred LabelMapGet embodiment that dynamically identifies a sequence of routines based on information in received packets.  '683 Patent at 4:1-6:3, Figs. 1-4; '211 Patent at 7:61-65, 9:4-7, Fig. 8 (step 8-05).  With a straight face, Defendants ask the Court to exclude all "possible arrangements" from dynamic path creation.  This goes to the heart of dynamic path creation.   Four prior courts have limited the Mosberger disclaimer to only the single embodiment that stored pre-configured sequences of routines.  *F5 Networks II,* at 9-12 (citing '211 Patent at 3:34-35, 7:18-8:14).  This Court should do the same.

---

[1] Defendants' Response addresses "list of conversion routines" together with "sequence of [two or more] routines," so Implicit will address these terms in the same manner.  Implicit will meet and confer with Defendants prior to submission of the P.R. 4-5(d) joint claim construction chart to determine whether a separate dispute exists for "list of conversion routines."

[2] Defendants equate "sequence of routines" with "path" and state in note 2 of the Response that "no technical distinction between a path and a sequence of routines is intended."  As seen in the claims, there is a significant difference between the "path" and the "sequence of routines."

*Identified vs. Selected*.  Defendants incorrectly postulate a "disconnect" between the words "identified" and "configured" and imagine that Implicit will "take advantage" of that disconnect. Resp. at 5.  But, Implicit perceives no meaningful distinction between Defendants' use of the word "selected" and the Court's use of the phrase "identified (i.e., configured)."  The Court's construction already forecloses the mere identification or selection of a preconfigured sequence of routines like Mosberger.  Replacing "identified (i.e., configured)" with "selected" does not advance the discussion—one could just as easily select a preconfigured sequence as they could identify it.  The word "identify" or its variants appears over 75 times in the specification. Additionally, almost all Defendants' myriad citations to the file history use "identify" or its variants, often in the same sentence as "selected."  The words "identified," "selected," "determined," or "configured" were not the point of distinction over Mosberger.  The point was that Mosberger *pre*-identified, *pre*-selected, *pre*-determined, and *pre*-configured its paths at "build-time," and Implicit's invention creates the claimed "path" at "run time" based on an identification of information in a received packet of a message.[3]  While slight differences among these words may exist, Defendants fail to advance any meaningful basis to depart from the Court's prior language "identified (i.e. configured)."

*Defendants' Construction Excludes All Possible Arrangements.*  Defendants' construction also fails because it purports to exclude *all* possible arrangements of software routines, whether pre-configured or not.  The relevant inquiry here is not whether an arrangement is possible or could be configured; it is whether an ordered arrangement is sequenced *after* the arrival of one or more

---

[3] In Mosberger, all modules in the "path" are compiled with hard-coded interfaces so that the connections between those modules cannot be changed.  In other words, the components are bound together at build time.  In contrast, the Implicit system's components are *not* bound together at build time, so new configurations of components can be bound and used at runtime.

packets.   Defendants state that "Implicit rhetorically suggests that if the disclaimer eliminates 'selection' from among preconfigured paths, then nothing is left."  Resp. at 4.  This misses the point.  Under Defendants' construction, the claims only cover a software routine that did not exist prior to the arrival of the first packet.  It is impossible for a data packet to arrive at the system and the software routine needed to process that data packet not to exist.  Defendants' construction limits the claims to this impossibility.  Attempting to recover, Defendants provide two examples of what they characterize as dynamic path creation: 1) nailing together routines in ways that were not "coded" by the developer; or 2) downloading a routine.  *Id.* at 4-5.  But Defendants' construction actually excludes these examples as well.  Whether the system configures routines in a different way or downloads a routine, those arrangements were possible prior to first-packet arrival.[4]  Faced with this incoherent result, Defendants will likely take the position at oral argument that their construction means something else.  But if they mean something else, what?  Defendants' proposed construction is incorrect.

