# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| IMPLICIT, LLC, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 2:18-cv-53-JRG |
| v. | § § | LEAD CASE |
| NETSCOUT SYSTEMS, INC., | § § | JURY TRIAL DEMANDED |
| *Defendant.* | § § | |

**PLAINTIFF IMPLICIT, LLC'S**
**OBJECTIONS TO THE CLAIM CONSTRUCTION OPINION (DKT. 111)**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Civil L.R. 72, Implicit objects to the Court's Claim Construction Opinion and Order (Dkt. 111) ("*Markman* Order"), as outlined below.

### A. "sequence of [two or more] routines"

Twice this Court and twice Judge Illston in the Northern District of California construed these terms from Implicit's Demultiplexing Patent Family using almost identical language that Implicit proposed: "an ordered arrangement of [two or more] software routines that was not identified (i.e., configured) prior to receiving a first packet of a message." *Markman* Order, at 8, 10 (referencing constructions in *Trend Micro*, *Huawei* (by agreement), and *F5 Networks II* cases); *see also Implicit Networks, Inc. v. F5 Networks, Inc.*, No. 3:10-CV-3365, Dkt. No. 93, 2012 U.S. Dist. LEXIS 27238 (N.D. Cal. Feb. 29, 2012) (Illston, J.) ("*F5 Networks I*") (construing parent '163 Patent). Implicit respectfully requests entry of that construction.

The *Markman* Order altered that established construction, replacing the words "identified (i.e., configured) prior to" with "selected from a set of arrangements created before": "an ordered arrangement of [two or more] software routines that was not selected from a set of arrangements created before receiving a first packet of the message." *Markman* Order, at 14. The Order discussed the prosecution history and noted that the "[t]he parties essentially agree as to the substantive effect of the patentee's statements" in the prosecution history." *Id.* at 13. The Order, however, refined the prior construction to "avoid the potential confusion that might arise from the phrase 'identified (i.e., configured)' and to more clearly reflect the patentee's statements" in the prosecution history. *Id.* at 13–14. This refining was unnecessary.

The Order should have conformed to the prior constructions, even though the difference in language does not appear to be one of substance. The construction from the prior cases matched

1

the statements in the Patents and file history, which distinguished prior art systems on the basis that they were pre-configured, as the Court concluded in *Trend Micro*:

> Ultimately, the teachings of the patents regarding the inventions' dynamic-configuration approach, and disparagement of the prior-art static-configuration approach, explain that the sequence of conversion routines that together process the packets "cannot be configured before the first packet of the message is received."

*Trend Micro*, at 18 (collecting citations to file history); *see also id.* at 16–18 (discussing how "[t]he '683 and '790 Patents are directed to dynamic configuration of conversion-processing routines used to process packetized messages into the appropriate forms."); *see also F5 I*, at 6 ("Implicit's Amendment and Response makes clear that what it was disclaiming in the prior art was use of preconfigured sequences of routines, in other words preconfigured paths. . . .") (citations to file history omitted). That language should have been part of the construction.

Defendants proposed different language to try and solidify its noninfringement position. They alleged that "Implicit is applying the term 'identified' to mean 'selected from pre-configured paths,' which is precisely the claim scope that Implicit disclaimed." Resp. at 4. That premise is incorrect. Implicit is not taking that position in this case. And, while Implicit "perceives no meaningful distinction" between the "use of the word 'selected'" and the "use of the phrase 'identified (i.e., configured),'" Reply, at 2, Implicit believes the prior constructions are correct in view of the intrinsic record and should be adopted.

  **B.** **"list of conversion routines"**

As the Court concluded, "[t]he parties have presented substantially the same dispute for the term 'list of conversion routines' as for the term 'sequence of [two or more] routines.'" *Markman* Order, at 15. For the same reasons as outlined in the section above, Implicit objects to the Court's construction of "list of conversion routines" and respectfully requests that the Court

construe the term as "an ordered arrangement of software routines for changing the form of data and that was not identified (i.e., configured) prior to receiving a first packet of a message."

### C.     state information

The *Markman* Order construed the term "state information" as "information that is specific to a software routine for a specific message, ***that can be used for all packets of the message***, and that is not information related to an overall path." *Markman* Order, at 19 (emphasis added). The Order added the language "that can be used for all packets of the message" to multiple prior constructions of this term (which Implicit proposed, and requests entry of here): "information specific to a software routine for a specific message that is not information related to an overall path." *PAN*, at 18–23; *F5 I*, at 13–14.

