**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 2:18-cv-53-JRG |
| | § | LEAD CASE |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| NETSCOUT SYSTEMS, INC., | § | |
| | § | |
| *Defendant.* | § | |

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 2:18-cv-54-JRG |
| | § | MEMBER CASE |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| SANDVINE CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANTS NETSCOUT SYSTEM, INC. AND SANDVINE CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND ON KEY CLAIM CONSTRUCTIONS ....................................... 1

     A.  "execute a Transmission Control Protocol (TCP)"/"convert one or more packets having
     a TCP format into a different format" and Related Terms ............................... 1

III. SUMMARY JUDGMENT STANDARDS ............................................................. 3

IV.  STATEMENT OF THE ISSUES .......................................................................... 4

V.   STATEMENT OF UNDISPUTED FACTS ("SOF") .......................................... 5

     A.  GeoProbe ........................................................................................................ 5

     B.  InfiniStream ................................................................................................... 7

     C.  Arbor .............................................................................................................. 8

     D.  PacketLogic .................................................................................................. 10

     E.  PTS ................................................................................................................ 12

     F.  NAVL ............................................................................................................ 14

VI.  ARGUMENT ....................................................................................................... 16

VII. CONCLUSION .................................................................................................... 18

## I.   INTRODUCTION

Plaintiff Implicit, LLC ("Implicit")'s theory of infringement directly contradicts the Court's Markman Order. Construction of the claim phrases "execute a Transmission Control Protocol (TCP)" and "convert one or more packets having a TCP format into a different format" was aggressively contested during the claim construction process. Throughout, Defendants NetScout Systems, Inc. ("NetScout") and Sandvine Corporation ("Sandvine") emphasized that a packet's "outermost header" was critical to a correct interpretation. Implicit opposed this construction and insisted that the "header of interest" to a particular routine as identified by a pointer should be encompassed within the Court's construction. Magistrate Judge Payne adopted Defendants' constructions and expressly rejected Implicit's reasoning. Implicit opposed Magistrate Judge Payne's Order, and again insisted that these claim phrases must be understood to include the "header of interest" from the perspective of a processing routine using a pointer. Again the Court rejected Implicit's arguments. Now, rather than adhering to the Court's claim construction guidance, Implicit once again asserts, through its expert Dr. Almeroth, that the asserted claims are infringed because these claim phrases capture the use of pointers by a routine to access a header of interest from the perspective of that routine. This is the same theory that Magistrate Judge Payne and the Court have expressly rejected, twice, as outside the scope of these disputed claim phrases. Because Implicit's infringement theory contradicts the Court's Markman Order, Implicit cannot prove infringement, and the Court should enter summary judgment of non-infringement.

## II.   BACKGROUND ON KEY CLAIM CONSTRUCTIONS

### A.   "execute a Transmission Control Protocol (TCP)"/"convert one or more packets having a TCP format into a different format" and Related Terms

The Court's claim construction analysis of these terms is found at pages 23-36 of Magistrate Judge Payne's Claim Construction Memorandum and Order, Dkt. No. 111.  The Court

construed "execute a Transmission Control Protocol (TCP)" to mean "operate on one or more packets **whose outermost header is a TCP header.**" Dkt. No. 111, at 35 (emphasis added).[1] The Court also construed "convert one or more packets having a TCP format into a different format" to mean "convert the **outermost header structure of the packet(s) from TCP** to another type of header structure." Dkt. No. 111, at 29 (emphasis added). With respect to these phrases, the Court's constructions expressly include the "outermost header" of the packet.

Implicit repeatedly resisted defining its claims in terms of a packet's "outermost header." Implicit favored an approach that considered instead the "header of interest" rather than the "outermost header." Dkt. No. 89, at 17 ("There is no requirement that the header of interest for a particular packet must be the 'outermost' header of the packet."). The Court disagreed. After analyzing Implicit's numerous prosecution history statements on this point, the Court found that "Plaintiff thus evidently understood that the relevant 'format' of a packet is determined by its outermost header." Dkt. No. 111, at 26.

Implicit attempted to support its argument by suggesting that its patents contemplated converting a packet's format by moving a "reference," or pointer, from header to header within a packet independent of the outermost header. Dkt. No. 111, at 27; Dkt. No. 89, at 18 ("By advancing the reference pointer, and not removing the prior headers, the header-of-interest for a conversion routine is not the "outermost" header and thus would not be covered by the Defendants' construction."). The Court disagreed. "To whatever extent Plaintiff contends that the terms 'convert one or more packets having a TCP format into a different format,' 'convert one or more packets in a transport layer format into a different format,' and 'convert packets of the different

---

[1] These constructions are representative of the several related terms the Court construed as a group.

format into another format' encompass merely moving a reference, the Court hereby expressly rejects any such interpretation as lacking support in the record." Dkt. No. 111, at 27.

