IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| IMPLICIT, LLC,<br>*Plaintiff*,<br><br>v.<br><br>NETSCOUT SYSTEMS, INC.<br>*Defendant.* | Civil Action No. 2:18-cv-00053-JRG<br>LEAD CASE<br><br>JURY TRIAL DEMANDED |
| v.<br><br>SANDVINE CORPORATION.<br>*Defendant.* | Civil Action No. 2:18-cv-00054-JRG<br>MEMBER CASE |

**PLAINTIFF IMPLICIT, LLC'S *DAUBERT* MOTION TO EXCLUDE PORTIONS OF DEFENDANTS NETSCOUT SYSTEMS, INC. AND SANDVINE CORPORATION'S INVALIDITY EXPERT'S REPORT AND TESTIMONY**

REDACTED VERSION OF DOCUMENT

**FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND: THE JEFFAY REPORT AND SOURCE CODE
DESIGNATION .............................................................................................................2

III. APPLICABLE LAW .....................................................................................................4

    A. The Public Use Bar ............................................................................................5

    B. The On-Sale Bar .................................................................................................7

    C. The "Prior Invention" Bar..................................................................................8

    D. Section 103, Public Use, On-Sale, and Prior Invention.....................................9

IV. ARGUMENT................................................................................................................10

V. CONCLUSION.............................................................................................................12

# TABLE OF AUTHORITIES

**Cases** **Page**

*Baskim Holdings, Inc. v. Two M, Inc.*,
    No. 2:16-cv-01898-APG-GWF, 2018 WL 4880758, (D. Nev. Jun. 8, 2018).......................4

*Delano Farms Co. v. Cal. Table Grape Com'n*,
    778 F.3d 1243 (Fed. Cir. 2015).................................................................................6

*Dey, L.P. v. Sunovion Pharmaceuticals, Inc.*,
    715 F.3d 1351, 1355 (Fed. Cir. 2013).................................................................... 5-6

*FMC Techs., Inc. v. OneSubsea IP UK Ltd.*,
    No. H-18-2459, 2019 WL 4647274 (S.D.T.X. Sep. 24, 2019)...........................................8

*Herbert v. Lisle Corp.*,
    99 F. 3d 1109,117 (Fed. Cir. 1996)..........................................................................5

*I.E.E. Int'l Electronics & Engineering, SA v. TK Holdings Inc.*,
    54 F. Supp. 3d 776 (E.D. Mich. 2014)......................................................................11

*In re Caveney*,
    761 F. 2d 671 (Fed. Cir. 1985).........................................................................7, 8, 10

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997)................................................................................5

*Loeffel Steel Products, Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) ..................................................................... 4-5

*Medtronic Inc. v. Edwards Life Sciences Corp.*,
    No. SACV 12-00327-JVS (MLGx),
    2013 WL 12113417 (C.D. Cal. Sep. 17, 2013)..........................................................8

*Palmer v. Dudzik.*,
    481 F.2d 1377, 1386 (C.C.P.A. 1973) ......................................................................9

*Parallel Networks Licensing, LLC v. Int'l Business Machines Corp.*,
    No. 13-2072 (KAJ) 2017 WL 1045912 (D. Del. Feb. 22, 2017)...............................7, 9, 11

*Pronova Biopharma Norge AS v. Teva Pharm. USA, Inc.*,
    549 Fed. App'x 934 (Fed. Cir. 2014).....................................................................7, 11

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860, 866 (Fed. Cir. 2010).........................................................................8

*Schlumberger Tech. Corp. v. Bico Drilling Tools, Inc.*,
   No. H-17-3211, 2019 WL 2450948 (S.D. Tex. June 12, 2019) ...................................... 6, 8

*Sunoco Partners Marketing & Terminals L.P. v. U.S. Venture, Inc.*,
   339 F. Supp. 3d 803 (N.D. Ill. 2018) ................................................................................ 8

