# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| IMPLICIT, LLC,<br>*Plaintiff*,<br><br>v.<br><br>NETSCOUT SYSTEMS, INC.<br>*Defendant.* | Civil Action No. 2:18-cv-00053-JRG<br>LEAD CASE<br><br>JURY TRIAL DEMANDED |
| v.<br><br>SANDVINE CORPORATION.<br>*Defendant.* | Civil Action No. 2:18-cv-00054-JRG<br>MEMBER CASE |

**PLAINTIFF IMPLICIT, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

REDACTED VERSION OF DOCUMENT

**FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. STATEMENT OF THE ISSUES TO BE DECIDED..........................................................1

III. STATEMENT OF UNDISPUTED FACTS .......................................................................1

IV. LEGAL STANDARD ..........................................................................................................5

V. ARGUMENT.........................................................................................................................5

    A. The Claims ....................................................................................................................5

    B. Defendants Cannot Show Invalidity Over PacketShaper Without Reference To PacketShaper's Confidential Source Code .........................................................................6

        1. Secret Source Code Is Not Sufficient Under Section 102(a) or (b)'s Public Use Bar ..................................................................................................................7

        2. Secret Source Code Is Not Sufficient Under Section 102(b)'s On-Sale Bar..................................................................................................................9

        3. Secret Source Code Is Not Sufficient Under Section 102(g)'s Prior Invention Bar ........................................................................................................10

VI. CONCLUSION...................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**   **Page**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...............................................................................................................5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...............................................................................................................5

*Dey, L.P. v. Sunovion Pharmaceuticals, Inc.*,
    715 F.3d 1351 (Fed. Cir. 2013) .............................................................................................9

*In re Caveney*,
    761 F. 2d 671 (Fed. Cir. 1985) ........................................................................................9, 10

*Medtronic Inc. v. Edwards Life Sciences Corp.*,
    No. SACV 12-00327-JVS (MLGx), 2013 WL 12113417 (C.D. Cal. Sep. 17, 2013) ..9, 10

*Nike Inc. v. Wolverine World Wide, Inc.*,
    43 F.3d 644 (Fed. Cir. 1994) .................................................................................................5

*Palmer v. Dudzik*,
    481 F.2d 1377 (C.C.P.A. 1973) ..........................................................................................11

*Parallel Networks Licensing, LLC v. Int'l Business Machines Corp.*,
    No. 13-2072 (KAJ), 2017 WL 1045912 (D. Del. Feb. 22, 2017) ) ..............................8, 11

*Pronova Biopharma Norge AS v. Teva Pharm. USA, Inc.*,
    549 Fed. App'x 934 (Fed. Cir. 2014) ...................................................................................8

*ResQNet.com, Inc. v. Lansa, Inc*,
    594 F.3d 860 (Fed. Cir. 2010) .............................................................................................10

*Schlumberger Tech. Corp. v. Bico Drilling Tools, Inc.*,
    No. H-17-3211, 2019 U.S. Dist. LEXIS 98509 (S.D. Tex. June 12, 2019) .......................10

*Sunoco Partners Marketing & Terminals L.P. v. U.S. Venture, Inc.*,
    339 F. Supp. 3d 803 (N.D. Ill. 2018) ...................................................................................9

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    534 F. Supp. 2d 849 (W.D. Wis. 2008) ...............................................................................8

*TQP Development, LLC v. 1-800-Flowers.com, Inc.*,
    120 F. Supp. 3d 600 (E.D. Tex. 2015)................................................................................11

*TPQ Development, LLC v. Intuit, Inc.*,
 No. 2:12-CV-180-WCB, 2014 WL 2809841 (E.D. Tex. Jun. 20, 2014) .......................... 10

*W.L. Gore & Associates, Inc. v. Garlock, Inc.*,
 721 F.2d 1540 (Fed. Cir. 1983) ..................................................................................... 11

*Woodland Trust v. Flowertree Nursery, Inc.*,
 148 F.3d 1368 (Fed. Cir. 1998) ................................................................................ 8, 11

