IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IMPLICIT, LLC, | § § | |
| *Plaintiff,* | § § | Civil Action No. 2:18-cv-53-JRG |
| | § | LEAD CASE |
| v. | § § | JURY TRIAL DEMANDED |
| NETSCOUT SYSTEMS, INC., | § § | |
| *Defendant.* | § § | |

**DEFENDANT SANDVINE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO LIABILTIY RELATING TO PRODUCTS SOLD BY PROCERA NETWORKS, INC. PRIOR TO SEPTEMBER 2017**

**I.   INTRODUCTION**

Defendant Sandvine Corporation ("Sandvine") and third party Procera Networks, Inc. ("PNI") had no corporate relationship prior to September 2017. In fact, they were competitors. Plaintiff, Implicit, LLC ("Implicit") now seeks to hold Sandvine liable for PNI's sales of Accused PNI Products on the basis of an abrogated legal theory and/or a legal theory that cannot apply before the parties had any corporate relationship. The Court should grant summary judgment in Sandvine's favor as it relates to the sale of Accused PNI Products prior to September 2017.[1]

**II.   STATEMENT OF THE ISSUES**

1. Whether Sandvine can be liable under the doctrine of single business enterprise for an affiliated company's (*i.e.*, PNI) conduct prior to the time an affiliation came into existence.

2. Whether Sandvine can be liable under the doctrine of alter ego liability for an

---

[1] Sandvine incorporates by reference the legal standards set forth in its concurrently filed Motion for Summary Judgment of Non-Infringement. Any legal standards relating to the issues pertinent to this particular Motion will be recited in the Argument section.

1

affiliated company's (*i.e.*, PNI) conduct prior to the time an affiliation came into existence.

### III. STATEMENT OF UNDISPUTED FACTS ("SOF")

1.  Sandvine is a corporation organized under the laws of Canada. Dkt. 87 (Sandvine Answer), ¶ 3.

2.  In September 2017, Sandvine was acquired by PNI Canada Acquireco Corp., which is an affiliate of PNI. Dkt. 87 (Sandvine Answer), ¶ 40; Ex. 1, Deggs 7/31/19 Dep. Tr. at 128:17-22; Ex. 2, Deggs 7/31/19 Dep. Ex. 18.

3.  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■; Ex. 4, Deggs 5/16/19 Dep. Tr. at 19-25.

4.  Prior to September 2017, Sandvine and PNI did not have any relationship. Ex. 5, Cantor Dep. Tr. at 139:5-140:9.

5.  Only PNI, or affiliated company, ever sold the accused NAVL and PacketLogic products ("Accused PNI Products") prior to September 2017.[2] Ex. 6, Declaration of Kevin Matrosovs, ¶ 5, Ex. 7, Matrosovs Dep. Tr. at 12:4-14.

6.  Implicit alleges that Sandvine is liable for PNI's conduct under the doctrine of single business enterprise only because Sandvine and PNI allegedly "hold[] themselves out as a 'combined company' and 'one Sandvine team' and by combining their websites … acted as one and have integrated their resources to achieve a common business purpose." Dkt. 82, ¶ 43.

7.  Implicit alleges that Sandvine is liable for PNI's conduct under the doctrine of alter

---

[2] Sandvine maintains that it still does not participate in the sale of any Accused PNI Products and intends to dispute that it is liable for any sales of the Accused PNI Products. But Sandvine is not seeking summary judgment as to sales of the Accused PNI Products after Sandvine and PNI became affiliated in September 2017.

ego only because Sandvine and PNI allegedly "hold[] themselves out as a 'combined company' and 'one Sandvine team' and by combining their websites … have blended identities or blurred the formal and substantive lines of distinction between them." Dkt. 82, ¶ 44.

## IV. ARGUMENT

Sandvine had no corporate relationship whatsoever with PNI prior to September 2017. Each theory[3] by which Implicit seeks to impose liability on Sandvine for PNI's conduct cannot apply to sales activities prior to the time of at least some minimal affiliation between the parties. Even under Implicit's theories, there is simply no basis in law or fact to hold Sandvine liable for PNI's conduct prior to the time the two companies became affiliated. Indeed, Implicit's allegations are all based on conduct after Sandvine and PNI became affiliated in September 2017. Summary judgment in Sandvine's favor as to damages based on any sales of PNI's PacketLogic and NAVL products prior to September 2017, therefore, is appropriate.

