# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| IMPLICIT, LLC, | § § | |
| *Plaintiff,* | § § | Civil Action No. 2:18-cv-53-JRG |
| v. | § § | LEAD CASE |
| NETSCOUT SYSTEMS, INC., | § § | JURY TRIAL DEMANDED |
| *Defendant.* | § § § | |

| | | |
|---|---|---|
| IMPLICIT, LLC, | § § | |
| *Plaintiff,* | § § | Civil Action No. 2:18-cv-54-JRG |
| v. | § § | MEMBER CASE |
| SANDVINE CORPORATION, | § § | JURY TRIAL DEMANDED |
| *Defendant.* | § § § | |

**DEFENDANTS NETSCOUT SYSTEM, INC. AND SANDVINE CORPORATION'S MOTION TO EXCLUDE PORTIONS OF DR. KEVIN C. ALMEROTH'S OPINIONS REGARDING INFRINGEMENT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  LAW APPLICABLE TO EXPERT TESTIMONY ........................................................... 1

III. ARGUMENT ..................................................................................................................... 2

   A. Dr. Almeroth's Tesimony Relies On Rejected Constructions Of "execute a Transmission Control Protocol (TCP)"/"convert one or more packets having a TCP format into a different format" and Related Terms ................................................................................ 2

IV.  CONCLUSION ................................................................................................................. 6

## I. INTRODUCTION

The opinions from Implicit's technical expert, Dr. Kevin Almeroth, are contrary to the express claim constructions provided by this court and may not be presented to a jury. For purposes of additional content, Defendants direct the Court to their contemporaneously filed motion for summary judgment of non-infringement, which addresses related issues under the summary judgment standards.

## II. LAW APPLICABLE TO EXPERT TESTIMONY

When a court has construed patent terms, "[i]t is well settled that an expert can offer an opinion on how a court's claim construction should be applied to the facts of the case, but cannot offer an opinion that contradicts or disregards a court's claim construction rulings." *In re Maxim Integrated Prod., Inc.*, No. 12-244, 2015 WL 5311264, at *4 (W.D. Pa. Sept. 11, 2015); *Personalized User Model, L.L.P. v. Google Inc.*, No. CV 09-525-LPS, 2014 WL 807736, at *1 (D. Del. Feb. 27, 2014) ("As expert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact, all of these portions of [the expert's] non-infringement report are stricken."). "Once a district court has construed the relevant claim terms . . . then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). If the Court determines that an expert's testimony is based on an "incorrect understanding of the claim construction," the Court "must disregard the testimony." *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011); *see also 523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 648-49 (S.D.N.Y. 2014) (excluding expert's testimony under Daubert because opinions "rely on a claim construction other than the Court's") (citing *Medisim Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 171 (S.D.N.Y. 2012)); *Viva Healthcare Packaging USA Inc. v. CTL Packaging*

*USA Inc.*, 197 F. Supp. 3d 837, 852 (W.D.N.C. 2016) ("The court will not allow expert testimony . . . that conflicts with the court's findings.").

### III. ARGUMENT

#### A. Dr. Almeroth's Tesimony Relies On Rejected Constructions Of "execute a Transmission Control Protocol (TCP)"/"convert one or more packets having a TCP format into a different format" and Related Terms

The Court's claim construction analysis of these terms is found at pages 23-36 of Magistrate Judge Payne's Claim Construction Memorandum and Order, Dkt. No. 111. The Court construed "execute a Transmission Control Protocol (TCP)" to mean "operate on one or more packets **whose outermost header is a TCP header.**" Dkt. No. 111, at 35 (emphasis added).[1] The Court also construed "convert one or more packets having a TCP format into a different format" to mean "convert the **outermost header structure of the packet(s) from TCP** to another type of header structure." *Id.* at 29 (emphasis added). With respect to these phrases, the Court's constructions expressly include the "outermost header" of the packet.

