# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| IMPLICIT, LLC, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 2:18-cv-53-JRG<br>LEAD CASE |
| v. | § § | JURY TRIAL DEMANDED |
| NETSCOUT SYSTEMS, INC., | § § | |
| *Defendant.* | § | |

| | | |
|---|---|---|
| IMPLICIT, LLC, | § § | |
| *Plaintiff,* | § § | Civil Action No. 2:18-cv-54-JRG<br>MEMBER CASE |
| v. | § § | JURY TRIAL DEMANDED |
| SANDVINE CORPORATION, | § § | |
| *Defendant.* | § | |

**DEFENDANTS SANDVINE CORPORATION AND NETSCOUT SYSTEM, INC.'S MOTIONS *IN LIMINE***

## **TABLE OF CONTENTS**

I.  **COMMON MOTIONS *IN LIMINE*** ........................................................................................ 1

MIL No. 1:   PRECLUDE IMPLICIT FROM SUGGESTING CERTAIN PRIOR ART WAS SUBMITTED TO AND CONSIDERED BY THE PATENT OFFICE WHEN IT WAS NOT. ................................ 1

MIL No. 2:   PRECLUDE IMPLICIT FROM PRESENTING ANY EVIDENCE REGARDING REDUCTION TO PRACTICE OF THE ASSERTED CLAIMS WITH ANY PROTOTYPE OR PRODUCT PRIOR TO CONSTRUCTIVE REDUCTION TO PRACTICE ON DECEMBER 29, 1999. ........................ 2

MIL No. 3:   PRECLUDE IMPLICIT FROM REFERENCING NON-COMPARABLE SETTLEMENT AGREEMENTS ADDRESSED IN THE *DAUBERT* MOTION (CISCO, HUAWEI, ERICSSON, AND PAN). ......................................................................................................... 4

MIL No. 4:   PRECLUDE IMPLICIT FROM REFERENCING ANY SETTLEMENT AGREEMENTS IN WHICH (1) THE DEMUX PATENTS WERE NOT ASSERTED IN THE UNDERLYING LITIGATION; OR (2) THE DEMUX PATENTS WERE ASSERTED IN ADDITION TO OTHER PATENTS IN THE UNDERLYING LITIGATION. ............................................................................. 5

MIL No. 5:   PRECLUDE PLAINTIFF FROM SOLICITING OR PUTTING ON TESTIMONY / EVIDENCE THAT PRESENTS A SINGLE REVENUE NUMBER FOR THE ROYALTY BASE THAT ENCOMPASSES BOTH ACCUSED AND NON-ACCUSED PRODUCTS WITH NO EXPLANATION AS TO WHAT AMOUNT IS ATTRIBUTABLE TO ACCUSED PRODUCTS VERSUS NON-ACCUSED PRODUCTS. ................................................................................................... 6

MIL No. 6:   PRECLUDE PLAINTIFF FROM REFERENCING DEFENDANTS' TOTAL PROFITS, REVENUES, AND OTHER FINANCIAL INFORMATION BEYOND THE APPORTIONED ROYALTY BASE. . . 8

MIL No. 7:   PRECLUDE PLAINTIFF FROM SOLICITING OR PUTTING ON TESTIMONY / EVIDENCE REGARDING CORRESPONDENCE BETWEEN COUNSEL AND THIRD PARTY WITNESSES RELATING TO THE SERVICE OF SUBPOENAS, SCHEDULING DEPOSITIONS, AND PRODUCING DOCUMENTS IN THE CASE, WITH THE EXCEPTION OF THIRD PARTY DAVID MOSBERGER. ................................................................................................. 8

MIL No. 8:   PRECLUDE EITHER PARTY FROM INTRODUCING ANY TESTIMONY, EVIDENCE, OR ARGUMENT THAT INCLUDES THE CONCEPTS OF "STEALING" OR "PILFERING." ........... 9

MIL No. 9:   PRECLUDE EVIDENCE OR ARGUMENT REGARDING ANY OF THE COURT'S PRIOR AND FORTHCOMING RULINGS EXCEPT FOR THE APPLICABLE CLAIM CONSTRUCTIONS........ 9

