**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**



| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| | § | Civil Action No. 2:18-cv-53-JRG |
| *Plaintiff,* | § | LEAD CASE |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| NETSCOUT SYSTEMS, INC., | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT NETSCOUT SYSTEM, INC.'S**
**MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. §285**

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 1

III. IMPLICIT'S CLAIM WAS SUBSTANTIVELY WEAK, BEING PREMISED ON THEORIES THAT IGNORED AND MISCHARACTERIZED THE COURT'S CLAIM CONSTRUCTIONS. ........ 2

A. Implicit Ignored and/or Mischaracterized the Court's Claim Constructions of "execute a TCP" and "converting" in Order to Continue its Pursuit of a Knowingly Weak Claim. ........ 3

B. Implicit Pursued a Theory of Infringement based on Disclaimed Subject Matter that was the Source of the Court's Claim Construction of "Sequence of Routines" ........ 8

IV. IMPLICIT SHOULD HAVE STIPULATED TO NON-INFRINGEMENT AND APPEALED THE COURT'S CLAIM CONSTRUCTIONS. ........ 13

V. ATTORNEYS' FEES AMOUNT ........ 14

VI. CONCLUSION ........ 14

## I. INTRODUCTION

This case should have ended following the Court's *Markman* Order. Implicit plainly had no claim of infringement against NetScout's products at that point. Implicit knew this and strenuously objected to the *Markman* Order. However, rather than taking the reasonable action of dropping its case completely, or at a minimum stipulating to non-infringement and appealing the Court's *Markman* Order, Implicit pressed forward to trial causing NetScout to incur significant costs in defending itself from Implicit's frivolous claims. Implicit's decision to test whether it could successfully sidestep the Court's constructions in front of a jury failed. Having failed to confuse the jury in this case, Implicit did stipulate to non-infringement in the companion Sandvine case, choosing instead to appeal the claim construction in that case. This is exactly what Implicit should have done in both cases as soon as it lost on claim construction. Implicit should now be held to account for its unreasonable conduct in maintaining claims that were baseless in light of the Court's claim constructions. NetScout, therefore, respectfully requests that the Court enter an order finding this case exceptional and awarding NetScout its attorneys' fees incurred from the time after entry of the Court's *Markman* Order through the conclusion of trial.

## II. LEGAL STANDARD

An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Exemplary conduct supporting an exceptional case finding "includes advancing frivolous arguments during the course of the litigation or otherwise prolonging litigation in bad faith." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1316 (Fed. Cir. 2012) (vacated on other grounds, 134 S. Ct. 1744). District courts assess exceptionality on a case-by-case basis, considering the totality of the

circumstances. *Octane*, 134 S. Ct. at 1756; *see also Iris Connex, LLC v. Dell*, Inc., 235 F. Supp. 3d 826, 842–43 (E.D. Tex. 2017). "[A] district court may consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Iris Connex*, 235 F. Supp. 3d at 842 (quoting *Octane*, 134 S. Ct. at 1756 n.6). The prevailing party must establish its entitlement to attorneys' fees "only by a preponderance of the evidence." *Octane*, 134 S. Ct. at 1758.

## III. IMPLICIT'S CLAIM WAS SUBSTANTIVELY WEAK, BEING PREMISED ON THEORIES THAT IGNORED AND MISCHARACTERIZED THE COURT'S CLAIM CONSTRUCTIONS.

Implicit pursued through trial infringement theories on two distinct Asserted Claim requirements that were precluded by the Court's *Markman* Order. First, the *Markman* Order construed "execute a Transmission Control Protocol (TCP)," and "convert one or more packets having a TCP format into a different format." [1] Implicit objected to these constructions, directly arguing that the "outermost header" construction was incorrect, which objection the Court overruled. Dkts. 117, 120. Rather than drop its case or stipulate to non-infringement in view of the Court's claim constructions, Implicit pressed forward through trial. Implicit unnecessarily prolonged this case based on frivolous arguments, rendering this case exceptional. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction."); *Medtronic Navigation, Inc. v. BrainLAB Med. Comp. GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) ("The salient inquiry is whether [plaintiff's] claims were so lacking in merit that [the plaintiff'] was legally obligated either to abandon its case

[1] The Court construed several related terms in similar manner as requiring operation on or conversion of packets having an outermost header of TCP. Dkt. 111 at 25-28, 33-36. These limitations will be referred to as the "execute a TCP" and "converting" limitations in this Motion.

altogether or to limit itself to challenging the district court's claim construction order on appeal.").

