**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 2:18-cv-53-JRG |
| | § | LEAD CASE |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| NETSCOUT SYSTEMS, INC., | § | |
| | § | |
| *Defendant.* | § | |

---

**DEFENDANT NETSCOUT SYSTEM, INC.'S OPPOSITION TO
PLAINTIFF IMPLICIT, LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW
AND MOTION FOR A NEW TRIAL**

---

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 1

II.  LEGAL STANDARDS ......................................................................................... 2

III. THE COURT SHOULD DENY IMPLICIT'S MOTION FOR JMOL ................................. 2

    A.  Implicit Did Not Establish That NetScout's Products Have or Use a "Sequence of Routines" .................................................................................................................. 2

    B.  Implicit Did Not Establish that NetScout's Products Satisfy the "Execute" or "Convert" Claim Requirements ................................................................................................ 5

    C.  Implicit's JMOL Should Be Denied ................................................................. 8

IV.  THE COURT SHOULD DENY IMPLICIT'S MOTION FOR A NEW TRIAL .................. 8

    A.  The Court's Claim Construction was Correct .................................................. 9

    B.  Implicit Waived Its Objection to the NetScout's Witnesses Testimony, which Was Not Expert Testimony ...................................................................................................... 10

    C.  Dr. Jeffay's Testimony was Not Contrary to the Court's Construction and Implicit Waived This Objection By Not Timely Raising It. ................................................. 13

    D.  NetScout Did Not Present Any Prior Art At Trial ......................................... 14

V.   CONCLUSION ................................................................................................... 15

## I.      INTRODUCTION

Implicit failed to persuade the jury that NetScout's products: (1) utilize a "sequence of routines"[1] as construed by the Court; and, (2) operated on or converted packets whose outermost header was TCP.[2] The great weight of evidence demonstrated the opposite. On both points, the jury considered and weighed the documentary evidence, testimony, and credibility of the witnesses and properly determined that Implicit failed to satisfy its burden. Implicit does not even come close to demonstrating that no reasonable jury could have reached the verdict of non-infringement on the basis of evidence presented on either point. The jury reached the correct result in view of the evidence properly applied to the Court's construction of the Asserted Claims.

Implicit alternatively argues that the Court made a variety of errors leading up to and during trial. First, Implicit re-argues that the Court improperly construed the claims of Implicit's patents. This is the second attempt by Implicit to undo the Court's constructions, but such arguments should have no place in the context of a New Trial Motion. Second, Implicit suggests that the Court improperly allowed NetScout to present expert testimony through its fact witnesses. Notwithstanding that Implicit only objected to one line of questioning (waiving its objections to everything else), no NetScout fact witness offered any opinions of non-infringement or testified at all about the Asserted Claims as construed by the Court. Next, Implicit complains that NetScout's expert presented testimony contrary to the Court's constructions, but Dr. Jeffay's testimony readily refutes Implicit's contention. Finally, Implicit contends that NetScout improperly used a demonstrative in violation of the parties' stipulation regarding invalidity. The Court properly

---

[1] The Court construed "sequence of [two or more] routines" and "list of conversion routines" similarly. *See* Dkt. 111 at 14, 15. Each asserted claim included at least one of these terms.
[2] The Court construed several related terms in similar manner as requiring operation on or conversion of packets having an outermost header of TCP, referred to herein as the "execute" and "convert" limitations. Dkt. 111 at 25-28, 33-36.

overruled Implicit's objection because NetScout's use of the demonstrative in question did not in any way breach the parties' stipulation. The Court closely monitored and policed the incoming evidence at trial to ensure it was fair and proper. The evidence presented and the conduct of the trial was fair, and the jury's verdict was reliable and consistent with the weight of the evidence.

## II.     LEGAL STANDARDS

The Court is familiar with the standards applicable to Motions for Judgment as a Matter of Law under Fed. R. Civ. P. 50 and 59 as set forth in, for example, *Packet Intelligence LLC v. Sandvine Corp.*, No. 2:16-CV-00147-JRG, 2018 WL 9869748, at *1-2 (E.D. Tex. Sept. 7, 2018).