*Defendants' Franken-Construction.* Nowhere does the intrinsic record contain Defendants' contorted construction.  While individual words or phrases appear in different statements and in different contexts, Defendants have cobbled together a construction that lacks clarity, results in impossible scenarios, and is internally inconsistent.  Defendants quip that "these words were not confusing to Implicit when it repeatedly used them during prosecution."  Resp. at 10.  But "these words" are not the words Implicit used.  The closest language to Defendants' construction is from the '683 Preliminary Amendment, where the inventor stated: "Rather, Mosberger teaches that

---

[4] Even if a routine was downloaded, the system would have to be configured to download that routine.  No system to date can determine from thin air what component to download.  In fact, the preferred embodiment (LabelMapGet) uses an in-memory cache to determine which sequence of components to use to process a given type of packet.  *E.g.*, '683 Patent at 4:1-6:3, Figs. 1-4.

when a message is received, a path is selected (or 'found' or 'picked') from a set of possible paths, which were created before the message was received." But saying that Mosberger has a finite set of "possible paths" is very different from Defendants' construction, which requires that the sequence of routines (which is not the path) cannot be a previously possible arrangement of software routines that were created prior to packet arrival.[5] A review of the citations confirms that the precise arrangement of words used in Defendants' construction appears nowhere and, when cobbled together in this fashion, results in an incoherent, confusing, internally inconsistent construction that will be virtually impossible for a jury to apply. Implicit respectfully requests that the Court maintain its prior construction.

### B.    state information

Again, Implicit's proposal has been twice adopted by this Court and separately by the Northern District of California. Defendants suggest that the prior Courts lacked evidence from the '163 Patent *inter partes* Reexam. But none of the citations Defendants proffer as evidence of a "clear and unequivocal" disclaimer expressly address whether state information must be maintained for all packets of the message. Instead, Defendants ask the Court to infer the limitation from statements about messages in general. For example, Defendants cite to the '163 Patent *inter partes* Reexam Response to ACP at 13-14, 18, which merely states (1) that all packets are required for a message and (2) that state information may be available for the processing of each packet in the message. But, the statement that "all packets are required for a message" does not concern maintaining state information for all packets; and saying that state information *may be available*

---

[5] Defendants fail to address their proposal's internal inconsistency between possible arrangements that were created. This is yet another example of the confusing nature of Defendants' construction.

for all packets does not disclaim embodiments that do not maintain a state for all packets.  The same is true for statements regarding maintaining a state for the entire duration of a message.

### C.      process / processing . . . packets

Defendants assert that Implicit attempts to rewrite the claims so that subsequent packets are processed by any routine.  Resp. at 28.  Not so.  Implicit's argument is that the claims control which routines are applied.  And those claims are not uniform.  Defendants' rewrite is improper.

Defendants seek to construe a wide variety of claims—with dissimilar language—using the same general construction.  *See* Resp. at 27 n.14 (listing seven additional claim limitations with differing language).  Each of those disparate claims would be construed under Defendants' double-negative gloss untethered to any actual claim language.  Indeed, not all the claims require the same processing construction.  Some claims require "using the sequence of routines indicated in the stored path."  '683 Patent, claim 1.  Other claims require processing packets "using sessions" from a superset of a "sequence of sessions."  *Id.,* claim 10.  Defendants' construction would exclude systems that use different sessions from the superset of sessions, even though that concept appears within the plain claim language.  Thus, Defendants' rewrite should be rejected.

Defendants argue that they are not relying on prosecution history disclaimer.  Nevertheless, they attempt to import limitations from the prosecution history of different patents with different claims, Resp. 28—and do so without attempting to meet the exacting standard of a clear and unmistakable disclaimer.   If Defendants' construction walks and talks like a disclaimer, Defendants should have to prove that it is a disclaimer.  *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016). They did not.

Further, Defendants' concession to replace the imprecise word "avoids" with "does not" underscores that the highlighted prosecution statements are not sufficiently clear and unmistakable

to limit claims of the child '683 patent.  First, "avoids" does not mean "does not"; those words are not synonyms, and they should not be interchanged in a construction.  Second, the "avoids" language in Defendants' construction is divorced from the neighboring permissive "seeks to" language found in their prosecution history "hook," which Defendants ignore.  *See* Doc. No. 89 at Ex. 4 ("the '163 Patent seeks to apply"; "Kerr actively seeks to avoid").  The "seeks" language is not definitional and should not be used to limit or reword the claims.

### D.     the packet of the message

Although this claim term appears in claim 9, the dispute really concerns whether the "path" in Claim 1 must be formed from a single packet or can formed from one or more packets.  Claim 1 recites: "create, based on an identification of information in *a received packet* of a message, a path."  Defendants recognize the general rule that "a" means "one or more" but assert that the context of the claims triggers an exception to that rule.  Resp. at 25.  Specifically, Defendants postulate that, in order to be able to identify the "subsequent packets" that are processed using the path, there must be a single packet that forms the path.  *Id.*  That is incorrect: claims simply require that a set of packets (one or more) are used to create the path and then subsequent packets are processed using the path,  There is no need to limit the packet that creates the path to a *single* packet to know where in the transmission the "subsequent packets" begin.