The intrinsic record does not require the additional language, which is permissive in nature. The file history that the Order reproduces does not mandate adding the "can be used for all packets of the message"—it does not recite that phrase. *Markman* Order, at 19. Nor does the portion of the specification cited in the Order require this language in the construction. *Id.* While the specification states that "the same state or instance information can be used by all packets of the message," '683 Patent, 3:7–9, it does not redefine "state information" or rise the level of a clear definitional statement to import additional language into the "state information" term. *See, e.g.*, *Thorner v. Sony Computer Entertainment of Am., LLC*, 669 F.3d 1362, 1365–66 (Fed. Cir. 2012).

### D.     "convert one or more packets having a TCP format into a different format," and Related Terms and "execute a Transmission Control Protocol (TCP)" and Related Terms

For these terms, the *Markman* Order imports two limitations that Implicit objects to (1) that converting the "format" of a packet requires altering the "the outermost header" of that packet and (2) that, for a number of protocol-related terms, that "executing" a protocol requires

"operat[ing] on one or more packets whose outermost header" is the header for that protocol, *e.g.*, to "execute a TCP" is "operate on one or packets who outermost header is a TCP header." *Markman* Order, at 23–36.  The record does not mandate adding these "outtermost header" limitations, and Implicit respectfully requests that the Court uphold Implicit's objections.

The Order restricts the term "convert[ing] . . . packets . . . into a different format" to only one type of conversion: converting the "outermost header structure."  It similarly limits the "format" of a packet to its "outermost header."  Critically, to reach these conclusions, the Order does not point to any portion of the claims or specification that contains that limitation.  *Markman* Order, at 25–28.  Nor does the Order find prosecution history disclaimer—a high bar.  *See id.*  The Order relies exclusively on extrinsic evidence and parts of the prosecution history (predominantly from other patents) to construe the claims.  *See id.*  That approach is incorrect under *Phillips*.

The claims themselves show that the *Markman* Order is incorrect.  As the Court noted in *PAN*, claim 16 recites "convert packets from an input" while dependent claim 20 limits the claim to one type of conversion: "convert[ing] packets by removing an outermost header of the packets." Doc. No. 93-2, at 26.  The Court reasoned that this difference implied that "'removing' involves modifying the packets rather than merely moving a reference." *Id.*  A predicate to this conclusion is that claim 16 encompasses moving a reference—otherwise there would be no claim differentiation in the Court's analysis.  Indeed, the claims use the terms "outermost header" and "format" separately, and if the patentee wanted to limit converting a "format" to converting the "outermost header," he knew how to do so, as in claim 20.

The construction in the *Markman* Order also does not encompass a disclosed embodiment. *Markman* Order, at 27.  The patents disclose using conversion routines that advance a reference pointer without removing, adding, or otherwise altering an outermost header  '683 Patent at 14:10–

4

14. For example, the reference points to the Ethernet header (1), then advances to the IP header (2), and then advances to the TCP header (3).



Each advance of the pointer converts the packet because the reference has advanced to the next header, from Ethernet, to IP, and then to TCP. Each is the "outermost header" for that routine.

The *Markman* Order concludes that the claims do not cover this embodiment because the preceding sentence states that a conversion routine "'may perform no conversion of the message.'" *Markman* Order, at 27 (quoting '683 Patent, at 14:4–16). But the usage "of *may* perform no conversion" implies that the conversion routine may also perform conversion, as disclosed in detail in the remainder of specification. *E.g.*, '683 Patent, col. 4 ll. 47–49 ("Each edge corresponds to a conversion routine for converting data from one format to another."). Moreover, the embodiment discloses the "advance[ing] the reference" embodiment for "*each* conversion routine," '683 Patent, 14:10–11 (emphasis added), which shows that the reference pointer is passed to conversion routines that, as their name suggests, actually perform conversion. At a minimum, discloses that the "outermost header" can be the header that a reference is pointing to.

In addition, there is no other express disclosure of "converting" in the specification that would be covered by the *Markman* Order, such as "removing," as the Court recognized in the *PAN* case. *See* Doc. No. 93-2, at 26 ("[T]he specification does not appear to include any relevant usage of 'removing' outside of the claims."). Excluding a disclosed embodiment in favor of embodiments that are not expressly disclosed is disfavored. For these reasons, Implicit respectfully requests that the Court sustain Implicit's objections to the *Markman* Order.

5

Dated: April 29, 2019

Respectfully submitted,

By: /s/ Christian Hurt
William E. Davis, III, *Lead Attorney*
Texas State Bar No. 24047416
bdavis@bdavisfirm.com
Christian J. Hurt
Texas State Bar No. 24059987
churt@bdavisfirm.com
Edward Chin (Of Counsel)
Texas State Bar No. 50511688
echin@bdavisfirm.com
Debra Coleman (Of Counsel)
Texas State Bar No. 24059595
dcoleman@bdavisfirm.com
**The Davis Firm, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Counsel for Plaintiff Implicit, LLC*

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(V).  Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email on this 29th day of April 2019.

/s/ Christian Hurt
Christian Hurt