In its objections to Magistrate Payne's Claim Construction Memorandum and Order, Implicit targeted this exact issue again, arguing "[t]he record does not mandate adding these 'outermost header' limitations." Dkt. 117, at 4. Implicit urged that "the 'outermost header' can be the header that a reference is pointing to" because the reference pointer defines the outermost header of the packet from the perspective of the processing routine: "For example, the reference points to the Ethernet header (1), then advances to the IP header (2), and then advances to the TCP header (3).



Each advance of the pointer converts the packet because the reference has advanced to the next header, from Ethernet, to IP, and then to TCP. **Each is the 'outermost header' for that routine.**" Dkt. 117, at 5. Implicit expressly recognized that this theory was inconsistent with the Court's claim construction: "The Markman Order concludes that the claims do not cover this embodiment." *Id.* And, the Court, in adopting the Claim Construction Memorandum and Order, rejected Implicit's arguments for a second time.

## III.   SUMMARY JUDGMENT STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). "Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial.  *No party may contradict the court's construction to a jury*." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) (emphasis added).

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247– 48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Where, as here, the moving party does not have the ultimate burden of persuasion at trial, the party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Yufa v. TSI, Inc.*, 652 Fed. Appx. 939, 944 (Fed. Cir. 2016) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

## IV.    STATEMENT OF THE ISSUES

1.    Whether NetScout's GeoProbe/ InfiniStream/Arbor products operate on one or more packets whose outermost header is a TCP header.

2.    Whether Sandvine's PacketLogic/PTS/NAVL products operate on one or more packets whose outermost header is a TCP header.

████████████████████████████████████████

3.      Whether NetScout's GeoProbe/ InfiniStream/Arbor products convert the outermost header structure of one or more packets from TCP[2] to another type of header structure.

4.      Whether Sandvine's PacketLogic/PTS/NAVL products convert the outermost header structure of one or more packets from TCP[3] to another type of header structure.

## V.   STATEMENT OF UNDISPUTED FACTS ("SOF")

### A. GeoProbe

1.   ████████████████████████████

████████████████████████████████████████

██████████████████████████  ████████████

██████████████████████████

█   ████████████████████████████

████████████████████████████████████████

████

█   ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

█   ████████████████████████████

██████████████████  █████  ████████████

████████████████████████████████████████

---

[2] Claim 10 of the '683 Patent recites "convert one or more packets in a transport layer format into a different format." Dr. Almeroth only addresses the TCP transport layer format. Ex. 1, Almeroth Report at ¶¶ 144, 146, 148, 181, 188-189, 213, 478-481.

[3] Claim 10 of the '683 Patent recites "convert one or more packets in a transport layer format into a different format." Dr. Almeroth only opines on the TCP transport layer format. Ex. 1, Almeroth Report at ¶¶ 268, 278, 335, 365, 373, 478-481.

██████████████████████████████

6.  ████████████████████████████████

████████████████████████████████████████  ████

████████████████████████████████████████

████████████████

**B.**   **InfiniStream**

7.  ████████████████████████████████

██████████████████████████████████████████

██████████████████████████████  ████████████

██████████████████████████████████████████

████████

■  ████████████████████████████████

████████████████████  ██████████████  ██████████████

██████  ██  ██████  ██████  ██████  ██████  ██  ██████  ██████  ██  ██

██████████████  ██████████  ██████████  ██  ██████████████  ██████████

██████████████████  ██████

■  ████  ██████████  ██████████████████████████

████████████████████████  ████████████████████████

██████████████████████████████████████████

██  ██████████████████████████████████████

██████████████████████████████  ████

■  ████████████████████  ██████████  ████████████

██████████████████████████████████████████

██████████████████



Ex. 4, Jenkins Decl., ¶ 7.

11.

**C.     Arbor**

13.



14.

Ex. 7, Dawson Decl., ¶ 8.



16.

**D.     PacketLogic**

18.

█████████████████████████████████

20.  ███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Ex. 2, Haväng Decl., ¶ 7.

21.  ████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████
██  ██████████████████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

**E.**     **PTS**

23.    ████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██     ████████████████████████████████████

████████████████████████████████████████████████████

██     ████████████████████████████████████

████████████████████████████████████████████████████

█████████████████

██     ████████████████████████████████████

████████████████████████████████████  ██  ██

█████████  ███████████████████████████████████

████████████████████████████████████████████████████

██ ██ ██ █████████  █████████████████████████████

████████████████████████



Ex. 11, Faiczak Decl., ¶ 8.

27. 

**F.**



████████████████████████████████████████████

## VI.    ARGUMENT

Implicit's infringement theory is in direct conflict with the Court's Markman Order.

Implicit does not dispute that ███████████████████████████████████

████████████████████████████████████████████

████SOF 1-35. *See also* Ex. 15, Almeroth Rough Tr., at 109:3-17 ("█████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████."); 99:7-100:2.

Implicit also does not dispute that █████████████████████████████

████████████████████████████████████████████

████████████.  SOF 1-35.  *See also* Ex. 15, Almeroth Rough Tr. at 98:18-24 ████████

████████████████████████████████████████████

██████████████████████████████████████; 49:16-50:13;

112:3-8 (testifying offsets and pointers are equivalent); 112:14-21.