*Taurus IP, LLC v. DaimlerChyrsler Corp.*,
   534 F. Supp. 2d 849 (W.D. Wis. 2008) .................................................................. 6, 10, 11

*TPQ Development, LLC v. Intuit, Inc.*,
   No. 2:12-CV-180-WCB, 2014 WL 2809841 (E.D.T.X. Jun. 20, 2014) ....................... 9, 11

*TQP Development, LLC v. 1-800-Flowers.com, Inc.*,
   120 F. Supp. 3d 600 (E.D.T.X. 2015) .......................................................................... 9, 11

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,
   670 F. Supp. 2d 737, 744 (N.D. Ill. 2009) ......................................................................... 5

*W.L. Gore & Associates, Inc. v. Garlock, Inc.*,
   721 F.2d 1540 (Fed. Cir. 1983) ....................................................................................... 10

*Woodland Trust v. Flowertree Nursery, Inc.*,
   148 F.3d 1368, 1371 (Fed. Cir. 1998) ............................................................................... 6

**Statutes**

Federal Rule of Evidence 702 ...................................................................................................... 4
35 U.S.C. § Section 102 ...................................................................................................... passim
35 U.S.C. § Section 103 ......................................................................................................... 5, 9

Plaintiff Implicit, LLC ("Implicit" or "Plaintiff") hereby moves to exclude portions of the August 13, 2019 Opening Expert Report of Dr. Kevin Jeffay Regarding Invalidity of U.S. Patent Nos. 9,694,683, 9,270,790, and 9,591,104 (the "Jeffay Report") that rely on PacketShaper source code and expert testimony that relies on PacketShaper source code.

## I.     INTRODUCTION.

This Motion presents a narrow issue: whether Defendants (and their expert) can rely on secret, third party source code to invalidate the asserted claims. They cannot. The law requires that the relevant portions of an alleged invalidating Section 102 reference be **publicly accessible**, where the purported invalidating activity is that of an unconnected third-party. Here, it is undisputed that the third-party source code upon which Defendants' expert relies is not—and has never been—public, and that the third-party is not connected to the patentee in anyway. For that reason, Plaintiff respectfully requests that the Court grant this Motion and exclude any testimony related to that secret source code.

Dr. Jeffay is Defendants Netscout Systems, Inc.'s and Sandvine Corporation's (collectively "Defendants") invalidity expert. Dr. Jeffay opines that the prior *public use or sale* of a third-party system known as PacketShaper invalidates the asserted claims. To reach this conclusion, Dr. Jeffay relies in large part on the third-party PacketShaper source code. Defendants do not dispute that this third-party source code is secret and has always been secret. For example, the relevant portions of the Jeffay Report are designated "HIGHLY CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY," and Defendants refused to allow Plaintiff's counsel to provide Implicit with Exhibit B of Dr. Jeffay's Report on the basis that its discussion of the PacketShaper source was confidential.

Secret aspects of a third-party's device, however, do not qualify as prior art under Section 102's public use or on-sale bars, absent some connection to the patentee (e.g., the sale benefited the patentee or the product sold was based on an embodiment made by the patentee). Thus, Dr. Jeffay cannot reliably rely on secret third-party source code that is unconnected to Implicit in evaluating whether elements of a claimed invention were dedicated to the public. Because Dr. Jeffay's testimony does not comport with the law, it is not helpful or reliable, and Plaintiff requests that the Court strike those portions of Dr. Jeffay's expert report that rely on secret third-party source code and preclude that testimony at trial. The specific portions that Plaintiff requests the Court strike are identified with blue highlighting in Exhibit 1 to the Declaration of Darrell Rae Atkinson ("Atkinson Dec.").