**Statutes**

Federal Rule of Civil Procedure 56(a) ........................................................................................ 5
35 U.S.C. § Section 102 ................................................................................................... *passim*
35 U.S.C. § Section 103 ................................................................................................... *passim*

I.   **INTRODUCTION.**

Implicit LLC ("Implicit" or "Plaintiff") moves for summary judgment that the alleged public use, sale/offer for sale, or prior invention of PacketShaper does not anticipate or render obvious Claims 1 and 10 of U.S. Patent No. 8,694,683 (the "'683 Patent"); Claims 1, 8, and 15 of U.S. Patent No. 9,270,790 (the "'790 Patent"); and Claims 1, 10, and 16 of U.S. Patent No. 9,591,104 (the "'104 Patent").

Here, it is undisputed that the third-party source code upon which Defendants' expert relies to show that the public use, sale or prior invention of PacketShaper meets claim elements 1(b)(iv) and 10(e)(1) of the '683 Patent; 1(b)(iii), 8(b)(iv), and 15(c) of the '790 Patent; and 1(b)(iii), 10(e), and 16(c) of the '104 Patent (together, the "TCP Conversion Elements") is not—and has never been—public. Defendants therefore cannot show that the key claimed features were publicly available before the critical date.

II.   **STATEMENT OF ISSUES TO BE DECIDED**

1.   Whether summary judgment should be granted as to whether the alleged public use, sale/offer for sale, or prior use of PacketShaper does not anticipate or render obvious Claims 1 and 10 of the '683 Patent; Claims 1, 8, and 15 of the '790 Patent; and Claims 1, 10, and 16 of the '104 Patent.

III.   **STATEMENT OF UNDISPUTED FACTS**

On August 13, 2019, Defendants served the Opening Expert Report of Dr. Kevin Jeffay Regarding Invalidity of U.S. Patent Nos. 8,694,683, 9,270,790, and 9,591,104 and Exhibits A and B thereto, (collectively, the "Jeffay Report"). As set forth in Implicit's *Daubert* Motion to Exclude portions of Defendants NetScout Systems, Inc. and Sandvine Corporation's Invalidity Expert's Report and Testimony, Exhibit B to Dr. Jeffay's Report ("Jeffay Exhibit B") contains

both Dr. Jeffay's analysis of the functionality of a purported prior art system known as PacketShaper, and his explanation of why that functionality anticipates or renders obvious certain claims of the patents asserted in this case. *See* Declaration of Brandon C. Martin in Support of Plaintiff's Partial Summary Judgment Motion ("Martin Dec."), Ex. 1 (Jeffay Exhibit B) at § I.D & ¶¶ 87, 130, 159.[1] More specifically, Dr. Jeffay opines that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ anticipating or rendering obvious the asserted claims under Sections 102(a), 102(b), and 102(g). *See id*.

It is undisputed fact that for at least the TCP Conversion Elements in each independent claim of the '683, '790, and '104 Patents, the only evidence Dr. Jeffay puts forth to support his opinion that PacketShaper meets the elements is drawn directly from confidential source code.

Specifically, for element b(iv) of claim 1 of the '683 Patent, which requires, "wherein the sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format," Dr. Jeffay relies exclusively on his analysis of confidential PacketShaper source code. *See* Jeffay Exhibit B ¶¶ 100-102. Specifically, Dr. Jeffay cites only his prior analysis in Section I.C.1 of Jeffay Exhibit B. *See id*. (citing Section I.C.1 and subsections and particular paragraphs therein). With the exception of paragraphs 68-70, no paragraphs in Section I.C.1 of Jeffay Exhibit B cite any supporting evidence other than the confidential PacketShaper Source Code. *See* Jeffay Exhibit B ¶¶ 45-72.

None of paragraphs 68-70 relate to the execution of "a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format." Paragraph

---

[1] Plaintiff's *Daubert* Motion was filed September 30, 2019, the same day as this Motion.