> **A. Sandvine cannot be liable for sales of Accused PNI Products prior to September 2017 under the doctrine of single business enterprise.**

Sandvine is entitled to summary judgment under Implicit's "single business enterprise" theory because, in the first instance, the Texas Supreme Court abrogated the single business enterprise theory. *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 456 (Tex. 2008)); Dkt. 82, ¶43.[4] The Fifth Circuit and the Eastern District have also recognized the abrogation of this theory. *See Acceptance Indem. Ins. Co. v. Maltez,* No. 08-20288, 2009 WL 2748201, at *5 (5th Cir. June 30, 2009) (noting that single-business-enterprise liability has been

---

[3] Because both theories are not unique to patent law, the law of the regional circuit is to be applied. *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007).

[4] Specifically, the *SSP* Court held that "the single business enterprise liability theory set out in *Paramount Petroleum* will not support the imposition of one corporation's obligations on another." *SSP Partners,* 275 S.W.3d at 456.

disavowed); *Taylor v. Tai-Ao Aluminum USA, Inc.*, No. 6:08-CV-77, 2009 WL 10677717, at *2 (E.D. Tex. Jan. 29, 2009) (citing *SSP Partners*)). Sandvine is entitled to the requested summary judgment on Implicit's single business enterprise theory for this reason alone.

Even if the Court were to entertain such a theory, Sandvine is entitled to the requested summary judgment because liability cannot attach to Sandvine for PNI's conduct prior to the time it became affiliated with Sandvine. Before the doctrine of single business enterprise was abrogated by the Texas Supreme Court, it required that there be a "common business purpose." Specifically, the doctrine allowed that "when corporations are not operated as separate entities, but ***integrate their resources to achieve a common business purpose***, each constituent corporation may be held liable for the debts incurred ***in pursuit of that business purpose***." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999) (affirming grant of summary judgment denying liability under alter ego and single business enterprise doctrines) (emphasis added). This is not the case here. Under Implicit's own allegations, there is no genuine dispute that Sandvine and PNI did not have a "common business purpose" prior to the time they became affiliate companies and purportedly "[held] themselves out as a 'combined company' and 'one Sandvine team' and by combining their websites." Implicit cannot, therefore, impose liability on Sandvine for PNI's conduct for a time period during which the two entities did not have a "common business purpose." It is undisputed that any relationship that could even be arguably be said to exist between Sandvine and PNI did not occur until September 2017. Thus, Sandvine is entitled to the requested summary judgment for this additional reason.

**B. Sandvine cannot be liable for sales of Accused PNI Products prior to September 2017 under the doctrine of alter ego.**

The fact that Sandvine and Implicit did not have any relationship prior to September 2017 is also dispositive as to liability during that timeframe under an alter ego theory. "Under Texas

4

law, the alter ego doctrine allows the imposition of liability of a corporation for the acts of another corporation when the ***subject corporation is organized or operated as a mere tool or business conduit***." *Nichols v. Pabtex, Inc.*, 151 F. Supp. 2d 772, 780 (E.D. Tex. 2001) (emphasis added). This is demonstrated "by evidence showing a blending of identities, or a blurring of lines of distinction, both formal and substantive, between two corporations." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999). There is no factual evidence in this case to support the notion that Sandvine was a "mere tool or business conduit" for the sale of the Accused PNI Products prior to September 2017. For example, there are no allegations, much less evidence "showing a blending of identities, or a blurring of lines of distinction, both formal and substantive, between two corporations" ***prior to the time Sandvine and PNI became affiliated***. Moreover, there is no evidence that Sandvine is underfunded or undercapitalized such that it was being used as a "conduit or business tool" for the sale of the Accused PNI Products prior to the time that Sandvine and PNI became affiliated. *Gardemal*, 186 F.3d at 593. In the absence of any such evidence, summary judgment in favor of Sandvine with respect to sales of PNI's PacketLogic and NAVL product lines in the time period prior to September 2017 is appropriate.

## V. CONCLUSION

Based on the foregoing, Sandvine respectfully requests that the Court enter partial summary judgment in its favor finding that it is not liable for sales of Accused PNI Products, specifically PacketLogic and NAVL product lines, prior to September 2017.

Date: September 30, 2019	Respectfully submitted:

*/s/ Eric A. Buresh*
Eric A. Buresh (KS Bar 19895)
Mark C. Lang (KS Bar 26185)
ERISE IP, P.A.
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Phone: (913) 777-5600
Facsimile: (913) 777-5601
eric.buresh@eriseip.com
mark.lang@eriseip.com

Abran J. Kean (CO Bar 44660)
ERISE IP, P.A.
5600 Greenwood Plaza Blvd., Suite 200
Greenwood Village, CO 80111
Phone: (913) 777-5600
abran.kean@eriseip.com

Melissa Smith
TX State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

*Attorneys for Sandvine Corporation*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Plaintiff's counsel of record were served with a true and correct copy of the foregoing document by electronic mail on September 30, 2019.

*/s/ Melissa R. Smith*
Melissa R. Smith