Implicit repeatedly resisted defining its claims in terms of a packet's "outermost header" and instead favored an approach that considered the "header of interest" rather than the "outermost header." Dkt. No. 89, at 17 ("There is no requirement that the header of interest for a particular packet must be the 'outermost' header of the packet."). The Court disagreed. After analyzing Implicit's numerous prosecution history statements on this point, the Court found that "Plaintiff thus evidently understood that the relevant 'format' of a packet is determined by its outermost header." Dkt. No. 111, at 26.

Implicit attempted to support its argument by suggesting that its patents contemplated converting a packet's format by moving a "reference," or pointer, from header to header within a

---

[1] These constructions are representative of the several related terms the Court construed as a group.

packet independent of the outermost header. Dkt. No. 111, at 27; Dkt. No. 89, at 18 ("By advancing the reference pointer, and not removing the prior headers, the header-of-interest for a conversion routine is not the "outermost" header and thus would not be covered by the Defendants' construction."). The Court disagreed. "To whatever extent Plaintiff contends that the terms 'convert one or more packets having a TCP format into a different format,' 'convert one or more packets in a transport layer format into a different format,' and 'convert packets of the different format into another format' encompass merely moving a reference, the Court hereby expressly rejects any such interpretation as lacking support in the record." Dkt. No. 111, at 27.

In its objections to Magistrate Payne's Claim Construction Memorandum and Order, Implicit targeted this exact issue again, arguing "[t]he record does not mandate adding these 'outermost header' limitations." Dkt. 117, at 4. Implicit urged that "the 'outermost header' can be the header that a reference is pointing to" because the a reference pointer defines the outermost header of the packet from the perspective of the processing routine: "For example, the reference points to the Ethernet header (1), then advances to the IP header (2), and then advances to the TCP header (3).



Each advance of the pointer converts the packet because the reference has advanced to the next header, from Ethernet, to IP, and then to TCP. **Each is the 'outermost header' for that routine.**" Dkt. 117, at 5. Implicit expressly recognized this theory was inconsistent with the Court's claim construction by asserting that the "Markman Order concludes that the claims do not cover this

embodiment." *Id.* And, the Court, in adopting the Claim Construction Memorandum and Order, rejected Implicit's arguments for a second time.

Here, Dr. Almeroth offers testimony in support of Implicit's infringement theory that directly contradicts the Court's Markman Order. Implicit does not dispute that the packets that are operated on by the Accused Products are "full packets" that include lower layer headers (*e.g.*, the layer 2 Ethernet header and the layer 3 IP header). Ex. 1, Almeroth Rough Tr. at 109:3-17 ("So while there are portions of the PTSD that can operate on a full packet, when you're doing the things that I've identified as relating to executing TCP, what you're operating on is a portion of the packet data that represents the TCP header, and then the payload of the TCP packet. . . . Usually when I'm referring to a full packet, it's from the perspective of being able to see all of the headers of the packet as compared to a portion of that packet which you might only be visible based on a pointer to some internal header **that becomes the outermost header as represented by the pointer**.") (emphasis added); 99:7-100:2. Dr. Almeroth's testimony and his opinion on this topic is the same theory this Court expressly rejected in its Markman Order. Dkt. No. 111, at 27.

Dr. Almeroth explained his infringement theory in his deposition: "[W]hen you look at the modules that operate on the data, *the pointers that they use from the perspective of that operating module*, what it's operating on is the outermost header." Ex. 1, Almeroth Rough Tr. at 66:4-7; s*ee also id.* at 112:9-21 ("[H]aving looked at the particular accused products and the way that they do the L4 processing of the TCP header, they are passed pointers or offsets that allow you to identify a pointer of -- *the first header from the perspective of the pointer*, what the pointer points to, and that's the header that it operates on, *that's the outermost header as to what that pointer points to when it does that analysis*."); 58:23-59:14 ("the operation of the source code is that *it's operating at a pointer location from the perspective of that processing module it's operating on a header that is the header on which it's supposed to operate, the outermost header from the perspective of that*

4

*pointer*, and the way that it's executing."); 63:1-17 ("the fact that there's other pointers that can point to other portions of that packet doesn't change the opinion that *from the perspective of the processing module that I've identified here that TCP is the outermost header*."); 60:6-16; 62:14-25; 63:15-25; 70:17-72:8; 72:22-74:19; 89:23-90:21; 96:19-97:7; 108:21-109:17; 111:11-25; 122:12-22 (emphasis added throughout paragraph); Ex. 2, Almeroth Report at ¶¶ 144, 146, 148, 181, 188-189, 213, 478-481 (as to NetScout); 268, 278, 335, 365, 373, 478-481 (as to Sandvine).