MIL No. 10:  EXCEPT FOR PURPOSES OF IMPEACHMENT OR TO SHOW INCONSISTENCIES IN OPINIONS OR POSITIONS, THE PARTIES WILL NOT SOLICIT OR PUT ON TESTIMONY / EVIDENCE FROM ANY PRIOR LITIGATION INVOLVING DEFENDANTS OR THE ACCUSED PRODUCTS. EVEN WHEN USED IN THE EXCEPTION, THE PARTIES WILL NOT SOLICIT TESTIMONY THAT DESCRIBES THE CONTEXT OF THE PRIOR LITIGATION OR THE OUTCOME OF THE PRIOR LITIGATION. .............................................................................................. 10

MIL No. 11:  THE PARTIES WILL NOT OFFER, SOLICIT, OR REFER TO TESTIMONY, EVIDENCE, OR ARGUMENT REGARDING ANY FINDINGS, HOLDINGS, OR ADJUDICATIONS IN/FROM: (A) *IMPLICIT NETWORKS, INC. V. JUNIPER NETWORKS, INC.*, NO. 3:10-CV-04234-SI (N.D. CAL.); (B) *IMPLICIT NETWORKS, INC. V. F5 NETWORKS, INC.*, NO. 3:10-CV-03365-SI (N.D. CAL.); (C) *IMPLICIT, LLC. V. F5 NETWORKS, INC.*, NO. 3:14-CV-02856-SI (N.D. CAL.); (D) ANY APPEALS RELATED TO THE CASES IDENTIFIED IN PARAGRAPHS 2 (A-C); (E) *PACKET INTELLIGENCE, LLC V. NETSCOUT SYSTEMS, INC., ET AL*, 2:16-CV-230-JRG (E.D. TEX.); OR (F) ANY RE-EXAMINATION PROCEEDINGS RELATING TO THE ASSERTED

   P<small>ATENTS OR RELATED PATENTS</small>................................................................................. 10

## II. MOTIONS *IN LIMINE* SPECIFIC TO NETSCOUT ...................................................... 11

MIL N<small>O</small>. 12: P<small>RECLUDE</small> P<small>LAINTIFF FROM SOLICITING OR PUTTING ON TESTIMONY / EVIDENCE RELATING TO SALES OF</small> A<small>RBOR OR</small> G<small>EO</small>P<small>ROBE PRODUCTS PRIOR TO</small> J<small>ULY</small> 2015...... 11

## III. MOTIONS *IN LIMINE* SPECIFIC TO SANDVINE ...................................................... 12

MIL N<small>O</small>. 13: P<small>RECLUDE</small> P<small>LAINTIFF FROM SOLICITING OR PUTTING ON TESTIMONY / EVIDENCE RELATING TO VENUE, INCLUDING BRIEFING AND DECLARATIONS MADE IN SUPPORT OF</small> S<small>ANDVINE'S MOTION TO DISMISS</small>.............................................................................. 12

Pursuant to the Eleventh Amended Docket Control Order (Dkt. No. 139), Defendants NetScout Systems, Inc. ("NetScout") and Sandvine Corporation ("Sandvine") (collectively, "Defendants") submits the following Motions *in Limine* ("MIL").

I. COMMON MOTIONS *IN LIMINE*

**MIL No. 1: Preclude Implicit From Suggesting Certain Prior Art Was Submitted To and Considered By the Patent Office When It Was Not.**

Implicit's expert, Dr. Almeroth alleges that the PTO "considered" F5 Networks, Inc's Invalidity Contentions and charts associated therewith, and an expert report submitted in support of a Motion for Summary Judgment by Juniper. Ex. 1 ("*Almeroth Rebuttal Report*") at ¶ 93. Dr. Almeroth suggests certain prior art references and systems (i.e., the Joust Technical Report, Escort Technical Report, 1996 Scout OSDI Paper) and combinations (i.e., the "Mosberger Thesis, in view of Plexus")[1] that were discussed in these documents are the same prior art references or combinations relied upon by Defendants. *Id.* at ¶¶ 94-100. Dr. Almeroth concludes that the PTO issued the Asserted Patents over "many of the same references that Dr. Jeffay relies on to opine that the same patents are invalid over those same references." *Id.* at ¶ 101. Dr. Almeroth also opines that these prior art references were cited and considered by the Patent Office. *Id.* at ¶ 115.