Second, the Court construed the "sequence of routines" [2] claim limitations based on subject matter that Implicit disclaimed during prosecution. Implicit objected to the Court's construction, and the Court overruled Implicit's objection. Dkts. 117, 120. Implicit's infringement theory, presented at trial, however, sought to cover the very type of systems that it disclaimed during prosecution in contravention of the Court's Order. *See Cartner v. Alamo Group*, 561 Fed. App'x 958, 965-66 (Fed. Cir. 2014) (affirming district court's holding that it was "frivolous to argue the [accused product] infringed when reasonable review of the [evidence] showed its similarity to the prior art [] system.").

As discussed in more detail below, both of these positions were frivolous and objectively unreasonable in view of the Court's claim constructions. Implicit prolonged this case in bad faith as it could not have reasonably expected success on the merits. These facts warrant a finding that this case is exceptional and an award to NetScout of its attorneys' fees.

### A. Implicit Ignored and/or Mischaracterized the Court's Claim Constructions of "execute a TCP" and "converting" in Order to Continue its Pursuit of a Knowingly Weak Claim.

The Court construed "execute a Transmission Control Protocol (TCP)" as "operate on a packet whose outermost header is TCP." Dkt. 111 at 35-36. Similarly, the Court construed "convert packets having a TCP format into a different format" as "convert the outermost header structure of the packet(s) from TCP to another type of header structure." Dkt. 111 at 29. Despite the fact that each of these constructions require a "packet" that has an outermost header that is TCP, Implicit never identified any such packet in NetScout's Accused Products. This is because NetScout's Accused Products do not operate on any packet that has TCP as an outermost header,

[2] The Court construed "sequence of [two or more] routines" and "list of conversion routines" similarly. *See* Dkt. 111 at 14, 15.

and Implicit does not so contend. Instead, Implicit's infringement theory was premised on the purported "representation of a packet" identifiable solely through the "perspective" of a processing routine. This theory is objectively baseless, facially supplanting the terms "a packet" and "the packet" in the Court's Markman Order, with "***a representation of*** a packet" and "***the representation of*** the packet." Implicit purposefully side-stepped the Court's claim constructions and, thus, this case stands out from the ordinary patent case as a case so lacking in merit that Implicit was legally obligated to either abandon its case altogether or to limit itself to challenging the Court's Claim Construction Order on appeal.

*1. Implicit Side-Stepped the Court's Claim Constructions*

The Court's claim constructions are not ambiguous in the least: "operate on **a packet** whose outermost header is TCP" and "convert the outermost header structure of **the packet(s)** from TCP to another type of header structure." Dkt. 111 at 29, 35-36. In fact, the Court found that during prosecution Implicit "evidently understood that the relevant 'format' of a packet is determined by its outermost header." Dkt. 111 at 26; *id*. at 25-28 (citing statements from prosecution history where the patentee describes the format of a packet as being defined by the outermost header); *see also id.* at 33-34 (recognizing that during prosecution, Implicit stated: "executes the TCP protocol (i.e., operates on a packet whose outermost header is a TCP header)".) At trial, Implicit's expert, Dr. Almeroth, contended that each NetScout product infringed the "execute a TCP" and "converting" limitations because each of the Accused Products created a made-up "***representation of*** the packet" using a pointer, where the first byte of the header that the TCP pointer points to is the outermost header:

> Q. What did you find in the accused products when you were looking at this limitation [containing the execute a TCP and converting claim terms]?
> A. What I found is that when TCP header processing is happening, that the accused products create **a representation of the packet** where that header is now the outermost header of the packet.
> Q. And how does that relate to these constructions that the Court gave?

> A. **When you define a pointer or a representation of the packet in the source code so that the TCP header is the outermost header, then that's what meets the Court's construction for doing that kind of process**.
> Furthermore, there are additional **representations of the packet** that are created that relate to converting it to a different format. And typically, the format that a TCP packet is converted into when it's processed is into a packet at the application layer.
> So, for example, HTTP, that would be the next protocol header. So in the evidence I reviewed, I looked for whether or not there was **a representation of the packet** created for one of these higher layer protocols.