## III.    THE COURT SHOULD DENY IMPLICIT'S MOTION FOR JMOL

The trial record includes a great weight of evidence supporting the jury's verdict, and Implicit cannot show that no reasonable juror could return a verdict of non-infringement. The jury was presented with ample evidence through both testimony and source code that the NetScout products do not use a "sequence of routines" as construed by the Court, and do not satisfy the requirements of the "execute" and "convert" limitations of the Asserted Claims, which both require operations on one or more packets having an outermost header of TCP. The jury weighed the evidence and evaluated the credibility of the witnesses. The jury disagreed with Implicit, and the jury's verdict is well-supported and should not be disturbed.

### A.     Implicit Did Not Establish That NetScout's Products Have or Use a "Sequence of Routines"

Implicit focuses its argument on whether a "path" (purportedly shown as a data structure in a flow table entry) is created after receiving a packet. Dkt. 249 (Motion) at 2-3.[3] Implicit's

---

[3] Notably, the term "path" does not appear in the asserted claims of the '104 patent and a "path" that "includes one or more data structures" does not appear in the '790 patent. Moreover, Implicit appears to now contend that the "path" must *be* a data structure, not merely "include" one as literally required by the asserted claims of only one of the asserted patents. Motion at 2. In contrast, the Court's construction of "sequence of routines" is required by each asserted claim.

argument misdirects the analysis away from the Court's interpretation of the term **"sequence of routines."** In fact, Implicit's Motion does not even address the Court's construction, which was one of just two constructions that was at the heart of the parties' dispute at trial. Pursuant to the Court's construction, a "sequence of [two or more] routines" is an "ordered arrangement of [two or more] software routines that was not selected from a set of arrangements created before receiving the first packet of the message." Dkt. 111 at 14.[4] NetScout's evidence was tailored specifically to the Court's construction as Implicit's evidence should have been. *See, e.g.,* Ex. 1, 12/11 PM Trial Tr. at 132:12-15 ("So the flow entries aren't the issue. The issue is, is the sequence of routines that's processing the packet, is it created before or after you receive the first packet of a message."). Implicit did not present any evidence whatsoever that NetScout's products select from a set of arrangements that was created after the first packet of the message is received. Implicit paid no mind to when the set of arrangements (or the selected arrangement itself) were actually created because the evidence on this critical point was entirely contrary to the Court's construction. Thus, Implicit's evidence completely missed the mark, and failed to demonstrate anything that was actually relevant to the Court's construction. Implicit's Motion should be denied.

Furthermore, the jury heard ample evidence that placing an entry in a flow table after receiving the first packet of a message has nothing to do with when the arrangements of software routines in the Accused Products are created. Ex. 2, 12/11 AM Trial Tr. at 38:22-39:6, 40:15-41:1; Ex. 1, 12/11 PM Trial Tr. at 4:16-17; Ex. 3, 12/11 PM SEALED Trial Tr. at 6:25-7:11, 9:16-20. Dr. Jeffay also testified that entries in a flow table have nothing to do with when the arrangement of processing routines is created. *See* Ex. 1, 12/11 PM Trial Tr. at 129:20-22, 132:2-15.

---

[4] In the context of Claim 1 of the '683 Patent, for example, the construction requires that the system "create … a path that includes one or more data structures that indicate [an ordered arrangement of software routines that was <u>not selected from</u> **a set of arrangements created before receiving the first packet** of the message] for processing packets in the message."

Properly applying the Court's construction of "sequence of routines," NetScout presented unrebutted evidence from NetScout's witnesses that each of NetScout's products **only** "select from a set of arrangements created before receiving a first packet of the message." Put another way, all of the arrangements of software routines used in NetScout's products are pre-created when the software is being coded by developers. There are no new arrangements of software routines that are created after a first packet of a message is received. This type of system is exactly what was excluded by the Court's construction in view of Implicit's disclaimer.

NetScout presented three fact witnesses – Paul Barrett (InfiniStream), John Curtin (GeoProbe), and Scott Dawson (Arbor) – each of whom were personally involved for many years with their respective products. Ex. 2, 12/11 AM Trial Tr. at 17:23-18:10, 69:6-22, 73:5-74:23; Ex. 1, 12/11 PM Trial Tr. at 39:16-40:14, 45:18-46:14. Each of these witnesses testified that the set of all possible arrangements of software routines, including all hard-coded connections between routines, are created and known from the time of development before any packet is received. *See Barrett Testimony* – Ex. 2, 12/11 AM at 28:3-33:1, 33:7-35:3, 40:15-41:11; Ex. 4, 12/11 AM SEALED Trial Tr. at 4:23-5:9; *Curtin Testimony* – Ex. 2, 12/11 AM Trial Tr. at 82:10-86:19, 89:6-90:19, 91:9-22, 93:21-95:2; *Dawson Testimony* – Ex. 1, 12/11 PM Trial Tr. at 49:20-24, 52:1-10, 54:18-55:17, 55:24-58:22, 61:18-62:3, 64:20-22; Ex. 3, 12/11 PM SEALED Trial Tr. at 5:22-25, 7:9-11. Because all sets of arrangements are created before receiving a first packet of the message, it is known exactly how that packet will be processed by each of the accused products. *See, e.g.,* Ex. 2, 12/11 AM Trial Tr. at 33:25-34:5; 38:12-15; 92:6-17, 93:21-25. Put simply, all of the "arrangements of software routines" in NetScout's products–i.e., the "set of arrangements"–are created before the product is ever sold. This evidence fully supports the jury's finding that NetScout's products do not include a "sequence of routines," as construed by the Court.