Defendants' citation to the *Trend Micro* Claim Construction Order does not support its position.  It does not address the issue of whether claim 1's "a packet" must be a single packet or one or more packets.  Nor does the Court's discussion of Claim 8 indicate that "a packet" in Claim 1 must be a single packet.  The Court merely recognized that "the packet" of Claim 9 refers as its antecedent basis to the "a packet" of Claim 1.

It is entirely consistent for "a packet" in independent Claim 1 to mean "one or more packets" and for "the packet" of dependent Claim 9 to refer the "one or more packets" of Claim 1 as its antecedent basis.  Similarly, "the information" in Claim 8 can refer to "information from the one or packets" in Claim 1 without requiring "a packet" to mean a single packet.  Thus, there is nothing in the "structure of the claims," as Defendants urge, that requires the path of Claim 1 to be formed from a single packet.

### E.    "execute a Transmission Control Protocol (TCP)" and related TCP terms

Defendants improperly import two limitations into their proposed construction of a number of claim terms (*see* Doc. No. 89, at 16–17 n. 4 for list of terms): (1) that converting the "format" of a packet requires altering the "the outermost header" of that packet and (2) that, for TCP, executing TCP limits the claims to "endpoints."[6]  The record does not mandate writing these limitations into the claims, and Implicit respectfully requests that the Court reject them.

*Outermost Header.*    The Defendants seek to restrict the term "convert[ing] . . . packets . . . into a different format" to only one type of conversion: converting the "outermost header structure."  Critically, the Defendants do not point to *any* portion of the claims or specification that contains that limitation.  Nor do they argue prosecution history disclaimer—a high bar.  Instead, Defendants rely exclusively on extrinsic evidence and snippets from the prosecution history (predominantly from other patents).  That approach is backwards under *Phillips*.

---

[6] The Defendants' constructions also import the requirements that executing a protocol requires implementing "at least the minimum requirements" in an "RFC" that defines the protocol.  *See, e.g.*, Doc. No. 85-2, at 26 (proposing that "execute TCP" requires a device "to implement at least the minimum requirements of TCP as specified in RFC 793").  Defendants did not address that issue in their Brief, and Implicit will not address that issue in Reply.

The claims themselves show that Defendants' construction is incorrect.  As the Court noted in *PAN*, claim 16 recites "convert packets from an input" while dependent claim 20 limits the claim to one type of conversion: "convert[ing] packets by removing an outermost header of the packets." Doc. No. 93-2, at 26.  The Court reasoned that this difference implied that "'removing' involves modifying the packets rather than merely moving a reference." *Id.*  A predicate to this conclusion is that claim 16 encompasses moving a reference—otherwise there would be no claim differentiation in the Court's analysis.  Indeed, the claims use the terms "outermost header" and "format" separately, and if the patentee wanted to limit converting a "format" to converting the "outermost header," he knew how to do so, as in claim 20. *Invensas Corp. v. Samsung Elecs. Co.*, No. 2:17-CV-00670, 2018 U.S. Dist. LEXIS 184263, at *12 (E.D. Tex. Oct. 26, 2018) ("[T]he Court presumes that different claim terms have different meanings.").

Defendants respond that their construction does not limit the claims to "removing" a header but covers other, hypothetical embodiments, such as "adding an outermost header." Resp., at 14. But the patents do not expressly disclose "adding an outermost header" or "removing an outermost header" as embodiments. *See* Doc. No. 93-2, at 26 ("[T]he specification does not appear to include any relevant usage of 'removing' outside of the claims.").  And, Defendants are attempting to exclude a disclosed embodiment—a highly disfavored result.

The patents disclose using conversion routines that advance a reference pointer without removing, adding, or otherwise altering an outermost header .  '683 Patent at 14:10–14.  To build on the example from the Opening Brief, the reference first points to the Ethernet header (1).



The reference is passed to a first conversion routine. That routine advances the reference to the IP header (2). This converts the packet from Ethernet to IP because the header of interest (or "outermost header" for that routine) has advanced to the IP header. The next conversion routine advances the reference to the TCP header (3), which converts the packet from IP to TCP.