Rather, Implicit contends that when a processing routine uses a pointer or offset to locate

a particular header, that header becomes the outermost header from the perspective of that routine

regardless of the fact that the header structures of the packet have not changed, including the

presence of the lower layer headers (i.e., Ethernet and IP headers).  Dr. Almeroth, plaintiff's

infringement expert, explained the theory during his deposition.  For example, Dr. Almeroth

explained, "when you look at the modules that operate on the data, *the pointers that they use from*

*the perspective of that operating module*, what it's operating on is the outermost header."  *Id.* at



66:4-7.  *See also id.* at 112:9-21

*s.*"); 58:23-59:14

."); 63:1-17 (

"); 60:6-16; 62:14-25; 63:15-25; 70:17-72:8; 72:22-74:19; 89:23-90:21; 96:19-97:7; 108:21-109:17; 111:11-25; 122:12-22 (emphasis added throughout paragraph).

The Court's Markman Order already addressed this pointer-based, processing-routine perspective theory head on and rejected it.  The Court's construction, over Implicit's objection, uses the words "outermost header" to describe a relational characteristic of the header structures – it is the header that is further "out" on the packet than any other header that is on the packet.  Which routine might be using an offset to look at a particular inner header of a packet has no impact on which header is the furthest out on the packet.  The very need for offsets counted from the outermost header of the packet, or pointers, demonstrates that the header that is offset from the outermost header is not, obviously, the outermost header.  Put simply, if there remains a header that is further out on the packet, then the inner header "of interest" is not the outermost header. The only way that an inner header can be called the outermost header is if the term outermost is stripped of its meaning.  Implicit is voiding the meaning of the Court's construction and ignoring the express guidance from the Court about the scope of these claims.

Specifically, Implicit presented this pointer-based, processing-routine perspective argument, *i.e.*, that "[e]ach advance of the pointer converts the packet because the reference has advanced to the next header, from Ethernet, to IP, and then to TCP. **Each is the 'outermost header' for that routine.**" Dkt. 117, at 5. *See also* Dkt. No. 89, at 17 ("There is no requirement that the **header of interest** for a particular packet must be the 'outermost' header of the packet."). Implicit already admitted that this theory was inconsistent with the Court's Markman Order: "The Markman Order concludes that the claims do not cover this embodiment." *Id.* The Court already expressly rejected Implicit's approach:  "To whatever extent Plaintiff contends that the terms "convert one or more packets having a TCP format into a different format," "convert one or more packets in a transport layer format into a different format," and "convert packets of the different format into another format" encompass merely moving a reference, **the Court hereby expressly rejects any such interpretation as lacking support in the record.**" Dkt. 111, at 27 (emphasis added).  The Court has already ruled.  Implicit repeatedly resisted the "outermost header" construction and presented its best arguments to avoid the "outermost header" construction -- twice.  The Court should not allow Implicit to circumvent its Markman Order by presenting to the jury a literal infringement theory that is directly contrary both to the Court's express constructions and the rationale behind those constructions.

## VII.    CONCLUSION

From the outset of this case, Defendants have made clear that the Accused Systems do not operate on any packets that have an outermost header structure that is TCP.  Defendants squarely presented the issue of whether "outermost header" was a requirement of the "execute a Transmission Control Protocol (TCP)" and "convert one or more packets having a TCP format into a different format" claim limitations.  The Court found in the affirmative.  Implicit squarely presented its pointer-based, processing-routine perspective argument.  The Court rejected it, using

the term "outermost header" that cannot now be manipulated to capture the exact theory the Court

already rejected.    The Court should reject this theory as inconsistent with its Markman Order, and

grant summary judgment accordingly.


Dated:  September 30, 2019                 Respectfully submitted,

                                           /s/ *Eric A. Buresh*
                                           Eric A. Buresh (KS Bar 19895)
                                           Mark C. Lang (KS Bar 26185)
                                           **ERISE IP, P.A.**
                                           7015 College Blvd., Suite 700
                                           Overland Park, Kansas 66211
                                           Telephone: (913) 777-5600
                                           Facsimile: (913) 777-5601
                                           eric.buresh@eriseip.com
                                           mark.lang@eriseip.com

                                           Abran J. Kean (CO Bar 44660)
                                           **ERISE IP, P.A.**
                                           5600 Greenwood Plaza Blvd., Suite 200
                                           Greenwood Village, CO 80111
                                           Telephone: (913) 777-5600
                                           abran.kean@eriseip.com

                                           Melissa Smith
                                           Texas State Bar No. 24001351
                                           melissa@gillamsmithlaw.com
                                           **GILLAM & SMITH, L.L.P.**
                                           303 South Washington Avenue
                                           Marshall, Texas 75670
                                           Telephone: 903-934-8450
                                           Facsimile: 903-934-9257

                                           *Counsel for Defendants*
                                           *NetScout Systems, Inc. and*
                                           *Sandvine Corporation*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Plaintiff's counsel of record were served with a true and correct copy of the foregoing document by electronic mail on September 30, 2019.

*/s/ Melissa R. Smith*
Melissa R. Smith