## II.   FACTUAL BACKGROUND: THE JEFFAY REPORT AND SOURCE CODE DESIGNATION.

On August 13, 2019, Defendants served the Opening Expert Report of Dr. Kevin Jeffay Regarding Invalidity of U.S. Patent Nos. 8,694,683, 9,270,790, and 9,591,104, inclusive of its Exhibits A and B. Exhibit B ("Jeffay Exhibit B") contains both Dr. Jeffay's analysis of the functionality of a purported prior art system known as PacketShaper and his explanation of why that functionality anticipates or renders obvious certain claims of the patents asserted in this case. *See, e.g.,* Atkinson Dec., Ex. 1 (Jeffay Exhibit B) at § I.D & ¶¶ 87, 130, 159. More specifically, Dr. Jeffay opines that ███████████████████ ████████ anticipating or rendering obvious the asserted claims under Sections 102(a), 102(b), and 102(g). *See id.*

Dr. Jeffay's opinions regarding PacketShaper rely on PacketShaper's confidential source code. Dr. Jeffay's factual recitation of how the product operated, including many details of how ████████████████████████████████████, rely on the confidential source code. *See, e.g.,* Jeffay

Exhibit B ¶¶ 14, 23, 25, 30-31, 35, 45-68, 71-72 (all relying on the confidential source code); ¶¶ 8 & 12 (citing to other portions of the report that rely on the confidential source code). That factual recitation includes a number of details relevant to Dr. Jeffay's ultimate opinions, including ███████████████████████████████████████████████████████████████████████████████████████████. *See* Jeffay Exhibit B ¶¶ 12, 23, 30, 45-68 & 71-72 (flow-based processing); ¶¶ 8 & 61-68 (application inspection); ¶¶ 45-60 (format conversion). Dr. Jeffay then relies upon these discussions to conclude that PacketShaper's functionality, as he understands it, meets the limitations of the asserted claims. *See* Jeffay Exhibit B ¶¶ 93-94, 96-98, 100, 101, 102, 105-106, 109-110, 113, 116, 119, 128-129, 136-137, 141, 147, 167-168, 171, 175 & 180.

Defendants do not dispute that the PacketShaper source code is confidential. Exhibit B is designated "HIGHLY CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY." The printouts of the PacketShaper source code are similarly designated "RESTRICTED - ATTORNEYS' EYES ONLY;" "RESTRICTED CONFIDENTIAL SOURCE CODE." *See* Atkinson Dec., ¶ 2. In addition, Defendants' counsel has asserted that the source code is confidential in response to Plaintiff's request to allow its client to review the source code. *See* Jeffay Dep., Sep. 26, 99:19-100:24 (Atkinson Dec., Ex. 2). Dr. Jeffay also testified at his deposition that the source code was obtained from Packeteer's principals and that Dr. Jeffay treated that source code as confidential. *Id.* at 98:21-99:18. Packeteer and PacketShaper were not connected to Implicit in anyway, and Dr. Jeffay does not opine otherwise.

Dr. Jeffay did testify that the source code's functionality could not be determined by observing a functioning PacketShaper device:

███████████████   ███████████████████
███████████████████████████████████████



See id., 101:17-102:5.  Dr. Jeffay also testified that inspection of a PacketShaper device only

"▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."  See id., 101:1-9.

### III. APPLICABLE LAW.

Pursuant to Federal Rule of Evidence 702, "[a] witness who is qualified as an expert … may testify … if … the expert's scientific … knowledge will help the trier of fact to understand the evidence or to determine a fact in issue … and … the expert has reliably applied the principles and methodology to the facts of the case" Fed. R. Evid. 702.  Expert opinion that does not apply the law is unhelpful to the trier of fact, unreliable, and is not admissible under Rule 702.  *See, e.g., Baskim Holdings, Inc. v. Two M, Inc.*, No. 2:16-cv-01898-APG-GWF, 2018 WL 4880758, at *1 (D. Nev. Jun. 8, 2018) ("Because Dr. Carroll's report is incorrect as a matter of law, it is neither **relevant** nor *reliable*.  [citation to *Daubert*.]  It will not help the jury understand the evidence or determine any fact in issue.  Fed. R. Evid 702(a).  Thus, Dr. Carroll's report and his testimony will be excluded at trial") (emphasis added); *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) ("Expert opinions that are contrary to law

are inadmissible. They cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact").[1]