68 relates to purported ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Jeffay Exhibit B ¶ 68.  Paragraphs 69 and 70 relate to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and simply describe that classification at a high level. Jeffay Exhibit B ¶¶ 69-70. Dr. Jeffay's discussion of ▮▮▮▮▮▮▮▮▮ is confined to paragraphs 51 to 57 of his Exhibit B. Jeffay Exhibit B ¶¶ 51-57. Dr. Jeffay's discussion of ▮▮▮▮▮▮▮▮▮ in these paragraphs does not analyze or discuss any evidence at all other than the confidential PacketShaper source code.



The remainder of Dr. Jeffay's analysis of element (b)(iv) of the Claim 1 of the '683 Patent is limited to an assertion that PacketShaper does not practice this element under the Court's claim construction (*see* Jeffay Exhibit B ¶ 99), and an assertion that that to the extent ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," it would be obvious to add such a capability to PacketShaper because—pursuant to Dr. Jeffay's analysis of the confidential source code—"▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *See* Jeffay Exhibit B ¶ 102.

It is undisputed that Dr. Jeffay's analysis of like claim elements in the remaining independent claims of the asserted patents also relies on the confidential PacketShaper source code.

Element (e)(i) of Claim 10 of the '683 Patent requires "a session associated with a transport layer protocol that is executed to convert one or more packets in a transport layer format into a different format." Martin Dec., Ex. 3 ('683 Patent at 15:17-21). For this element, Dr. Jeffay merely cites to his analysis of "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Jeffay Exhibit B ¶ 127.

For claim elements 1(b)(iii), 8(b)(iv), and 15(c) of the '790 Patent, each of which involve execution of TCP, *see* Martin Dec., Ex. 4 ('790 Patent) at 14:29-34, 14:65-15:3, and 16:5-10, it is undisputed that Dr. Jeffay merely states "███████████████████████████████ ███████████████████████." Jeffay Exhibit B ¶¶ 139, 150, 158.

For claim element 1(b)(iii) of the '104 Patent, "[w]ith respect to the claimed 'routine that is used to execute a Transmission Control Protocol (TCP) to process packets having a TCP format,'" Dr. Jeffay relies only on his analysis of "███████████████████████████." Jeffay Exhibit B, ¶ 168. Likewise, for claim elements 10(e), and 16(c) of the '104 Patent, each of which also involve execution of TCP, *see* Martin Dec., Ex. 5 ('104 Patent) at 15:33-37 and 16:19-23, it is undisputed that Dr. Jeffay merely relies on his analysis of element 1(b)(iii) of the '104 Patent. Jeffay Exhibit B, ¶¶ 185 & 193

It is undisputed that the source code relied on in Dr. Jeffay's analysis of claim elements 1(b)(iv) and 10(e)(1) of the '683 Patent; 1(b)(iii), 8(b)(iv), and 15(c) of the '790 Patent; and 1(b)(iii), 10(e), and 16(c) of the '104 Patent is, and has always been, confidential. Jeffay Exhibit B is designated "HIGHLY CONFIDENTIAL SOURCE CODE – ATTORNEY'S EYES ONLY." The printouts of the PacketShaper source code are similarly designated "RESTRICTED - ATTORNEYS' EYES ONLY;" "RESTRICTED CONFIDENTIAL SOURCE CODE." *See* Declaration of Darrell Rae Atkinson in Support of Plaintiff's Daubert Motion (Dkt. 145), ¶ 2. In addition, Defendants' counsel has asserted that the source code is confidential in response to Plaintiff's request to allow its client to review the source code. *See* Jeffay Dep., Sep. 26, 2019 (Martin Dec., Ex. 2), 99:19-100:24.

It is also undisputed that PacketShaper is a third-party device, and that the relevant third-party, Packeteer, is not connected to Implicit. Defendants do not contend that Implicit benefited

from the alleged commercialization of PacketShaper, nor do Defendants contend that PacketShaper was developed from an Implicit device.

## IV. LEGAL STANDARD

Summary judgement is warranted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis original). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The standard for summary judgment in a patent case is no different. *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

## V. ARGUMENT

Summary judgment of no-anticipation or obviousness is appropriate here because there is no genuine dispute that the evidence Dr. Jeffay relies on to find that PacketShaper meets the TCP Conversion Elements of the '683, '790, and '104 Patents was not public.