The Court's Markman Order already addressed this pointer-based, processing-routine perspective theory head on and rejected it. The Court's construction, over Implicit's objection, uses the words "outermost header" to describe a relational characteristic of the header structures – it is the header that is further "out" on the packet than any other header that is on the packet. Which routine might be using an offset to look at a particular inner header of a packet has no impact on which header is the furthest out on the packet. The very need for offsets counted from the outermost header of the packet, or pointers, demonstrates that the header that is offset from the outermost header is not, obviously, the outermost header. Put simply, if there remains a header that is further out on the packet, then the inner header "of interest" is not the outermost header. The only way that an inner header can be called the outermost header is if the term outermost is stripped of its meaning. Implicit is voiding the meaning of the Court's construction and ignoring the express guidance from the Court about the scope of these claims.

Specifically, Implicit presented this pointer-based, processing-routine perspective argument, *i.e.*, that "[e]ach advance of the pointer converts the packet because the reference has advanced to the next header, from Ethernet, to IP, and then to TCP. **Each is the 'outermost header' for that routine.**" Dkt. 117, at 5. *See also* Dkt. No. 89, at 17 ("There is no requirement that the **header of interest** for a particular packet must be the 'outermost' header of the packet."). Implicit already admitted that this theory was inconsistent with the Court's Markman Order: "The

5

Markman Order concludes that the claims do not cover this embodiment." *Id.* The Court has been clear in its rejection of Implicit's approach: "To whatever extent Plaintiff contends that the terms "convert one or more packets having a TCP format into a different format," "convert one or more packets in a transport layer format into a different format," and "convert packets of the different format into another format" encompass merely moving a reference, **the Court hereby expressly rejects any such interpretation as lacking support in the record.**" Dkt. 111, at 27 (emphasis added). The Court has already ruled. The Court should not allow Implicit to circumvent the Court's Markman Order by presenting to the jury expert testimony that is directly contrary to the Court's express constructions and its rationale behind those constructions.

## IV.  CONCLUSION

Implicit squarely presented its pointer-based, processing-routine perspective theory during claim construction and it was rejected by this Court in its Markman Order. Implicit now submits testimony from Dr. Almeroth in support of this rejected theory, and Dr. Almeroth's testimony should be excluded as an attempt to disregard this Court's claim construction ruling.

Dated:  September 30, 2019

Respectfully submitted,

/s/ *Eric A. Buresh*
Eric A. Buresh (KS Bar 19895)
Mark C. Lang (KS Bar 26185)
**ERISE IP, P.A.**
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Telephone: (913) 777-5600
Facsimile: (913) 777-5601
eric.buresh@eriseip.com
mark.lang@eriseip.com

Abran J. Kean (CO Bar 44660)
**ERISE IP, P.A.**
5600 Greenwood Plaza Blvd., Suite 200
Greenwood Village, CO 80111
Telephone: (913) 777-5600
abran.kean@eriseip.com

6

        Melissa Smith
        Texas State Bar No. 24001351
        melissa@gillamsmithlaw.com
        **GILLAM & SMITH, L.L.P.**
        303 South Washington Avenue
        Marshall, Texas 75670
        Telephone: 903-934-8450
        Facsimile: 903-934-9257

*Counsel for Defendants*
*NetScout Systems, Inc. and*
*Sandvine Corporation*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Plaintiff's counsel of record were served with a true and correct copy of the foregoing document by electronic mail on September 30, 2019.

*/s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Defendants has complied with the meet and confer requirement in Local Rule CV-7(h) and that the accompanying motion is opposed.  I further certify that counsel for Defendants met and conferred with counsel for Plaintiff on September 30, 2019.

*/s/ Melissa R. Smith*
Melissa R. Smith