Any such testimony is misleading, confusing, and prejudicial and should be precluded under FRE 403. The prior art Joust Technical Report, the Escort Technical Report, the 1996 OSDI Paper, and the combination of the "Mosberger Thesis, in view of Plexus" were not even submitted to or cited by the PTO.[2] Dr. Almeroth opines that they were, simply because they were discussed

---

[1] Dr. Almeroth relies on an expert report for this assertion. *Almeroth Rebuttal Report* at ¶ 100.
[2] Dr. Almeroth also opines that the Escort Technical Report is "related to" and shares the "same authors" as a prior art paper that was cited to the Patent Office. *Almeroth Rebuttal Report* at ¶ 131. However, the PTO did not consider and Implicit has never submitted the Escort Technical Report to the PTO. Any suggestion otherwise is misleading.

1

in litigation documents that Implicit submitted to the PTO in a massive litigation-related document dump.³ *See e.g.,* Ex. 2 (U.S. Patent No. 8,694,683) at Page 4 – Page 6 (References Cited) (starting at middle of left column of Page 4 (Feb. 4 2008 Plaintiff's Original Complaint) through middle of left column of Page 6). Invalidity contention charts and expert reports are not prior art, and Implicit's litigation document dump never provided the PTO with the actual prior art with the exception of the Mosberger Thesis. It is misleading and confusing to suggest that the PTO considered prior art references and combinations that were not submitted.

**MIL No. 2:** **Preclude Implicit From Presenting Any Evidence Regarding Reduction To Practice Of The Asserted Claims With Any Prototype or Product Prior to Constructive Reduction To Practice On December 29, 1999.**

PLR 4.2(b) requires that production of all documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified be produced with the Disclosure of Asserted Claims and Infringement Contentions. Plaintiff provided select portions of source code from the pre-December 1999 timeframe. In late November 2018, Defendants determined that Implicit had provided only select portions of source code from Mr. Balassanian's source code repositories but that many of the key routines to assess a pre-December 1999 reduction to practice were missing. Defendants immediately began requesting an entire build of Mr. Balassanian's source code that predated the priority date to the extent Implicit intended to show an earlier reduction to practice. Ex. 3 (Nov. 30, 2018 Correspondence). Defendants' communications and efforts went on consistently for months and Implicit only produced repositories containing code dated after December 29, 1999 and a handful of selective code files

---

³ As an additional point, the litigation documents were related to different patents than the Asserted Patents and claims that had differing limitations.

dated prior to December 29, 1999 from an unproduced repository. *See* Ex. 4 (E-mail chain including Dec. 11, 2018 and Feb. 25, 2019 Correspondence), Ex. 5 (Email chain from May 2-17, 2019). On June 21, 2019, Implicit's counsel wrote: "Error was on our side. Will track down the drive and get it to you asap. I apologize for the confusion and take your selective production point." Ex. 6 (June 21, 2019 correspondence). On July 5, 2019, Implicit produced additional source code repositories, but it did not contain any code dated prior to December 29, 1999. Ex. 7 (July 5, 2019 Correspondence). Implicit represented multiple times throughout the process that it had provided all BeComm source code in Implicit's possession. Yet, Implicit's admittedly selective production[4] of source code pre-dating December 29, 1999 was missing key pieces, including any source code that would show how or when Mr. Balassanian reduced to practice the claimed invention and its requirement for executing TCP and for converting packets from TCP to another format as construed by the Court.

On August 7, 2019, fact discovery closed. On August 8, 2019, Implicit made an additional native source code production that appears to include an entire build dated October 1999. Ex. 8 (Aug. 8, 2019 Correspondence). Implicit did not provide any explanation for where the code came from or how or why it was not produced previously, instead, confirming that "an entire build" of Becomm source code dated prior to December 29, 1999 had not previously been produced in the case (Ex. 9, August 16, 2019 Correspondence, stating that after Mr. Balassanian's deposition they "immediately checked the native files to see if the entire build was produced, and are still checking that now."). Despite PLR 4.2(b) and despite multiple requests over a period of months, Implicit

---

[4] *See* Ex. 7, June 21, 2019 correspondence; *See also* Exs. 3-6 (correspondence surrounding Implicit's production of native source code files that were hand-picked from one of "dozens" of back-up tapes and showing Implicit's failure to provide an entire build or source code repository from which the handful of native source code files were selected).