Ex. 1, 12/10 AM Sealed Trial Tr. at 22:7-23:2; *see also id.* at 21:11-22:6.[3] Dr. Almeroth did not find a packet that satisfied the Court's claim construction in the Accused Products; instead, he repeatedly testified that "a representation of the packet" satisfied the Court's claim construction. He did so even though he knew the Court's construction spoke only in terms of "a packet" and not a "representation of a packet." Ex. 2, 12/12 AM Trial Tr. at 121:24-122:7 ("Q. [T]here's no reference in the Court's claim construction to a representation of a packet. The Court's claim construction is talking about the packet, correct? A. It is talking about the packet, absolutely."). Simply put, Dr. Almeroth blatantly ignored the Court's construction requiring consideration of the "outermost header of **a packet**."[4]

[3] *See also, e.g.*, Ex. 1, 12/10 AM Sealed Trial Tr. at 24:1-6 (discussing Arbor Product) ("And this is the important part. It creates a structure -- it creates a representation of the packet where the TCP header is the outermost header. When you look at the first byte that that TCP pointer points to, it will be the first byte of the TCP header. So it's processing the outermost header of TCP."); *id.* at 25:6-22 (discussing Infinistream) ("At Line 1507, there's a representation of the packet where you create a pointer to the transport header. And when you use that pointer, that points to the first byte of the TCP header, and it's the outermost header. … These pointers are the different representations of the packets. And when the different packets at the different layers indicate that it's an L4 header, then TCP is the outermost header."); *id.* at 27:25-28:5 (discussing GeoProbe) ("And within this source code, there is functionality to create that same kind of representation of the TCP packet using a header -- using a pointer to the header so that the first byte of that pointer points to the TCP packet, making it the outermost packet header.").

[4] The Court recognized the disconnect between its construction and Implicit's theory when the parties argued motions under Rule 50. *See* Ex. 3, 12/12 PM Trial Tr. at 9:24-10:20 ("THE COURT: … In terms of the outermost layer issue, Dr. Almeroth discussed creating a representation of a packet. How, if at all, does a representation of a packet differ from using the pointer to identify the relevant layer of a packet? MR. WILSON: Dr. Almeroth -- Almeroth explained that in this reassembly process, what's occurring is that we're defining with a pointer a pack -- a representation

The absurdity of Implicit's position culminated at trial in the following statement from Dr. Almeroth:

> Q. So, in your opinion, you can operate on a packet whose outermost header is a TCP header even if you don't have a packet whose outermost header is a TCP header?
> A. If I follow you correctly, then that's true. It depends on how you write the system.
> Q. So, in your opinion, **if there's no packet in a system that has an outermost header that is TCP, you can still operate on a packet that -- that is -- that has an outermost header that is TCP**?
> A. **Oh, absolutely**. As I testified to earlier, you can create representations of that packet where TCP is the outermost header.

Ex. 4, 12/10 PM Trial Tr. at 43:7-18.

Put another way, Implicit contended that you need not actually have what the Court's claim construction required in order to meet the Court's claim construction.[5] The fact that Dr. Almeroth had to testify to an absurdity to preserve Implicit's theory demonstrates the anemic nature of Implicit's claim and the degree to which it side-stepped the Court's claim construction. This is not indicative of a party that believes in its claim, but rather represents the conduct of a party that has no genuine basis for its claim and knows that it is frivolous.

*2. Implicit Mischaracterized the Court's Claim Constructions*

In an overt attempt to confuse the jury, Dr. Almeroth brazenly instructed the jury to ***disregard*** the Court's claim construction and "go back to" the original claim language (i.e., "execute a Transmission Control Protocol (TCP)"):

> Q. (By Mr. Hurt) What is NetScout's second key question, Dr. Almeroth?
> A. This is from Mr. Buresh's opening. He said that second key question is, what is the outermost header of the packet?

---

of a packet that TCP is the outermost header of that packet….THE COURT: So the representation of the packet is defined by a pointer? Is that your position? MR. WILSON: By defining -- the position would be when you define a pointer, that creates a representation of the packet[.]").

[5] Dr. Almeroth similarly testified that you don't have to change the headers or change the packet to meet the "converting" limitations, rather the Court's construction only requires you to "convert the outermost header structure of the packet from TCP to another type of header structure." Ex. 2, 12/12 AM Trial Tr. at 94:11-25. Dr. Almeroth's apparent distinction between "change" and "convert" remains unknown.