The jury's verdict is further supported by the fact that, in NetScout's products, an

4

arrangement of software routines cannot be created or changed after receiving a first packet of a message. Instead, adding a new arrangement of software routines or adding new connections between routines (which results in a new arrangement), requires that each of the NetScout products be re-coded. *See Barrett Testimony*–Ex. 2, 12/11 AM Trial Tr. at 29:20-30:3, 31:22-32:6; 32:12-33:1; 34:8-10, 34:12-35:23, 38:5-19, 40:15-41:1; *Curtin Testimony*–*Id.* at 83:4-7, 88:6-16, 90:2-19, 92:6-9, 94:8-23, 96:11-19; *Dawson Testimony*–Ex. 1, 12/11 PM Trial Tr. at 55:18-23, 57:14-19, 59:1-20, 61:2-13, 62:1-3, 63:7-23; Ex. 3, 12/11 PM SEALED Trial Tr. at 3:8-4:17.

Based on his independent review of NetScout's source code, which confirmed the accuracy of NetScout's fact witness testimony, Dr. Jeffay provided his expert opinion that none of the Asserted Claims were applicable to NetScout's Accused Products. Ex. 1, 12/11 PM Trial Tr. at 92:18-93:5, 143:19-24, 146:8-13, 148:11-17. Dr. Jeffay testified that NetScout's products did not infringe because none of the products created any arrangement of software routines after receiving a first packet of a message. Instead, the NetScout products only selected from a set of arrangements created before receiving any packets of a message. Ex. 1, 12/11 PM Trial Tr. at 98:20-99:14, 119:18-126:4, 126:16-128:7, 132:21-133:9, 150:16-150:25, 151:16-152:4, 158:15-164:13. Even Dr. Almeroth acknowledged that such a system does not infringe. Ex. 5, 12/12 AM Trial Tr. at 117:22-118:3; *see* Ex. 1, 12/11 PM Trial Tr. at 130:19-132:1. Dr. Jeffay testified unequivocally that the NetScout products do not infringe any of the Asserted Claims. Ex. 1, 12/11 PM Trial Tr. at 158:15-164:13. The jury's verdict is amply supported by record evidence and should be upheld.

B.      **Implicit Did Not Establish that NetScout's Products Satisfy the "Execute" or "Convert" Claim Requirements**

The Court should also deny Implicit's Motion because the jury's verdict is supported by a great weight of evidence demonstrating that NetScout's Products do not "operate on one or more packets whose outermost header is a TCP header" or "convert the outermost header structure of

the packet(s) from TCP to another type of header structure." Implicit's evidence did not establish that the NetScout products operate on or convert any packets whose outermost header is TCP.

In contrast, NetScout's evidence demonstrated that the Accused Products do not operate on or convert from packets having an outermost header of TCP. The evidence demonstrated that NetScout's products all receive Ethernet packets and that the entire Ethernet packet remains in memory at all times throughout processing. Ex. 2, 12/11 AM Trial Tr. at 26:6-11, 42:25-43:25, 93:5-9; Ex. 1, 12/11 PM Trial Tr. at 5:21-60, 11:17-24; 65:19-21, 66:15-25, 70:2-14. NetScout witnesses all testified that the NetScout products do not ever operate on a packet whose outermost header is TCP. Ex. 2, 12/11 AM Trial Tr. at 56:15-20; Ex. 1, 12/11 PM Trial Tr. at 11:17-24, 70:2-14. This is because the outermost header of the packet is never TCP in NetScout's products. Ex. 2, 12/11 AM Trial Tr. at 56:15-20; Ex. 1, 12/11 PM Trial Tr. at 5:21-6:20, 66:15-25, 70:2-14.[5]