Defendants allege that their construction would read this embodiment out of the Patents because "conversion" of the outermost header, in their view, is limited to removing, adding, or otherwise altering the outermost header itself. There is no evidence in the patent for that assertion. And packet conversion is what the embodiment describes—and it does it via a moving reference.

Weighed against this evidence, Defendants' extrinsic evidence and file history evidence is insufficient to limit the claims. Again, Defendants do not allege disclaimer and come short of meeting the high level of clear and unmistakable disclaimer required to exclude a disclosed embodiment from the claims. At most, Defendants' references indicate that a TCP packet has a TCP header and an IP packet has an IP header. But they do not require removing, altering, or adding an outermost header to convert packet formats. They do not exclude moving a reference.

_Endpoints_. The TCP terms do not limit claims to endpoints. It is undisputed that the term "endpoint" does not appear in the Patents. It is also undisputed that the Patents disclose a "central controller" between source and destination devices. '683 Patent at 1:59–66. It is likewise undisputed that the Patents disclose "edges" of a protocol, in which each edge is the part of the protocol necessary to perform the conversion—and nothing more. _Id._ at 5:32–49. Those edges can be used to configure combinations of incoming and outgoing paths to create an endpoint, proxy, or an in-line system. _See id._ Consistent with that disclosure, the Defendants even agree that at least certain TCP processing (_e.g._, by TCP snooping agents or in-line firewalls that inspect TCP traffic) may be implemented on devices that are not endpoints, such as the media relays and

gateways that Implicit designed.  Resp. at 21.  Thus, while a TCP connection may be between endpoints, the functionality of executing TCP to convert packets having a TCP format into a different format can happen at any device through which packets of the connection flow—not only the endpoints.  Ultimately, whether certain TCP functionality meets this limitation is an issue of fact, not an issue of claim construction.

Indeed, the Court considered the TCP endpoint issue in *PAN* at summary judgment—where it was undisputed that PAN's accused in-line firewalls were not endpoints.  Similar to the Defendants' products, the accused PAN products were alleged to meet the "execut[ing] TCP" limitation because they reassembled TCP packets to convert them to an application-layer data stream (which is above the TCP layer) to inspect the packet data.  Reviewing the same record that Defendants cite here, the Court denied the motion because it was "persuaded that there are still factual disputes that exist as to how the accused products function."  Doc. No. 93-5, at 125.  That outcome applies here: the TCP terms are not limited to endpoints, and whether Defendants "execute" TCP to perform the claimed conversion is a fact question.  Defendants' assert that "the Court did not reach the merits of PAN's arguments at all," Resp. at 20, but that is incorrect.

Defendants (like PAN) heavily rely on the file history of the '683 Patent.  They do not assert disclaimer, and the history that they rely upon does not evidence clear and unmistakable disclaimer.  Decasper teaches a router in which packets are processed at the IP level, with IP headers.  The patentee distinguished the reference on the basis that it did not perform any functionality above the IP level (such as at the TCP level or higher).  While Decasper could *monitor* TCP congestion backoff, that functionality did not *execute* TCP to perform a *conversion* of the packet to another format, such as from TCP to a layer-seven data stream.  That distinction did not limit the claims to endpoints or the header-stripping that Defendants seek to inject into the claims.

Dated: March 14, 2019

Respectfully submitted,

By: /s/ William E. Davis, III
William E. Davis, III, *Lead Attorney*
Texas State Bar No. 24047416
bdavis@bdavisfirm.com
Christian J. Hurt
Texas State Bar No. 24059987
churt@bdavisfirm.com
Edward Chin (Of Counsel)
Texas State Bar No. 50511688
echin@bdavisfirm.com
Debra Coleman (Of Counsel)
Texas State Bar No. 24059595
dcoleman@bdavisfirm.com
**The Davis Firm, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Spencer Hosie, pro hac vice,
CA State Bar No. 101777
Brandon C. Martin, pro hac vice,
CA State Bar No. 269624
Hosie Rice LLP
600 Montgomery St., 34th Floor
San Francisco, CA 94111
415.247.6000
Fax: 415.247.6001
shosie@hosielaw.com
bmartin@hosielaw.com

*Counsel for Plaintiff Implicit, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(V).  Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not

deemed to have consented to electronic service will be served with a true and correct copy of the

foregoing by email on this 14th day of March 2019.

/s/ William E. Davis, III
William E. Davis, III