When analyzing third-party prior art, Sections 102 and 103 require that, where the alleged conduct is unconnected to the patentee, that the purported use, sale, or prior invention be made publicly available in order to invalidate. Under 35 U.S.C. § 102 (a) and (b), "[i]f a device was 'known or used by others' in this country before the date of invention or if it was 'in public use' in this country more than one year before the date of application, it qualifies as prior art." *See Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997); 35 U.S.C. § 102 (a) & (b)[2] (the "Public Use Bar"). Under Section 102(b), if a device was "on sale in this country, more than one year prior to the date of the application," it may qualify as prior art. *See* 35 U.S.C. § 102 (b) (the "On-Sale Bar"). And, under Section 102(g), if prior to the patentee's invention "the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed" the invention, the prior invention may qualify as prior art. *See* Section 102(g)(2) (the "Prior Invention Bar"). To determine whether a given device, transaction, or invention actually qualifies under one of these bars, courts consider a variety of circumstances and factors, as set forth below:

### A.    *The Public Use Bar.*

Generally, "[t]o decide whether a prior use constitutes an invalidating 'public use,' [a court] ask[s] 'whether the purported use: (1) was accessible to the public; or (2) was commercially

---

[1] *Cf. Herbert v. Lisle Corp.*, 99 F. 3d 1109,117 (Fed. Cir. 1996) ("We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, but markedly incorrect law") (citation omitted); *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 737, 744 (N.D. Ill. 2009) ("Davis therefore applied a legally incorrect standard for determining damages under CFAA. She has not articulated a sufficient basis for the conclusion … and the court therefore concludes her opinion . . . must be excluded").

[2] Because the patents-in-suit claim the benefit of a patent application filed on December 29, 1999, all citations to Section 102 and 103 herein are to the pre-AIA versions of those statutes.

exploited." *See Dey, L.P. v. Sunovion Pharmaceuticals, Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013) (discussing Section 102(b)).

However, commercial exploitation unconnected to the patentee cannot, and does not, serve as the basis for applying the Public Use Bar. *See Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998) ("Thus an inventor's own prior commercial use, albeit kept secret, may constitute a public use … under § 102(b), barring him from obtaining a patent … [¶] However, when an asserted prior use is not that of the applicant, § 102(b) is not a bar when that prior use or knowledge is not available to the public"); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 534 F. Supp. 2d 849, 876 (W.D. Wis. 2008) ("Although defendants are correct that commercially exploited use is public use even when it is secret, this rule applies only when the use is by the inventor of the patent being challenged"); *but see Schlumberger Tech. Corp. v. Bico Drilling Tools, Inc.*, No. H-17-3211, 2019 WL 2450948, at *10 (S.D. Tex June 12, 2019) (addressing both public accessibility and commercial exploitation as part of a public use analysis *after* holding that the on-sale bar did not apply to third-party sales).

As to whether a purported use was "accessible to the public," courts may consider a variety of factors, including: "'the nature of the activity that occurred in public; the public access to and knowledge of the public use; and whether there was any confidentiality obligation imposed on persons who observed its use.'" *Dey*, 715 F. 3d at 1355. "Such formulations are designed to capture the commonsense notion that whether an **invention** is 'accessible to the public' or 'reasonably…believe[d] [to be] freely available' depends, at least in part, on the degree of confidentiality surrounding its use …". *Id*. (emphasis added). It follows that **"secret or confidential third-party uses do not invalidate later-filed patents**." *Delano Farms Co. v. Cal.*

*Table Grape Com'n*, 778 F.3d 1243, 1247 (Fed. Cir. 2015), citing *Dey*, 715 F. 3d at 1355 (emphasis added).

"Even where a disclosure is unrestricted, it will not be an invalidating public use, unless the patent challenger establishes that **all claimed aspects of the invention** were made public." *See Pronova Biopharma Norge AS v. Teva Pharm. USA, Inc*., 549 Fed. App'x 934, 941 (Fed. Cir. 2014) (emphasis added); *see also id*. at 942 ("Our precedent establishes firmly that **all aspects of the claimed invention must be disclosed** for the § 102(b) public use bar to apply") (emphasis added) (collecting authority).