### A. The Claims

Claim elements 1(b)(iv) of the '683 Patent and Claim elements 1(b)(iii) and 15(c) of the '790 Patent require "wherein the sequence includes a routine that is used to execute a Transmission

Control Protocol (TCP) to convert one or more packets having a TCP format into a different format."

Claim element 10(e)(1) of the '683 Patent requires "convert one or more packets in a transport layer format into a different format."

Claim element 8(b)(iv) of the '790 Patent requires "wherein the sequence includes a routine that is executable to perform a Transmission Control Protocol (TCP) to convert at least one of the packets of the message into a different format."

Claim element 1(b)(iii) of the '104 Patent requires "wherein the sequence includes a routine that is used to execute a Transmission control Protocol (TCP) to process packets having a TCP format."

Claim element 10(e) of the '104 Patent requires "wherein the sequence includes a routine that is used to execute TCP to process at least one of the subsequent packets having a TCP format."

Claim element 16(c) of the '104 Patent requires "wherein the particular sequence includes a routine that is used to execute a Transmission Control Protocol (TCP) to process packets having a TCP format."

### B. Defendants Cannot Show Invalidity Over PacketShaper Without Reference To PacketShaper's Confidential Source Code

It is undisputed that Dr. Jeffay's analysis of why PacketShaper meets the TCP Conversion Elements of the independent claims of the asserted patents relies exclusively on confidential source code for each of these elements. *See, supra*, § III. However, Dr. Jeffay does not state that the confidential source code is in fact prior art. Rather, he opines that the prior *public use or sale of* PacketShaper invalidates the asserted claims. But Dr. Jeffay's testimony is clear that without

access to the confidential source code, one of ordinary skill in the art would not have disclosed the functionality that Dr. Jeffay purports to find in the code.[2]



See Ex. 2 at 101:18-102:5.   Dr. Jeffay's inspection of a PacketShaper device only ███████████████████████████████████████████." See id., 101:1-9.

1. Secret Source Code Is Not Sufficient Under Section 102(a) or (b)'s Public Use Bar

Generally, "[t]o decide whether a prior use constitutes an invalidating 'public use,' [a court] ask[s] 'whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." See Dey, L.P. v. Sunovion Pharmaceuticals, Inc., 715 F.3d 1351, 1355 (Fed. Cir. 2013) (discussing Section 102(b)).

However, commercial exploitation unconnected to the patentee cannot, and does not, serve as the basis for applying the Public Use Bar.  See Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1371 (Fed. Cir. 1998) ("Thus an inventor's own prior commercial use, albeit kept

---

[2] Plaintiff does not agree that the PacketShaper code discloses the claimed limitations of the '683, '790, and '740 Patents.

secret, may constitute a public use … under § 102(b), barring him from obtaining a patent … [¶] However, when an asserted prior use is not that of the applicant, § 102(b) is not a bar when that prior use or knowledge is not available to the public"); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 534 F. Supp. 2d 849, 876 (W.D. Wis. 2008) ("Although defendants are correct that commercially exploited use is public use even when it is secret, this rule applies only when the use is by the inventor of the patent being challenged").

As to whether a purported use was "accessible to the public," the law provides that "[e]ven where a disclosure is unrestricted, it will not be an invalidating public use, unless the patent challenger establishes that **all claimed aspects of the invention** were made public." *See Pronova Biopharma Norge AS v. Teva Pharm. USA, Inc.*, 549 Fed. App'x 934, 941 (Fed. Cir. 2014); *see also id.* at 942 ("Our precedent establishes firmly that **all aspects of the claimed invention must be disclosed** for the § 102(b) public use bar to apply") (emphasis added) (collecting authority).

Where the inner workings of a third-party's device are concealed, and those inner workings are what are alleged to meet some of a patent's claimed limitations, the use of the third-party device cannot be invalidating. *See id.* at 943 ("Certainly, where only a partial demonstration of a system's (or formulation's) capabilities occurs … or where unsophisticated users are provided a compound with no detail regarding its formulation … there will be no public use"); *Parallel Networks Licensing, LLC v. Int'l Business Machines Corp.*, No. 13-2072 (KAJ) 2017 WL 1045912, at *9 (D. Del. Feb. 22, 2017) ("**The fact that IBM obscured the inner workings of its Masters server necessarily means that its website technology was not publicly accessible** … [¶] I acknowledge that the Masters server was, as a technical matter, accessible to the public. That is, members of the public were able to submit web requests to the server … But public access to the *server* does

not amount to public access to the *invention*") (bold emphasis supplied; italicized emphasis original) (discussing Section 102(a)).