failed to timely produce an "entire build" of its code (even though we now know it was clearly in its possession, custody, and control) that would either support or refute a claim of earlier reduction to practice or otherwise enable Defendants to discern how Mr. Balassanian implemented the claimed invention prior to the constructive reduction to practice. Implicit has put certain of its selectively disclosed source code files on its exhibit list (*see, e.g.,* Plaintiff Ex. Nos. 432-434, 436-440, 514-518) and appears poised to simply ask the jury to take Mr. Balassanian's word for how and when he reduced his invention to practice. Yet, Implicit's dilatory discovery tactics and failure to comply with the PLR's has impeded if not foreclosed Defendants' ability to respond to such testimony and/or to gain a fair understanding of how and when Mr. Balassanian actually implemented the claimed invention. Implicit should be precluded from offering any such evidence due to its discovery failures.

**MIL No. 3:   Preclude Implicit From Referencing Non-Comparable Settlement Agreements Addressed In The *Daubert* Motion (███████████████████████).**

As set forth in the corresponding *Daubert* motion, the ███████████████████████ ███████████████ settlement agreements ("Settlement Agreements") are not comparable to a hypothetical negotiation between the parties in these cases. *See* Dkt. 141 at 3-10. These settlement agreements should be excluded under Rule 403 because the circumstances and scope of these agreements create undue prejudice that the Federal Circuit has warned against. *See Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369-71 (Fed. Cir. 2017); *see also, e.g., LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-CV-348-TJW-CE, 2011 WL 7563818, at *3 (E.D. Tex. Jan. 7, 2011) ("where a license covers a portfolio of patents or includes other intellectual property or services, Plaintiff must present evidence sufficient to allow the jury to weigh the economic value of the patented feature against the economic value of the features and services covered by the license agreement."). One common situation that can undermine the

probative value of a settlement agreement is when "[a]n earlier settlement may cover technology either not the same as or not comparable to the patented technology at issue in the later suit, or may cover the patented technology plus other technologies." *Prism* at 1369-70. In that situation, "evidence [is] needed that reasonably addresse[s] what bearing the amounts in that Agreement had on the value of the particular patents at issue here." *Id.* at 1371. In *Prism*, the record included: (1) value attribution to particular patents in the agreement itself; (2) creditable expert evidence about how the other patents related to the earlier defendant's business; and (3) a comparison of the earlier defendant's and current defendant's use of the patented technology. *See id.* That evidence does not exist here. There is no evidence in the Settlement Agreements or in analysis from Dr. Ugone that isolates the value of the asserted patents. *See* Dkt. 141 at 4-9. Instead, Dr. Ugone simply concluded that the other patents in the Settlement Agreements had no value based on his discussions with the inventor Mr. Balassanian. *See id.* That is not evidence or analysis at all, and the record here is insufficient to satisfy the standard set out by the Federal Circuit in *Prism* for allowing settlement agreements to be presented to the jury. *See Prism*, 849 F.3d at 1369-71.

**MIL No. 4:   Preclude Implicit From Referencing Any Settlement Agreements In Which** ▮

Apart from the ▮ settlement agreements, there are several other settlement agreements involving Plaintiff Implicit. There are ▮. First, the Court should exclude settlement agreements under Rule 403 where the underlying litigation involved only ▮

5

███████████████████████████

████████████████████████████ *See, e.g.*, *Prism*, 849 F.3d at 1369-71 (outlining some probative value where the presently asserted patents were part of earlier cases, but cautioning that evidence is needed to isolate the value of the presently asserted patents); *see also*, *e.g.*, *ResQNet, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-72 (Fed. Cir. 2010) (noting that "the trial court should not rely on unrelated licenses to increase the reasonable royalty rate above rates more clearly linked to the economic demand for the claimed technology."). Furthermore, these agreements have no probative value because Implicit's expert did not rely on them as comparable agreements.