> Q. And what is your response to this question?
> A. My response, again, is, this is the wrong question. The question is not what is the outermost header of the packet at any point in time. But **if you go back to the claim language, it's when you're executing a Transmission Control Protocol**, that's when you care. You have to operate on one or more packets whose outermost header is a TCP header.
> So it's not the fact that there is a representation of the packet that includes all of the headers, ethernet, IP, and TCP, but when you're executing TCP, when you're doing that processing, then what is the outermost header, that's the question.
> Q. And what's the answer to that question, sir?
> A. Well, as I've shown in the evidence, when you are executing a Transmission Control Protocol, a representation of that packet has been created using the TCP header pointer so that that pointer points to the first byte of the TCP header. And, therefore, TCP is, in fact, the outermost header. So, yes, when you're executing a Transmission Control Protocol, TCP is the outermost header.

Ex. 1, 12/10 AM Sealed Trial Tr. at 30:12-31:10.

> Q. Why is your opinions regarding the outermost header consistent and correctly apply the Court's construction?
> A. The Court's construction is -- is operating on the outermost header, **but if you apply those – those constructions in the context of the limitation, it needs to be the outermost header when you are executing a Transmission Control Protocol**. It's not the rest of the time in the device. It's when you're executing a Transmission Control Protocol that you need to be operating on the outermost header. And in all of the accused products, it is.
> Q. So does it matter that the ethernet header in some structure might still be there and the IP structure in some structure might be there?
> A. No, it doesn't.
> Q. And why doesn't it matter?
> A. It doesn't matter because you can have other representations of the packet. You need those other representations when you're processing those headers. But when you're processing the TCP header, the outermost header is TCP because of that pointer.

Ex. 4, 12/10 PM Trial Tr. at 53:19-54:17. Thus, on two separate occasions, Dr. Almeroth testified that the Court's construction did not mean what it said. Instead, Implicit contended that the Court's construction of "execute a TCP" actually means "operate on a representation of a packet whose outermost header is TCP while executing a TCP." In other words, Implicit inserted the language being construed into the construction. This is obviously not the Court's construction and Implicit knew as much. It is also notable that in making this argument, Implicit acknowledged that it was not talking about "the packet" in NetScout's system, but rather one of many possible

"representations of the packet."

Implicit's knowing failure to apply, and overt attempt to circumvent, the Court's construction blows through the line of zealous advocacy and arrives squarely in the land of bad faith and frivolity. Such conduct renders this case exceptional. *See MarcTec*, 664 F.3d at 917-18 (affirming exceptional case finding that plaintiff subjectively knew that it had no basis for asserting infringement and pursued litigation in bad faith where it "pursued its frivolous action by relying on mischaracterizations of the claim constructions adopted by this Court"); *id*. at 920 (affirming finding of litigation misconduct for same reasons); *Taurus*, 726 F.3d at 1328-29 (affirming finding that plaintiff's claim lacked a reasonable basis and was, therefore, pursued in bad faith and exceptional where plaintiff's theory was contradictory to the Court's claim construction); *Intex Recreation Corp. v . Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015) (finding case exceptional because "Court's claim construction foreclosed any reasonable argument that [accused products] infringed [the asserted patent]").

**B. Implicit Pursued a Theory of Infringement based on Disclaimed Subject Matter that was the Source of the Court's Claim Construction of "Sequence of Routines"**

Taking into consideration Implicit's numerous statements during prosecution disclaiming subject matter in a reference referred to as "Mosberger," the Court construed the term "sequence of [two or more] routines" as "an ordered arrangement of [two or more] software routines that was not selected from a set of arrangements created before receiving a first packet of the message." Dkt. 111 at 9-15.[6] Implicit argued at trial that the Court's claim construction covered exactly the subject that was expressly disclaimed. This is in direct conflict with the Court's construction and Implicit's statements during prosecution. A case such as this, where a patentee accuses systems substantively the same as distinguished prior art, is frivolous and exceptional.

[6] The Court similarly construed the term "list of conversion routines." Dkt. 111 at 15.