The evidence further demonstrated that NetScout's products do not convert the outermost header structure of the packet from TCP to a different header structure. Ex. 2, 12/11 AM Trial Tr. at 41:12-42:11, 45:1-47:1, 52:25-53:7, 80:7-9; Ex. 1, 12/11 PM Trial Tr. at 6:14-20, 11:13-12:2, 13:20-14:2, 15:7-14; 44:5-11, 65:22-66:4, 67:12-15, 70:2-11, 72:2-10. NetScout's witnesses also explained why the NetScout products do not have packets with outermost headers of TCP or convert the header structure of packets from TCP. In the case of Infinistream and GeoProbe, users would not be able to troubleshoot their networks or accurately track statistics. Ex. 2, 12/11 AM Trial Tr. at 41:23-42:11; Ex. 1, 12/11 PM Trial Tr. at 6:14-7:6. For Arbor, the network traffic would not get to its destination if headers were changed. Ex. 1, 12/11 PM Trial Tr. at 65:22-66:4.

Dr. Jeffay offered expert testimony explaining how the jury could simply determine the "outermost header" of a packet. Ex. 1, 12/11 PM Trial Tr. at 136:12-137:14. In the NetScout

---

[5] For the same reasons, the NetScout products do not perform the "converting" limitations.

products, the entire packet is stored in memory. *Id.* at 144:7-16, 145:1-4, 147:15-20. Dr. Jeffay confirmed that at no point in any of the products is there a packet that has an outermost header of TCP, nor does the outermost header of a received packet ever change from TCP to some other header structure. *Id.* at 133:12-136:9, 144:7-150:9, 156:23-158:11; *see also id.* at 142:4-17.

Implicit, through Dr. Almeroth, presented a theory based on pointers that purportedly constituted "representations of a packet," and Implicit's Motion regurgitates this theory (without using the word "representation"). *See, e.g.,* Ex. 6, 12/10 AM SEALED Trial Tr. at 21:17-22:18, 24:1-3, 25:12-15, 27:25-28:9, 49:16-13; *see also* Motion at 3-4. The Court's construction does not discuss "representations of a packet," but instead requires operation on or conversion of "a packet" with an outermost header structure of TCP. *See* Dkt. 248 (§285 Motion) at 3-8. Furthermore, the Court's construction of "execute a TCP" considers whether the operation occurs on a packet whose "outermost header" is TCP, not just any operation that starts at the first byte of the TCP header as Implicit contends and Dr. Almeroth would have the jury believe. *Id.* at 7-8; Motion at 3-4. Thus, Dr. Almeroth's testimony did not align with the Court's construction and the jury was free to reject it and apply the literal language of the Court's construction to the evidence presented by NetScout.

Furthermore, NetScout's fact witnesses testified that using a pointer does not create a "representation" of a packet. Ex. 2, 12/11 AM Trial Tr. at 51:17-52:19; Ex. 1, 12/11 PM Trial Tr. at 71:4-9. The use of pointers does not change the underlying packet. Ex. 2, 12/11 AM Trial Tr. at 45:1-46:6, 46:17-47:1, 52:5-10; Ex. 1, 12/11 PM Trial Tr. at 12:18-21, 13:20-14:2, 67:12-15. Dr. Jeffay likewise noted that using a pointer does not change the outermost header of packet. *Id.* at 135:21-136:5, 143:16-18, 148:3-8. Thus, there was ample evidence, even considering Implicit's pointer-based theory, to support the jury's finding of non-infringement. Implicit has not shown that no reasonable juror would have found infringement on the basis of NetScout's substantial record evidence that actually aligned with the Court's construction.

C.      **Implicit's JMOL Should Be Denied**

The trial evidence on the "sequence of routines" and "execute"/"convert" claim requirements fully support the jury's verdict. Of course, Implicit's JMOL motion must be denied if the evidence supported the jury's verdict of non-infringement on either ground. Here, the jury rejected Implicit's theories, presented through Dr. Almeroth's testimony. The jury credited the testimony of NetScout's fact witnesses and Dr. Jeffay. The jury weighed this conflicting testimony and the respective credibility of the witnesses and agreed with NetScout. Implicit cannot demonstrate that no reasonable juror would have found non-infringement on the present evidentiary record and, therefore, the Court should not disturb the jury's verdict. *See Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.,* 554 F.3d 1010, 1024 (Fed. Cir. 2009) ("[T]he Fifth Circuit has made clear that the jury is entitled to disbelieve a party's expert if it chooses."); *Metaswitch Networks,* 2017 WL 3704760, at *7 ("It is … improper, for the Court to second guess the credibility determinations of the jury."); *see also* Ex. 7, 12/13 AM Trial Tr. at 9:2-4 ("You [] are the sole judges of the credibility of each and every witnesses and the weight and effect to be given to all the evidence in this case."); 11:22-25.[6]