It follows that where the inner workings of a third-party's device are concealed, and those inner workings are what are alleged to meet some of a patent's claimed limitations, the use of the third-party device cannot be invalidating.  *See id*. at 943 ("Certainly, where only a partial demonstration of a system's (or formulation's) capabilities occurs … or where unsophisticated users are provided a compound with no detail regarding its formulation … there will be no public use"); *Parallel Networks Licensing, LLC v. Int'l Business Machines Corp*., No. 13-2072 (KAJ) 2017 WL 1045912, at *9 (D. Del. Feb. 22, 2017) ("**The fact that IBM obscured the inner workings of its Masters server necessarily means that its website technology was not publicly accessible** … [¶]  I acknowledge that the Masters server was, as a technical matter, accessible to the public.  That is, members of the public were able to submit web requests to the server … But public access to the *server* does not amount to public access to the *invention*") (discussing Section 102(a)) (italics in original; bold added).

### B. The On-Sale Bar.

The On-Sale Bar does not apply where the sale or offer for sale is not connected to the patentee. *See In re Caveney*, 761 F. 2d 671, 675 n.5 (Fed. Cir. 1985) ("a sale prior to the critical

date is a bar if engaged in by the patentee or patent applicant, but not if engaged in by another"); *Medtronic Inc. v. Edwards Life Sciences Corp.*, No. SACV 12-00327-JVS (MLGx), 2013 WL 12113417, at *22 (C.D. Cal. Sep. 17, 2013) ("Dr. Ing's use of rapid pacing cannot implicate the on-sale bar as a matter of law because he was a third party and not the patentee"); *cf. Sunoco Partners Marketing & Terminals L.P. v. U.S. Venture, Inc.*, 339 F. Supp. 3d 803, 839 (N.D. Ill. 2018) ("the on-sale bar still would not apply, because the offers were made by someone other than the patentee, and there is no evidence that these offers publicly disclosed the invention").

Rather, third-party sales are evaluated for whether they trigger the Public Use Bar. *See In re Caveney*, 761 F. 2d at 675 n.5 ("The 'on sale' provision of 35 U.S.C. § 102(b) is directed at precluding an inventor from commercializing his invention for over a year before he files his application. Sales or offers made by others and disclosing the claimed invention implicate the 'public use' provision of 35 U.S.C. § 102(b)"); *ResQNet.com, Inc. v. Lansa, Inc*, 594 F.3d 860, 866 (Fed. Cir. 2010) quoting *Caveney*, 761 F. 2d at 675 n.5; *Medtronic*, 2013 WL 12113417, at *22 ("[T]he Federal Circuit explicitly stated that 'sales or offers made by others and *disclosing* the claimed invention implicate the 'public use' provision of 35 U.S.C. § 102(b)'") (emphasis in original); *Schlumberger Tech.*, 2019 WL 2450948, at *9 (explaining that subsequent decisions did not "change[ ] the Federal Circuit's guidance from *ResQNet.com* and *In re Caveney* that the sales in cases like the instant case should be analyzed under the public use prong"); *but see FMC Techs., Inc. v. OneSubsea IP UK Ltd.*, No. H-18-2459, 2019 WL 4647274, at *3-5 (S.D. Tex. Sep. 24, 2019) (holding, despite the *Caveney* and *ResQNet.com* decisions, that the on-sale bar may result from sales or offers for sale by an unrelated third party).