Here, Dr. Jeffay relies exclusively on the concealed inner workings of PacketShaper for his opinion that PacketShaper meets the TCP Conversion Elements of the '683, '790, and '104 Patents. But, Dr. Jeffay cannot "sidestep" the undisputed fact that the confidential source code was not publicly accessible. *See Dey*, 715 F. 3d at 1359 ("[U]nder Section 102(b), a court still must decide whether the 'claimed features of the patents [were placed] in the public's possession.' [Citation omitted.] And here, a reasonable jury could conclude that if members of the public are not informed of, and cannot readily discern, the claimed features of the invention in the allegedly invalidating prior art, the public has not been put in possession of those features"). Since Dr. Jeffay's opinion that PacketShaper is invalidating relies on the secret code, his opinion is wrong as a matter of law, and summary judgment on this issue should be granted.

2. <u>Secret Source Code Is Not Sufficient Under Section 102(b)'s On-Sale Bar</u>

Analysis of 102(b)'s On-Sale Bar in this case collapses into the analysis under 102(b)'s Public Use Bar.

The On-Sale Bar does not apply where the sale or offer for sale is not connected to the patentee. *See In re Caveney*, 761 F. 2d 671, 675 & n.5 (Fed. Cir. 1985) ("a sale prior to the critical date is a bar if engaged in by the patentee or patent applicant, but not if engaged in by another"); *Medtronic Inc. v. Edwards Life Sciences Corp.*, No. SACV 12-00327-JVS (MLGx), 2013 WL 12113417, at *22 (C.D. Cal. Sep. 17, 2013) ("Dr. Ing's use of rapid pacing cannot implicate the on-sale bar as a matter of law because he was a third party and not the patentee"); *cf. Sunoco Partners Marketing & Terminals L.P. v. U.S. Venture, Inc.*, 339 F. Supp. 3d 803, 839 (N.D. Ill.

2018) ("the on-sale bar still would not apply, because the offers were made by someone other than the patentee, and there is no evidence that these offers publicly disclosed the invention").

Rather, third-party sales are evaluated for whether they trigger the Public Use Bar. *See In re Caveney*, 761 F. 2d at 676 n.5 ("The 'on sale' provision of 35 U.S.C. § 102(b) is directed at precluding an inventor from commercializing his invention for over a year before he files his application. Sales or offers made by others and disclosing the claimed invention implicate the 'public use' provision of 35 U.S.C. § 102(b)"); *Medtronic*, 2013 WL 12113417, at *22 ("[T]he Federal Circuit explicitly stated that '[s]ales or offers made by others and *disclosing* the claimed invention implicate the "public use" provision of 35 U.S.C. § 102(b)'") (emphasis in original). [3]

### 3. Secret Source Code Is Not Sufficient Under Section 102(g)'s Prior Invention Bar

Even assuming that an invention was invented first by another in this county, to qualify as prior art under Section 102(g), the claimed features of the invention must not have been suppressed or concealed. *See TPQ Development, LLC v. Intuit, Inc.*, No. 2:12-CV-180-WCB, 2014 WL 2809841, at *6 (E.D. Tex. Jun. 20, 2014) (J. Bryson) ("[E]vidence does not establish that the aspects of RC4 relevant to the '730 patent's claims were not part of RCA's trade secret during the relevant time") (denying summary judgment on 102(g)). If the claimed features are kept secret, the alleged prior invention does not qualify as prior art. *See id.* ("When the 'inner workings' are the essence of the invention, it is those 'inner workings' that must not be suppressed or concealed