Second, the Court should exclude settlement agreements under Rule 403 where the underlying litigation involved ████████████████████████████████████ ████████████████████████████. As discussed above, there can be some probative value to these type of settlement agreements, but only if there is evidence in the record that isolates the value of the patents asserted in the present cases. *See supra* at MIL 3; *see also Prism*, 849 F.3d at 1369-71. There is no evidence in the settlement agreements or in analysis from Dr. Ugone that isolates the value of ████████████████████████████████ *See generally* Dkt. 141-1 ("*Ugone NetScout Report*"). Because the record here does not include the necessary evidence that would illustrate the probative value of these settlement agreements, any value is outweighed by the risk of unfair prejudice in showing these agreements to the jury. *See Prism*, 849 F.3d at 1369-71. As with the first group, probative value is further limited by the fact that Dr. Ugone did not rely on these agreements as comparable licenses.

**MIL No. 5:    Preclude Plaintiff from soliciting or putting on testimony / evidence that presents a single revenue number for the royalty base that encompasses both accused and non-accused products with no explanation as to what amount is attributable to accused products versus non-accused products.**

This issue is presented in the alternative to Defendants' Motion to Exclude Dr. Ugone's

Opinions because he has not presented any legal theory, such as a convoyed sales, to include non-accused revenue in the royalty base. Dkt. 141 at 14-15. If that motion is denied, there is significant risk of confusion caused by Implicit lumping revenue for admittedly non-accused products and services in with revenue for accused products.[5] Dr. Ugone includes a chart in his Report for "NetScout's Apportioned Royalty Base" that includes "both product and service revenues." *Ugone NetScout Report*, ¶¶127-128, Table 11. The present motion seeks to preclude Implicit from presenting the royalty base as a single value (including accused and non-accused product revenue) from which Dr. Ugone calculates his damages. The reason for this is well-established: it is prejudicial to present a large royalty base to the jury that includes non-accused product revenue because it "may make a patentee's proffered damages amount appear modest by comparison, thus risking the jury may artificially inflate their damages calculation beyond that which is adequate to compensate for infringement." *Realtime Data, LLC v. EchoStar Corp*, Case No. 6:17-cv-84-JDL, 2018 WL 6266301, at *4 (E.D. Tex. Nov 15, 2018). The Federal Circuit has cautioned against this as well. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012). Even in cases where a proper analysis has been performed to include accused and non-accused revenue in the royalty base (which has not been done by Dr. Ugone here), this Court requires a "clear explanation of … 2) what value of the royalty base is attributable to the accused products themselves versus the convoyed [*i.e.*, non-accused] sales." *EchoStar Corp*, 2018 WL 6266301, at *6 (E.D. Tex. Nov

---

[5] Implicit's technical expert concedes that the smallest patent practicing unit is the accused product itself (i.e., not application software, services, support, and training). Dkt. 141-14 ("*Almeroth Infringement Report*"), ¶¶603-638. This is the royalty base that should be apportioned and presented to the jury. *See Echostar*, 2018 WL 6266301, at *4-5. Dr. Ugone acknowledges that the SSPPU is the Accused Product device but proceeds to add services, subscriptions, and/or support to a single Accused Product royalty base. *Ugone NetScout Report*, ¶126.

7

15, 2018). Implicit seems to agree with the underlying premise of this MIL, *See* Dkt. 177 at 5, but has nonetheless not agreed to the requested relief.

**MIL No. 6:** **Preclude Plaintiff from referencing Defendants' total profits, revenues, and other financial information beyond the apportioned royalty base.**

Dr. Ugone has provided an apportioned royalty base that should be segregated between accused products and non-accused products and services. Beyond that apportioned base, Defendant's total revenue (for either the Accused Products or for the business or any subparts thereof), profits, cash reserves, or market capitalization, etc. should also be excluded under Rule 403 for reasons similar to those discussed in the preceding MIL. Overall revenue numbers (i.e., any beyond the apportioned base) should be excluded because they have no probative value and create undue prejudice by skewing the jury's view of the damages horizon. *See Uniloc*, 632 F.3d at 1320; *LaserDynamics*, 694 F.3d at 68.

**MIL No. 7:** **Preclude Plaintiff from soliciting or putting on testimony / evidence regarding correspondence between counsel and third party witnesses relating to the service of subpoenas, scheduling depositions, and producing documents in the case, with the exception of third party David Mosberger.**

Defendants seek to exclude evidence and testimony relating to correspondence between Defendants' counsel and third-party witnesses relating to scheduling deposition, serving subpoenas, and/or similar logistical communications. Implicit contends that such necessary communications show bias. It is unclear how communications showing a third party complying with the legal discovery process could amount to bias. Such evidence is intended to confuse and mislead the jury and is both irrelevant and prejudicial under Rule 401/403. Defendants have excluded communications with third party David Mosberger from this MIL because they appreciate that communications from him during the discovery process went beyond simple logistics and scheduling.