At trial, Implicit's expert explained that the Court's claim construction was satisfied with the exact same subject matter that was disclaimed – with a system where all of the possible paths are identified and created before the first packet arrives. Namely, Implicit elicited the following testimony from its expert:

| Testimony of Dr. Almeroth | Disclaimed Subject Matter |
|---|---|
| Q. What is required by the claim?<br>A. What's required by the claim is that you actually create the path, that **<u>you have the paths identified and created before the first packet arrives</u>** **<u>so that you can match it with those pre-created paths</u>**.<br>If you don't have pre-created paths, **<u>if you just have the possibility, different modules that can be used to assess a packet and process a packet based on learning what's in the packet, then that's what would meet the limitation</u>**.<br>Ex. 5, 12/10 PM Sealed Tr. at 21:24-22:8.<br><br>Q. And what is in the source code of the accused products?<br>A. **<u>In the source code are possible paths</u>**.<br>***<br>Q. And what did the accused products actually do with regard to this sequence of routines limitation?<br>A. What they actually do is <u>they have</u> **<u>a set of possible paths</u>**, and then when packets are received, the exact processing modules that need to be used to process that packet is created at that point in time.<br>Ex. 2, 12/12 AM Trial Tr. at 101:4-21. | <u>Court's Construction</u>:<br>"an ordered arrangement of [two or more] software routines that was not **<u>selected from a set of arrangements created before receiving a first packet of the message</u>**"<br><br><u>Claim Construction Order</u>:<br>"In this example, the ETH module **<u>selects the initial pathway (i.e., pathway p1, p2, or p3) based on the protocol header in the first packet of the message</u>**. (Mosberger, pages 88-89).<br>***<br>As one skilled in the art will appreciate, the [Mosberger] pseudo-code shows that the possible list of software modules is already predetermined for the example module [i.e., software routine] and that **<u>the only choice for the example module is to select from amongst several possible pre-defined paths</u>**. Thus, dynamic routing, as described in the context of the 'paths' in Mosberger, is essentially a series of 'If...Then...' computer instructions coded into the modules at build time that control the selection of the predefined paths through a series of predefined software modules that a developer has arranged in a module graph in such a way as to ensure their interface compatibility."<br>Dkt. 111 at 11-12 (quoting Dkt. 93, Ex. 12)<br><br>"Mosberger teaches that when a message is received, **<u>a path is selected (or "found" or "picked") from a set of possible paths</u>**, which were created before the message was received." Dkt. 111 at 13 (quoting Dkt. 93, Ex. 13, June 6, 2013 Preliminary Amendment, at 11 & 12)<br><br>"Thus, paths in Mosberger are not dynamically created based on the receipt of a message. Rather, Mosberger teaches that when a message is received, **<u>a path is</u>** |

| | |
|---|---|
| | **selected (or "found") from a set of possible paths**, which were created and predefined before the message was even received." Dkt. 111 at 13 (quoting Dkt. 93, Ex. 15, Feb. 8, 20[0]9 Amendment, at 16 (citations omitted)) |

Implicit perpetuated its improper pursuit of disclaimed subject matter in its cross-examination of NetScout's witnesses. Specifically, Implicit elicited testimony that NetScout's products are selecting what path, out of many possible paths, to use to process a packet, further illustrating its complete disregard of the disclaimer:

| Elicited Testimony at Trial | Disclaimed Subject Matter |
|---|---|
| Testimony of Mr. Barrett Regarding Infinistream:<br>Q. All right. So the path comes in, and there's a whole series of possible -- the traffic comes in, and there's a **whole series of possible paths**, correct?<br>A. Correct.<br>Q. And the system has to decide how to process the traffic after the traffic comes in?<br>A. I wouldn't use the word decide.<br>Q. Well, it has to -- it has to make **an election on which path to follow the various possible paths**?<br>A. Based on the contents of the packet, yes.<br>Q. Based on the contents of the packet. So there's a connection between how you process the packets and the contents of those packets, right?<br>A. Yes.<br>Q. **So you look at the contents, and then you decide which possible path to follow**, correct?<br>A. Correct.<br>Ex. 6, 12/11 AM SEALED Trial Tr. at 9:5-24.<br><br>Testimony of Mr. Curtin Regarding GeoProbe:<br>Q. But you don't actually go down that path until you hit this case statement, right?<br>A. Well, **as part of writing our code, we order all of our routines, or case statements, or "if" statements**. And so we determine when we go down this path of code.<br>Q. When we're at this point in code -- **in the code and there's a series of case statements, those are all potential options**; is that fair? | "A computer system in certain situations . . . can be expected to receive data and to provide data in many different formats that may not be known until the data is received. The overhead of statically providing **each possible series of conversion routines** is very high." Dkt. 111 at 9-10 (quoting '683 Patent at 1:54–59).<br><br>"In this example, the ETH module **selects the initial pathway (i.e., pathway p1, p2, or p3) based on the protocol header in the first packet of the message**. (Mosberger, pages 88-89).<br>***<br>As one skilled in the art will appreciate, the [Mosberger] pseudo-code shows that the possible list of software modules is already predetermined for the example module [i.e., software routine] and that the only choice for the example module is **to select from amongst several possible pre-defined paths**. Thus, dynamic routing, as described in the context of **the 'paths' in Mosberger, is essentially a series of 'If...Then...' computer instructions** coded into the modules at build time that control **the selection of the predefined paths through a series of predefined software modules** that a developer has arranged in |