IV.     **THE COURT SHOULD DENY IMPLICIT'S MOTION FOR A NEW TRIAL**

Implicit next sets out to attack the Court's claim constructions, NetScout's presentation of its case, and the Court's management of the trial in the hope of convincing the Court that the trial was unfair. To the contrary, the Court's constructions were well-reasoned and fully supported by

---

[6] Implicit also incorrectly argues that it presented unrebutted evidence of inducement. Motion at 2. First, where there is no direct infringement, there can be no inducement. *Vanda Pharm. Inc. v. West-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018). Second, Implicit failed to present any evidence that NetScout specifically intended that its customers infringe. *Id.* ("[It] must be established [to show inducement] that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement."); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

both intrinsic and extrinsic evidence. The trial was well managed, and the Court effectively policed the submission of all evidence. There was no unfairness at all during NetScout's presentation of its case, much less to the degree of prejudice necessary to justify setting aside the jury's verdict. Implicit's Motion should be denied.[7]

### A. The Court's Claim Construction was Correct

In its second attempt to dispute the claim constructions, Implicit seeks reconsideration of the Court's *Markman* Order under the guise of a motion for new trial. Implicit cites no authority for the notion that it can even object in post-trial motions on the basis of claim constructions when the Court's *Markman* deadlines have long since passed.[8] Moreover, case law suggests Implicit's "objections to the Court's claim construction order are best taken up on appeal, rather than in post-trial motions." *OPTi, Inc. v. VIA Techs., Inc.*, 65 F. Supp. 3d 465, 476 fn.1 (E.D. Tex. 2014).

If the Court considers Implicit's claim construction objection, it should go without saying that the Court already has overruled Implicit's objections to the constructions. Dkt. 120. Implicit does not present any new argument that the constructions were incorrect, instead relying on its prior arguments.[9] *See* Motion at 6 ("The Court incorrectly construed the 'sequence of routines' related terms, as Implicit laid out in its prior briefing."), 7-8 ("As Implicit previously argued …"). Implicit's motion should be denied because the Court's constructions were well supported and Implicit has failed to demonstrate a manifest error of law or fact. *See* Dkt. 111 at 8-15, 23-36; *see*

---

[7] Implicit also moves for a new trial for the same reasons recited in its JMOL Motion. Motion at 5. It should be denied for the reasons recited in this Response.

[8] The sole case cited by Implicit is *Avid Tech. Inc. v. Harmonic, Inc.* 812 F.3d 1040, 1047 (Fed. Cir. 2016). Motion at 6. However, in that case, the constructions were reversed on appeal and, therefore, the Federal Circuit said a new trial was warranted. *Id.* at 1046-47.

[9] Implicit points to one piece of evidence not relied upon during claim construction, but that evidence was available to Implicit during the claim construction process given it is cited on the face of the patent and, thus, is not "newly discovered evidence." *See* Motion at 8, fn.2. Implicit has foreclosed the use of any such evidence by not presenting it according to the Court's Scheduling Order timeline regarding claim construction.

*also* Dkt. 93 at 1-23; *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co*., No. 2:13-CV-213-JRG, 2016 WL 633909, at *4 (E.D. Tex. Feb. 17, 2016) (denying new trial based on incorrect claim construction because "[t]hat decision, when made, was not clearly erroneous or contrary to the law and has not since created such prejudicial error that new trial is warranted."). Implicit's Motion based on an incorrect claim construction should be denied.