    C.    **The "Prior Invention" Bar.**

Even assuming that an invention was invented first by another in this county, to qualify as prior art under Section 102(g), the claimed features of the invention must not have been suppressed or concealed. *See TPQ Development, LLC v. Intuit, Inc.*, No. 2:12-CV-180-WCB, 2014 WL 2809841, at *6 (E.D.T.X. Jun. 20, 2014) (J. Bryson) ("[E]vidence does not establish that the aspects of RC4 relevant to the '730 patent's claims were not part of RCA's trade secret during the relevant time") (denying summary judgment on 102(g)). If the claimed features are kept secret, the alleged prior invention does not qualify as prior art. *See id.* ("When the 'inner workings' are the essence of the invention, it is those 'inner workings' that must not be suppressed or concealed in order for the invention to be prior art under section 102(g)").

Additionally, and similar in kind to the inapplicability of the on-sale or commercial exploitation public use bars where the activities are a third-party's, commercialization that does not disclose the invention to the public does not negate the consequence of the invention's suppression or concealment. *See Palmer v. Dudzik*, 481 F.2d 1377, 1386 (C.C.P.A. 1973) ("We do not think that a finding of suppression or concealment is negated merely because a secret use…has been commercial…The public has learned nothing …") (interference context; prior version of the statute).

### D. Section 103, Public Use, On-Sale, and Prior Invention.

Where a reference does not qualify as prior art for being in public use, on sale, or invented prior under Sections 102(a), 102(b) or 102(g), because the relevant features were concealed, the same reference cannot be relied upon as a prior art reference for Section 103 purposes. *See Parallel Networks*, 2017 WL 1045912, at * 12 ("As earlier noted, the 1996 Masters Server operations were hidden form the public, and thus the technology cannot be relied on as a prior art reference [for obviousness purposes]"); *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, 120 F. Supp. 3d

600, 616 (E.D.T.X. 2015) (J. Gilstrap) ("[F]ollowing the line of reasoning discussed in substance above, the jury could have found that RC4 alone is not prior art for obviousness purposes because RC4 alone was a trade secret that was suppressed or concealed"); *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983) ("If claim 1 had not been held anticipated under § 102(a) in light of operation of the 401 machine, it is clear from the discussion here that claim 1 could not properly have been held invalid under § 103").

## IV. ARGUMENT

The Court should strike the paragraphs above that discuss or rely on the **secret** source code. *See* Atkinson Dec., Ex. 1 (highlighting the portions to be stricken). When analyzing third-party prior art, Sections 102 and 103 require that, where the alleged conduct is unconnected to the patentee, that the purported use, sale, or prior invention be made publicly available in order to invalidate. That includes making public each of the claim elements.

Where the alleged conduct is that of a third-party unconnected to the patentee, both the public use and on-sale analyses collapse into a publicly accessibility analysis. *See In re Caveney*, 761 F. 2d at 675 n.5 ("The 'on sale' provision of 35 U.S.C. § 102(b) is directed at precluding an inventor from commercializing his invention for over a year before he files his application. Sales or offers made by others and disclosing the claimed invention implicate the 'public use' provision of 35 U.S.C. § 102(b)"); *Taurus IP*, 534 F. Supp. 2d at 876 ("Although defendants are correct that commercially exploited use is public use even when it is secret, this rule applies only when the use is by the inventor of the patent being challenged"). **In other words, the mere fact that a product was commercialized does not preset a bar. What presents a bar is the public accessibility—the public disclosure—of the invention.** *See* § III(A-B) above.

Public accessibility under Section 102(a) and (b) requires the patent challenger to establish that "***all claimed aspects of the invention*** were made public." *See Pronova*, 549 Fed. App'x at 941; *see also Parallel Networks* 2017 WL 1045912, at *9 ("The fact that IBM obscured the inner workings of its Masters server necessarily means that its website technology was not publicly accessible …."); *1-800-Flowers.com, Inc.*, 120 F. Supp. 3d at 616 (upholding verdict of no public use under Section 102(a) because a reasonable jury could find that the disclosure "did not place the claimed features of the [patent] in the public's possession because key *claimed* features were not displayed/disseminated/discussed") (emphasis in original); § III(A) above.