---

[3] "Sales or offers made by others and disclosing the claimed invention implicate the 'public use' provision of 35 U.S.C. § 102(b)." *ResQNet.com, Inc. v. Lansa, Inc*, 594 F.3d 860, 866 (Fed. Cir. 2010) (quoting *Caveney*, 761 F. 2d at 675 n.5); *see also Schlumberger Tech. Corp. v. BICO Drilling Tools, Inc.,* No. CV H-17-3211, 2019 WL 2450948, at *9 (S.D. Tex. June 12, 2019) (explaining that subsequent decisions did not "change[ ] the Federal Circuit's guidance from *ResQNet.com* and *In re Caveney* that the sales in cases like the instant case should be analyzed under the public use prong").

in order for the invention to be prior art under section 102(g)"). Commercialization of the invention that does not disclose the invention to the public cannot negate the consequences of the alleged prior inventor's suppression/concealment of the invention. *See Palmer v. Dudzik*, 481 F.2d 1377, 1386 (C.C.P.A. 1973) ("We do not think that a finding of suppression or concealment is negated merely because a secret use…has been commercial…The public has learned nothing …") (interference context; prior version of the statute).

Again, Dr. Jeffay relies exclusively on the inner workings of PacketShaper that were "concealed" and are still confidential for his opinion that PacketShaper meets the TCP Conversion Elements of the '683, '790, and '104 Patents.[4]

## VI. CONCLUSION

For all of the foregoing reasons, the Court should grant summary judgment that the alleged public use, sale/offer for sale or prior invention of PacketShaper does not anticipate or render obvious Claims 1 and 10 of the '683 Patent; Claims 1, 8, and 15 of the '790 Patent; and Claims 1, 10, and 16 of the '104 Patent.

Dated September 30, 2019           Respectfully submitted,

By: */s/ Brandon C. Martin*
Spencer Hosie, *pro hac vice*,
(CA Bar No. 101777)

---

[4] The analysis is the same for Section 103. *See Parallel Networks*, 2017 WL 1045912, at * 12 ("As earlier noted, the 1996 Masters Server operations were hidden form the public, and thus the technology cannot be relied on as a prior art reference [for obviousness purposes]"); *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, 120 F. Supp. 3d 600, 616 (E.D. Tex. 2015) (J. Gilstrap) ("following the line of reasoning discussed in substance above, the jury could have found that RC4 alone is not prior art for obviousness purposes because RC4 alone was a trade secret that was suppressed or concealed"); *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983) ("If claim 1 had not been held anticipated under § 102(a) in light of operation of the 401 machine, it is clear from the discussion here that claim 1 could not properly have been held invalid under § 103").

shosie@hosielaw.com
Diane S. Rice, pro hac vice,
(CA Bar No. 118303)
drice@hosielaw.com
Brandon C. Martin, *pro hac vice*,
(CA Bar No. 269624)
bmartin@hosielaw.com
Darrell Rae Atkinson, *pro hac vice*,
(CA Bar No. 280564)
datkinson@hosielaw.com
Francesca M.S. Germinario, *pro hac vice*,
(CA Bar No. 326208)
fgerminario@hosielaw.com
**HOSIE RICE LLP**
600 Montgomery St., 34th Floor
San Francisco, CA 94111
415.247.6000
Fax: 415.247.6001

William E. Davis, III (TX Bar No. 24047416)
Christian J. Hurt (TX Bar No. 24059987)
Edward Chin (Of Counsel)
(TX Bar No. 50511688)
Debra Coleman (Of Counsel)
(TX Bar No. 24059595)
Ty William Wilson
(TX Bar No. 24106583)
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas  75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
bdavis/churt/echin/dcoleman/twilson@bdavisfirm.com

*Counsel for Plaintiff Implicit, LLC*

---

### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on this the 30th day of September, 2019. Because the foregoing document is filed under seal, counsel for Plaintiff Implicit, LLC also

certifies that an unredacted copy of the foregoing document was served on counsel for Defendants Netscout Systems, Inc. and Sandvine Corporation via email.

*/s/ Brandon C. Martin*
Brandon C. Martin

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case (Dkt. 61). I further certify that Defendants do not oppose the filing of this motion under seal.

*/s/ Brandon C. Martin*
Brandon C. Martin