**MIL No. 8:   Preclude either party from introducing any testimony, evidence, or argument that includes the concepts of "stealing" or "pilfering."**

During the meet and confer process, the parties appeared to agree that they will not characterize any conduct of the other party as "stealing" or "pilfering." But Implicit will not agree to the proposed MIL because it wants to introduce testimony of one or more third parties to the effect that Mr. Balassanian was not "pilfering" or "stealing" various prior art ideas. *See* Ex. 10, *Peterson Dep. Tr.* at 164:17-23 ("You wouldn't have done that if you thought he had pilfered your ideas? … THE WITNESS: Yeah, like I said, I didn't -- at that time, I didn't have any negative thoughts at all about what was going on."); 186:17-23; 163:19-23 ("MR. HOSIE: All right, sir. Do you think that Edward stole any of your ideas, sir? THE WITNESS: I don't think of it as -- any of this as stealing."); 175:23-176:3; *see also* Ex. 11, *Decasper Dep. Tr.* at 218:24-219:2 ("Q. Mr. Decasper, do you have any reason at all to think that Implicit stole any of your ideas? THE WITNESS: No."). Such testimony is likely to confuse the legal standard for invalidity. Whether or not Mr. Balassanian was intentionally "pilfering" or "stealing" prior art is not the standard and is not relevant to any question, including invalidity, that will be presented to the jury. Thus, Defendants' object to such questions and testimony under Rules 401 and 403.

**MIL No. 9:   Preclude evidence or argument regarding any of the Court's prior and forthcoming rulings except for the applicable claim constructions.**

Defendants do not understand the dispute on this MIL. Implicit suggested that the parties specifically identify forthcoming rulings, such as summary judgment, in the MIL. But this would be an exercise in futility as the parties do not know every ruling that the Court may make between now and the end of trial. Thus, Defendants proposed the language "forthcoming rulings" that is sufficiently broad to encompass the unknown universe ahead. Any discussion of or reference to past or future rulings of the Court is unambiguous and not prejudicial to any party.

9

**MIL No. 10:** Except for purposes of impeachment or to show inconsistencies in opinions or positions, the parties will not solicit or put on testimony / evidence from any prior litigation involving Defendants or the Accused Products. Even when used in the exception, the parties will not solicit testimony that describes the context of the prior litigation or the outcome of the prior litigation.

Defendants proposal seeks to prohibit the introduction of testimony and evidence that relates to prior litigation involving the Defendants. Implicit opposed because its expert witnesses have relied on testimony and declarations from prior cases. This does not mean that testimony or declarations are admissible evidence in this case. Indeed, testimony and declarations even from the same case are generally not admitted into evidence and are only used for purposes of impeachment. Defendants proposal preserves Implicit's ability to use this information to the extent any testimony in front of the jury is not consistent with prior statements.

**MIL No. 11:** The parties will not offer, solicit, or refer to testimony, evidence, or argument regarding any findings, holdings, or adjudications in/from: (a) *Implicit Networks, Inc. v. Juniper Networks, Inc*., No. 3:10-cv-04234-SI (N.D. Cal.); (b) *Implicit Networks, Inc. v. F5 Networks, Inc*., No. 3:10-cv-03365-SI (N.D. Cal.); (c) *Implicit, LLC. v. F5 Networks, Inc*., No. 3:14-cv-02856-SI (N.D. Cal.); (d) any appeals related to the cases identified in paragraphs 2 (a-c); (e) *Packet Intelligence, LLC v. NetScout Systems, Inc., et al*, 2:16-cv-230-JRG (E.D. Tex.); or (f) any re-examination proceedings relating to the Asserted Patents or related patents.

It is Defendants' understanding that the parties are in agreement with the above MIL with the exception of subsection (f) relating to "any re-examination proceedings relating to the Asserted Patents or related patents." Defendants reasoning for including it is straight-forward: if Implicit is going to introduce any testimony, evidence, or argument relating to the PTO proceedings in which the '163 and '857 patents (related to the Asserted Patents) was found valid, then Defendants should be equally entitled to introduce testimony, evidence, or argument in which claims of the '163 and '857 patents were found invalid by Judge Illston in the Northern District of California. The latter is precluded by Implicit's MIL, but the former would plausibly be allowed. Such a one-sided

presentation of testimony and arguments would obviously be prejudicial to Defendants.