| | |
|---|---|
| A. **<u>Those are all potential paths within our code, yes</u>**.<br>***<br>Q. **<u>At this point in the code, Mr. Curtin, the GeoProbe is picking one of those possible paths that it will actually process the packet on</u>**; is that fair?<br>A. Yes.<br>Ex. 7, 12/11 PM Trial Tr. at 29:24-31:9.<br><br>*See also id.* at 172:1-17 (Testimony of Dr. Jeffay regarding NetScout Products generally) | a module graph in such a way as to ensure their interface compatibility." Dkt. 111 at 12 (quoting Dkt. 93, Ex. 12, Sept. 1, 2009 Amendment and Response to Office Action Mailed July 7, 2009, at 11 & 14-15) |
| Testimony of Mr. Curtin Regarding GeoProbe:<br>Q. (By Mr. Hurt) At this point in the code, Mr. Curtin, the **<u>GeoProbe is picking one of those possible paths</u>** that it will actually process the packet on; is that fair?<br>A. Yes.<br>*Id.* at 31:6-9.<br><br>Testimony of Dr. Jeffay regarding Arbor:<br><br>Ex. 8, 12/11 PM SEALED Trial Tr. at 28:14-22. | "Mosberger teaches that when a message is received, **<u>a path is selected (or "found" or "picked") from a set of possible paths</u>**, which were created before the message was received." Dkt. 111 at 13 (quoting Dkt. 93, Ex. 13, June 6, 2013 Preliminary Amendment, at 11 & 12)<br><br>"Thus, paths in Mosberger are not dynamically created based on the receipt of a message. Rather, Mosberger teaches that when a message is received, **<u>a path is selected (or "found") from a set of possible paths</u>**, which were created and predefined before the message was even received." Dkt. 111 at 13 (quoting Dkt. 93, Ex. 15, Feb. 8, 20[0]9 Amendment, at 16 (citations omitted)) |

Implicit stressed some of this same language from NetScout's witnesses in its closing argument. *See* Ex. 9, 12/13 AM Trial Tr. at 46:1-14 ("And I asked him: So when we get to this point with the case statements, those are all potential options that the code could take, right? He said -- and he said: Those are potential paths within our code, yes. And I asked him again: Mr. Curtin, at this point, the GeoProbe is picking one of those possible paths; isn't that right? Yes, it is.

Mr. Barrett testified: When you're going through the code, you have to make an election on which path to follow in the various paths, and that's based on the contents of the packet.")

As can be seen from the foregoing, rather than conform to the language of the constructions, Implicit used almost the same language that it used to distinguish Mosberger. Implicit's strategy at trial, in view of its statements during prosecution and resulting claim constructions, was objectively unreasonable. Implicit made a conscious decision to accuse NetScout's pre-created sets of arranged software routines of infringement despite the fact that it specifically disclaimed this exact type of system. This argument was patently frivolous, objectively unreasonable, and supports a finding that this case is exceptional. *See Cartner*. 561 Fed. App'x at 965-66 (affirming district court's finding that it was "frivolous" and objectively unreasonable to argue an accused product infringed when a "reasonable review" of the accused product showed its similarity to the prior art that was distinguished during prosecution); *MarcTec*, 664 F.3d at 917-18 (affirming exceptional case finding because plaintiff subjectively knew it had no basis for claim where it represented to PTO that the claims exclude certain material and could not turn around in litigation and assert the patents against the disclaimed material); *Taurus*, 726 F.3d at 1328-29 (affirming finding that plaintiff's claim lacked a reasonable basis and was, therefore, pursued in bad faith where plaintiff's theory was contradictory to the Court's claim construction); *Tech. Props. Ltd. v. Canon, Inc.*, No. C 14-3640 CW, 2017 WL 2537286, at *2 (N.D. Cal. Jan. 26, 2017) (awarding

fees after finding the "merits of Plaintiffs' lawsuit were exceptionally weak" because "Plaintiffs' infringement theory essentially lay claim to prior art").