### B.   Implicit Waived Its Objection to the NetScout's Witnesses Testimony, which Was Not Expert Testimony

Implicit next complains that NetScout's witnesses testified about ultimate infringement issues, pointing to eleven instances of testimony. Motion at 10-11. Not only was this testimony properly directed to the operation of NetScout's products, but Implicit failed to raise a contemporaneous objection to all but one of the cited instances. "Federal Rule of Evidence 103 requires that a specific objection be made contemporaneously with the disputed testimony." *Freeman v. Gore*, No. 6:04CV526-MHS, 2008 WL 11447967, at *5 (E.D. Tex. June 12, 2008); *see also United States v. Breland*, 366 F. App'x 548, 552 (5th Cir. 2010) ("[A] party must make a contemporaneous objection … unless the court grants a continuing objection."); *C.P. Interests, Inc. v. California Pools, Inc*., 238 F.3d 690, 699 (5th Cir. 2001). Implicit's failure to contemporaneously object to 10 of the 11 instances of alleged objectionable testimony "constitutes textbook waiver" and is an impermissible basis on which to seek a new trial. *See Packet Intelligence*, 2018 WL 9869748, at *4 (denying motion for new trial based on testimony that was not objected to at trial) (citing *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988)); *see also Contentguard Holdings, Inc. v. Apple Inc.*, No. 2:13-CV-1112-JRG, 2016 WL 1637280, at *4 (E.D. Tex. Apr. 25, 2016), *aff'd*, 701 F. App'x 957 (Fed. Cir. 2017).[10]

---

[10] The Court forewarned the parties that these types of objections would need to be taken up as they occur. Ex. 2, 12/11 AM Trial Tr. at 50:24-25 ("But we'll have to take this up on a question-

In addition, Implicit's failure to object infects the one piece of testimony that it did object to, in effect waiving its right to complain about testimony on similar subject matter. *See Bailey v. Southern Pac. Transp. Co.*, 613 F.2d 1385, 1389 (5th Cir. 1980), *cert. denied*, 449 U.S. 836 (1980) (holding that party's failure to object to challenged testimony on four of the five occasions on which it was offered meant that the issue was waived); *see also C.P. Interests*, 238 F.3d at 696-97, 699; *Freeman*, 2008 WL 11447967, at *5. For these reasons, Implicit's Motion should be denied.

Regarding the substance of the testimony about which Implicit now complains, it was all fair testimony regarding the operation of NetScout's products. This testimony was monitored by the Court and in the one instance where Implicit did object (Ex. 2, 12/11 AM Trial Tr. at 98:2-4), during the testimony of Mr. Curtin, the Court considered and overruled the objection. *Id.* at 99:11-12. Here, Mr. Curtin was testifying from his personal knowledge about the operation of the GeoProbe product and, specifically, the implementation of "processing paths." *See, e.g., id.* at 97:16-23 ("We test [every new protocol that we implement] with packets we receive … to ensure that the ***processing path*** we have implemented works correctly.").[11] Implicit now similarly identifies other witness testimony, for which Implicit offered no contemporaneous objection, regarding when the processing paths of the products were created. Motion at 10-11 (citing Trial Tr. 12/11/2019 A.M. at 38:5-25, 91:20-22; Trial Tr. 12/11/2019 P.M., at 4:16-17, 58:19-22). As the Court noted, witnesses are "entitled to testify from [their] own personal knowledge [about] the products [they are] familiar with" and that testifying about a product "as either having this attribute or that attribute … does not call for an expert opinion." Ex. 1, 12/11 PM Trial Tr. at 51:6-15; *see*

---

by-question basis."); 51:4-7 (same). Implicit should have known that it would need to continuously object in order to properly preserve the issue. *See C.P. Interests*, 238 F. 3d at 699.

[11] Dr. Dawson specifically testified that he was using "processing path" according to his own understanding. *See* Ex. 3, 12/11 PM SEALED Trial Tr. at 19:17-20 ("I'm not using processing path [] in the nature of the claims … I'm using it in the nature of computer programming.").

*also* Ex. 2, 12/11 AM Trial Tr. at 50:18-20.

The other alleged instances, for which Implicit offered no contemporaneous objection, relate to witness testimony regarding the "outermost header" of a packet during processing by the products. Motion at 9-10 (citing Trial Tr. 12/11/2019 A.M., at 52:5-10, 46:23-47:1, 52:25-53:7, 56:15-20; Trial Tr. 12/11/2019 P.M., at 70:12-71:9, 72:2-8). The outermost header of the packet during processing is an attribute of the operation of the products for which the witnesses had personal knowledge–and is proper testimony. Moreover, Implicit had advance notice that the witnesses would testify in this **exact manner**. *See* Dkt. 142 at 5-10 (¶¶1-17, including declarations and deposition testimony cited in support). There is nothing improper in presenting factual testimony about the operation of the products using the plain language used by the Court in its constructions.[12] But the language used in the questions of, and testimony by, NetScout's witnesses is based on their personal experience with the products (e.g., outermost header, processing paths, convert, etc.). It is, therefore, proper lay witness testimony. *See Fresenius*, 2006 WL 1330002, at *3. Implicit could have questioned each of the witnesses on their personal understanding of the language used by the witnesses to describe how the products operated, but did not do so.[13]