Section 102(g) similarly requires that claimed features of the invention must not have been suppressed or concealed in order to qualify as prior art. *See Intuit*, 2014 WL 2809841, at *6 ("When the 'inner workings' are the essence of the invention, it is those 'inner workings' that must not be suppressed or concealed in order for the invention to be prior art under section 102(g)"). Commercialization of the invention that does not disclose the invention to the public does not negate the consequences of the alleged prior inventor's suppression/concealment of the invention. *See* § III(C) above.

Here, it is undisputed that the PacketShaper source code was and **remains confidential**, and that its ███████████████████ alleged to invalidate the asserted claims was not publicly disclosed via the sale or operation of the device. *Cf. I.E.E. Int'l Electronics & Engineering, SA v. TK Holdings Inc.*, 54 F. Supp. 3d 776 (E.D. Mich. 2014) ("the documents cited by Defendants tend to ***undercut*** their claim of public use, where the documents state on their face that they are 'private and confidential'") (emphasis in original); *Taurus IP*, 534 F. Supp. 2d at 868 ("It is not clear whether the demo was provided to defendant Chrysler in confidence, but it was produced in this lawsuit as 'Confidential,' suggesting it was not intended

for public disclosure"). Therefore, Dr. Jeffay's discussions, analyses, and opinions related to the PacketShaper source code are irrelevant to a proper Section 102(a), 102(b), and 102(g) analysis, and are unreliable. Dr. Jeffay should be precluded from relying on the PacketShaper source code, and the portions of his Report that do so to the exclusion of other evidence, should be stricken.

Lastly, because PacketShaper confidential source code is not prior art for anticipation purposes under Section 102, Dr. Jeffay's opinions regarding obviousness that are based on the same code are not relevant or helpful to the jury and should also be stricken. *See* § III(D) above.

## V.       CONCLUSION.

For the reasons set forth above, Implicit respectfully requests that this Court strike all portions of Dr. Jeffay's report that rely on the PacketShaper source code and preclude any testimony from Dr. Jeffay that relies on the PacketShaper source code.

Dated September 30, 2019                    Respectfully submitted,

By: */s/ Darrell Rae Atkinson*

Spencer Hosie, *pro hac vice*,
(CA Bar No. 101777)
shosie@hosielaw.com
Diane S. Rice, pro hac vice,
(CA Bar No. 118303)
drice@hosielaw.com
Brandon C. Martin, *pro hac vice*,
(CA Bar No. 269624)
bmartin@hosielaw.com
Darrell Rae Atkinson, *pro hac vice*,
(CA Bar No. 280564)
datkinson@hosielaw.com
Francesca M.S. Germinario, *pro hac vice*,
(CA Bar No. 326208)
fgerminario@hosielaw.com
**HOSIE RICE LLP**
600 Montgomery St., 34th Floor
San Francisco, CA 94111

415.247.6000
Fax: 415.247.6001

William E. Davis, III (TX Bar No. 24047416)
Christian J. Hurt (TX Bar No. 24059987)
Edward Chin (Of Counsel)
(TX Bar No. 50511688)
Debra Coleman (Of Counsel)
(TX Bar No. 24059595)
Ty William Wilson
(TX Bar No. 24106583)
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas  75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
bdavis/churt/echin/dcoleman/twilson@bdavisfirm.com

*Counsel for Plaintiff Implicit, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on this the 30th day of September, 2019. Because the foregoing document is filed under seal, counsel for Plaintiff Implicit, LLC also certifies that an unredacted copy of the foregoing document was served on counsel for Defendants NetScout Systems, Inc. and Sandvine Corporation via email.

*/s/ Darrell Rae Atkinson*
Darrell R. Atkinson

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Plaintiff has complied with the meet and confer requirement in Local Rule CV-7—meeting telephonically with Defendants' counsel on September 27, 2019—and that the accompanying motion remains opposed.

*/s/ Darrell Rae Atkinson*
Darrell R. Atkinson

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case (Dkt. 61).

*/s/ Darrell Rae Atkinson*
Darrell R. Atkinson