II.     MOTIONS *IN LIMINE* SPECIFIC TO NETSCOUT

**MIL No. 12:   Preclude Plaintiff from soliciting or putting on testimony / evidence relating to sales of Arbor or GeoProbe products prior to July 2015.[6]**

Implicit acknowledged in its briefing that NetScout did not begin infringing until July 2015 because that is the date "when NetScout began selling the [accused] GeoProbe and Arbor products." Dkt. 156 at 10. This statement was in support of Dr. Ugone's hypothetical negotiation framework, which framework is defined to occur on the date infringement began. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1363–64 (Fed. Cir. 2006) ("[T]he hypothetical negotiation relates to the date of first infringement."); *see also Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384 (Fed. Cir. 2001); *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed.Cir.1995). Nonetheless, Implicit seeks to include damages for the sale of the GeoProbe and Arbor products from April 2014 to July 2015, a time period during which Implicit concedes NetScout was not selling those products and should be outside the hypothetical negotiation window. Thus, any testimony or evidence relating to sales of the GeoProbe and Arbor products prior to July 2015 should be excluded because Implicit has created a legal construct wherein NetScout could not have been infringing during this timeframe.[7]

---

[6] NetScout notes that it has moved to completely exclude Dr. Ugone's second hypothetical negotiation. Dkt. 141 at 12-14. This MIL is only relevant if the Court permits Dr. Ugone to present two hypothetical negotiations to the jury.

[7] Implicit affirmed this logic in its Sur-reply to Defendants' *Daubert* motion relating Dr. Ugone when it stated that August 2017 is the right negotiation date for certain products in the Sandvine case because "Sandvine is not liable for the sale of [the accused] products … prior to 2017." Dkt. 177 at 4.  The same result follows here – NetScout cannot be liable for the sale of the GeoProbe and Arbor products prior to the date of the hypothetical negotiation involving those products.

11

### III.   MOTIONS *IN LIMINE* SPECIFIC TO SANDVINE

**MIL No. 13:   Preclude Plaintiff from soliciting or putting on testimony / evidence relating to venue, including briefing and declarations made in support of Sandvine's motion to dismiss.**

The issue of whether venue is proper in this case has already been decided by the Court. Dkt. 73. Indeed, Sandvine did not contest venue in its Answer to the Third Amended Complaint following the Court's Order. Dkt. 87, ¶ 6 ("Sandvine does not contest venue in this case."). Thus, any testimony surrounding venue or statements made during briefing on Defendants' partial motion to dismiss relating to venue are not relevant and likely to cause confusion, and they should be precluded.  *See* Ex. 12, *Weatherford Techn. Holdings, LLC, et al. v. Tesco Corp.*, Case No. 2:17-cv-00456-JRG, Dkt. 166 at 5-6 (granting motion *in limine* to exclude testimony, evidence or argument relating disputes over venue, including statements of defendants' witnesses relating to venue challenges).

Dated:  October 25, 2019

Respectfully submitted,

By: /s/ *Mark C. Lang*
Eric Buresh (KS Bar 19895)
Mark C. Lang (KS Bar 26185)
ERISE IP, P.A.
6201 College Blvd., Suite 300
Overland Park, KS 66211
(913) 777-5600 Telephone
(913) 777-5601 Fax
eric.buresh@eriseip.com
mark.lang@eriseip.com

Abran Kean (CO Bar 44660)
ERISE IP, P.A.
5600 Greenwood Plaza Blvd., Suite 200
Greenwood Village, CO 80111
(913) 777-5600 Telephone
(913) 777-5601 Fax
abran.kean@eriseip.com

Melissa Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, L.L.P.**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

**ATTORNEYS FOR DEFENDANTS
NETSCOUT SYSTEMS, INC. AND
SANDVINE CORPORATION**

13

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Plaintiff's counsel of record was served with a true and correct copy of the foregoing document by electronic mail on October 25, 2019.

>*/s/ Melissa R. Smith*
>Melissa R. Smith