## IV. IMPLICIT SHOULD HAVE STIPULATED TO NON-INFRINGEMENT AND APPEALED THE COURT'S CLAIM CONSTRUCTIONS.

After receiving the claim construction, and knowing its negative impact on its case, Implicit should not have proceeded all the way through trial. It should have stipulated to non-infringement. Having seen the actual impact of the claim constructions before a jury, this is exactly what it did. After losing the NetScout trial, Implicit promptly stipulated to non-infringement in the companion Sandvine case while preserving its ability to appeal the Court's claim construction. Case No. 2:18-cv-54-JRG, Dkt. 17 at 1. This is exactly what Implicit should have done in both cases as soon as the Court issued its Claim Construction Order, i.e., objectively assess the merits of its case in view of the construction. This is because its infringement theory as to Sandvine and NetScout products was largely the same. *See, e.g.*, Dkt. 154 at 20 (after detailing why there was a question of fact as to Sandvine's accused PTS product, arguing that "Dr. Almeroth's provides similar opinions for each of the remaining Accused Products," including that "[i]n performing processing at the TCP layer, Dr. Almeroth identifies source code in each of the Accused Products that creates and utilizes new data structures that define the packets processed at that layer, with an outermost header that is TCP header."); Ex. 10 (Almeroth Report), ¶¶425, 432, 435, 450 (describing how Dr. Almeroth's infringement opinions regarding the "sequence of routines", "execute a TCP", and "converting" limitations apply to each of the Sandvine and NetScout Accused Products "as a whole" (i.e., in the same way)). The fact that Implicit stipulated to non-infringement in the Sandvine case reflects that it did not fully believe in its positions under the Court's constructions. Again, the proper path in such a case is to appeal the claim construction, not charge forward to trial in the hopes that it can confuse a jury. *Medtronic*, 603 F.3d at 954.

## V. ATTORNEYS' FEES AMOUNT

Where the movant establishes by a preponderance of the evidence that the case is exceptional, the Court then determines whether an award of fees is appropriate. *Octane Fitness*, 134 S. Ct. at 1758; *Howlink Global LLC v. Centris Info. Servs., LLC*, No. 4:11CV71, 2015 WL 216773, at *6 (E.D. Tex. Jan. 8, 2015). The Court should consider any factor that may contribute to a fair allocation of the burdens of litigation as between winner and loser. *Howlink*, 2015 WL 216773, at *6 (citing *S.C. Johnson & Son, Inc. v. Carter--Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986)). NetScout proposes an award of its attorney' fees and costs from the time that the Court issued its claim construction order on April 15, 2019. From that time forward, Implicit knew or should have known the substantive weakness of its case. NetScout will submit a full accounting and evidence substantiating the amount of its attorneys' fees if and when the Court declares this case exceptional.

## VI. CONCLUSION

Based on the foregoing, the Court should deny Implicit's Motion for Partial Summary Judgment.

Dated: January 10, 2020

Respectfully submitted,

/s/*Mark C. Lang*

Eric A. Buresh (KS Bar 19895)
Mark C. Lang (KS Bar 26185)
**ERISE IP, P.A.**
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Telephone: (913) 777-5600
Facsimile: (913) 777-5601
eric.buresh@eriseip.com
mark.lang@eriseip.com

Abran J. Kean (CO Bar 44660)
**ERISE IP, P.A.**
5600 Greenwood Plaza Blvd., Suite 200

Greenwood Village, CO 80111
Telephone: (913) 777-5600
abran.kean@eriseip.com

Melissa Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, L.L.P.**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

*Counsel for Defendants NetScout Systems, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have consented to electronic service are being notified of the filing of this document via the Court's CM/ECF system per Local Rule CV-5(a). I also hereby certify that Plaintiff's counsel of record are being served with a copy of the foregoing document by electronic mail on this on this 10th day of January, 2020.

*/s/ Melissa R. Smith*
Melissa R. Smith