---

[12] The cases cited by Implicit recognize that a witness may testify regarding facts within their personal knowledge, which is exactly what NetScout's witnesses did. *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 597, 2006 WL 1330002, at *3 (N.D. Cal. May 15, 2006); ("courts regularly allow lay witnesses [] to testify with regard to their personal knowledge of a particular invention or piece of prior art"); *Gart v. Logitech, Inc.*, 254 F. Supp. 2d 1119, 1123–24 (C.D. Cal. 2003) ("[witnesses] are permitted to testify as lay witnesses based on their personal knowledge"). The testimony only becomes problematic when it ventures into areas about which the witness does not have personal knowledge. *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 714 (Fed. Cir. 2005) (holding that inventor could not testify about the accused products because he did not have personal knowledge and experience in their structure and workings); *Certusview Techs., LLC v. S&N Locating Servs.*, LLC, 198 F. Supp. 3d 568, 580–81 (E.D. Va. 2016) ("[T]estimony constitutes improper lay testimony [if the witness] is interpreting and construing patent counsel's statements advocating the patentability of a specific patent in a patent prosecution submission to the PTO, and comparing such statements against his own patent.").

[13] Had Implicit objected, the witnesses could have readily explained to the jury, for example, that "outermost header" is terminology used by NetScout, including in its source code.

Moreover, Implicit acknowledges that NetScout's witnesses testified on cross-examination that they were not testifying as experts. Motion at 12. Two of three NetScout fact witnesses also testified that they were not using the claim language or opining about infringement when they were asked on cross-examination. *See, e.g.,* Ex. 3, 12/11 PM SEALED Trial Tr. at 18:25-19:20, 22:18-24; Ex. 1, 12/11 PM Trial Tr. at 16:17-17:5. Implicit could have confirmed this for Mr. Barrett as well if Implicit was legitimately concerned the jury might be confused about the nature of his testimony but opted not to do so. The witnesses used their plain language understanding of how the Accused Products operate and did not once suggest they were opining on non-infringement. There is nothing objectionable or prejudicial about such testimony.

Because Implicit did not properly object to the testimony about which it now complains and because the testimony related to the operation of the accused products about which the witnesses had personal knowledge, the Court should deny Implicit's Motion on this ground.

## C.     Dr. Jeffay's Testimony was Not Contrary to the Court's Construction and Implicit Waived This Objection By Not Timely Raising It.

Implicit argues that Dr. Jeffay's testimony contradicted the Court's *Markman* Order because he allegedly testified that the claims were limited to "end systems." First, Implicit waived any objection to this testimony by not timely raising it through a contemporaneous objection.[14] *See Contentguard*, 2016 WL 1637280, at *4 ("ContentGuard failed to object during trial to the other testimony it now claims is contrary to the Court's Markman [order]. Such argument is untimely and has been waived."); *see also C.P. Interests*, 238 F.3d at 696-97, 699; *Breland*, 366 F. App'x 548, 552; *Bailey*, 613 F.2d at 1389. Thus, Implicit's Motion should be denied.

Second, Dr. Jeffay did not testify (nor did NetScout ever argue) that a product needs to be

---

[14] Implicit raised this issue in chambers, where the Court noted the absence of a contemporaneous objection, and invited Implicit to address its concerns through cross-examination of Dr. Jeffay the next day. Implicit chose not to, nor did it ever properly raise this objection on the record.

an "'end system' device to infringe." Instead, Dr. Jeffay testified about what the Asserted Patents describe in the specification, but never said the claims were restricted to end systems. Dr. Jeffay expressly stated this on cross-examination. Motion at 13; Ex. 1,12/11 PM Trial Tr. at 165:10-15. In fact, Dr. Jeffay testified that the claims could be applied to a system sitting in between two devices (i.e., not an end system). *Id.* at 165:22-166:2. Even Dr. Jeffay's testimony relied on by Implicit shows the true nature of his testimony. Motion at 13 ("…as described in the specification of the patents…"). Dr. Jeffay never testified, and NetScout never argued, that Implicit's claims were restricted to end systems.[15] Implicit's Motion should be denied on this ground as well.

### D.    NetScout Did Not Present Any Prior Art At Trial

Implicit lastly suggests that NetScout's use of a demonstrative during cross-examination of Dr. Almeroth and in closing arguments violated the parties' "Stipulation Regarding Invalidity." *See* Dkt. 211. While Implicit did properly raise this objection at trial, it was duly considered and overruled by the Court, which correctly recognized there was nothing objectionable about drawing a hypothetical system on a piece of paper. *See* Ex. 5, 12/12 AM Trial Tr. at 112:7-9. The fundamental problem with Implicit's argument is that NetScout did not present the demonstrative as prior art, suggest it was prior art, suggest that it had anything to do with the prosecution history, or in any way compare the demonstrative to the functionality of the Accused Products. From the jury's perspective, the demonstrative was presented only as a hypothetical system with pre-created

---

[15] Implicit appears to base its argument on the *Markman* Order's statement that "no disclosure in this regard appears in the specification." Motion at 13 (citing Dkt. 111 at 34). There, the Court was saying there is no support for limiting the claims to endpoints, not that endpoints are not described in the specification. Such a statement would not have been supported by the prosecution history. Dkt. 111 at 35. In fact, the Court even recognized the possibility that "an endpoint of a connection [may be] necessitated by a particular limitation in a particular claim by virtue of using TCP[.]" However, it found that inclusion of "endpoint of a connection" in the construction was unnecessary. Dkt. 111 at 35. Thus, Dr. Jeffay's testimony that the specification describes end systems was entirely consistent with the *Markman* Order, and reflected the understanding of the specification from the perspective of one skilled in the art, i.e., Dr. Jeffay.

processing paths, and the questions surrounding the demonstrative were properly directed to how such a hypothetical system operated and whether it would or would not practice the asserted claims. *See id*. at 112:18-116:11. This was fair cross-examination, especially in view of Dr. Almeroth's testimony about the difference between possible paths and created paths. *See id.* at 101:8-15.

It may be the case that Dr. Almeroth chose to evade questioning because he assumed the hypothetical system was the prior art that Implicit disclaimed during prosecution, but NetScout did not do anything that would suggest this in any way to the jury (or to Dr. Almeroth for that matter). Dr. Almeroth freely chose to evade every question posed to him regarding the demonstrative when he could have just as easily answered the questions. *Id.* NetScout was perfectly within its rights to call his credibility into question during closing arguments due to this evasiveness.[16] The demonstrative was never presented as prior art, or even as a system that existed at all in a non-hypothetical sense, and it was not compared in any way to the functionality of the accused products. From the jury's perspective, it was a hypothetical system presented as a demonstrative and treated as such – i.e., not as evidence. Finally, Implicit's Motion fails to show any actual prejudice from allowing the use of a demonstrative, particularly where Dr. Almeroth did not provide any substantive responses. Implicit's Motion should be denied.

## V.    CONCLUSION

Based on the foregoing, the Court should deny Implicit's Motion for Judgment as a Matter of Law and Motion for a New Trial.

---

[16] NetScout also notes that Implicit waived any objection to use of the demonstrative during closing argument. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012) (finding that objection to closing arguments were waived where party "raised no objection to the statements at trial" and, therefore, the "court need not consider them"); *Geoffrion v. Nationstar Mortg. LLC*, 182 F. Supp. 3d 648, 673 (E.D. Tex. 2016); *Nissho-Iwa.*, 848 F.2d at 619.

Dated:  January 24, 2020

Respectfully submitted,

/s/ *Melissa R. Smith*
Eric A. Buresh (KS Bar 19895)
Mark C. Lang (KS Bar 26185)
**ERISE IP, P.A.**
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Telephone: (913) 777-5600
Facsimile: (913) 777-5601
eric.buresh@eriseip.com
mark.lang@eriseip.com

Abran J. Kean (CO Bar 44660)
**ERISE IP, P.A.**
5600 Greenwood Plaza Blvd., Suite 200
Greenwood Village, CO 80111
Telephone: (913) 777-5600
abran.kean@eriseip.com

Melissa Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, L.L.P.**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

*Counsel for Defendant NetScout Systems, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing document was served on counsel for all parties appearing in this action via the Court's electronic filing system on January 24, 2020.

/s/ *Melissa R. Smith*
Melissa R. Smith