# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 2:18-cv-53-JRG |
| v. | § | LEAD CASE |
| | § | |
| NETSCOUT SYSTEMS, INC., | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF IMPLICIT, LLC'S
## RESPONSE TO NETSCOUT SYSTEMS, INC.'s MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285 (DKT. 248)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTUAL BACKGROUND ....................................................................................... 1

III.   APPLICABLE LAW .................................................................................................... 1

IV.    ARGUMENT ................................................................................................................ 1

       A.     Implicit's Infringement Allegations Were Reasonable ........................................ 2

              1.   Implicit's "Execute" and "Convert" Allegations Did Not Violate the *Markman* Order ........................................................................................... 4

              2.   Implicit's "Sequence of Routines" Allegations Did Not Violate the *Markman* Order ........................................................................... 6

       B.     The *Sandvine* Stipulation Does Not Render This Case Exceptional ..................... 10

       C.     The Parties' Conduct Weighs Against an Exceptional Case Finding ................... 11

       D.     If the Court Does Not Deny NetScout's Motion on the Merits, Implicit Respectfully Requests That the Court Deny the Motion Without Prejudice Pending the Exhaustion of Any Appeals ............................................................. 14

V.     CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Aten Int'l Co. v. Uniclass Tech.*
    No. CV 15-04424-AG (AJWx), slip op. (C.D. Cal. Mar. 30, 2018) ................................... 6

*Checkpoint Sys. v. All-Tag Sec. S.A.*
    858 F.3d 1371 (Fed. Cir. 2017) ....................................................................................... 3

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*
    572 U.S. 559 (2014) ........................................................................................................ 2

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*
    603 F.3d 943 (Fed. Cir. 2010) ......................................................................................... 3

*Octane Fitness, LLC v. ICON Health & Fitness, Inc*
    572 U.S. 545, 554 (2014) ................................................................................................ 2

*Packet Intelligence LLC v. NetScout Sys.*
    No. 2:16-CV-00230-JRG, 2019 U.S. Dist. LEXIS 64479
    (E.D. Tex. Apr. 15, 2019) ................................................................................................ 1

*Packet Intelligence LLC v. Sandvine Corp.*
    No. 2:16-CV-00147-JRG, 2018 U.S. Dist. LEXIS 230932
    (E.D. Tex. Sep. 7, 2018) ........................................................................................... 11, 13

*Stone Basket Innovations, LLC v. Cook Medical LLC*
    892 F. 3d 1175 (Fed. Cir. 2018) ...................................................................................... 6

*Stragent, LLC v. Intel Corp.*
    2014 U.S. Dist. LEXIS 169080 (E.D. Tex. Aug. 6, 2014) ............................................ 3, 6

*Tinnus Enters., LLC v. Telebrands Corp.*
    369 F. Supp. 3d 704 (E.D. Tex. 2019) .......................................................................... 12

*Whirlpool Corp. v. TST Water*, LLC
    No. 2:15-cv-01528, 2018 U.S. Dist. LEXIS 52833, 2018 WL 1536874
    (E.D. Tex. Mar. 29, 2018) ............................................................................................ 2, 3

**Rules**

35 U.S.C. § 285 ............................................................................................................................ 1

Advisory Committee Notes on 1993 Amendments to Rule 54 .................................................. 14

## I.    INTRODUCTION

This was not an exceptional case. NetScout does not allege litigation misconduct by Implicit. It instead argues that Implicit's infringement allegations on two limitations—the "execute" and "convert" limitations and the "sequence of routines" limitations—were exceptionally weak and then Implicit should have dropped this case after the *Markman* Order. NetScout ignores two key facts that Implicit raised on the meet-and-confer for this Motion: (1) the Court denied NetScout's motion for summary judgment on the first ground; and (2) NetScout failed to even move for summary judgment on the second ground. There is nothing exceptional about trying an issue that the Court concluded had enough merit to get tried. There is nothing exceptional about trying an issue that NetScout let go to trial. For these reasons and the reasons below, Implicit respectfully requests that the Court deny NetScout's Motion.

## II.    FACTUAL BACKGROUND

Implicit filed this case in 2018, alleging that infringement of three of Implicit's patents. The Court construed the disputed claim terms, resolved dispositive motions, and held a trial jury on December 9–13, 2019. Implicit asserted six claims at trial: claims 1 and 10 from U.S. Patent No. 8,694,693; claim 1 from U.S. Patent No. 9,270,790; and claims 1, 3, and 4 from U.S. Patent No. 9,591,104. The jury returned a verdict of noninfringement, and the Court signed a judgment on December 13, 2019, which was entered on the docket on December 16, 2019. Dkt. 225.

## III.    APPLICABLE LAW

A district court "may award reasonable attorney fees to the prevailing party" if the case is "exceptional." 35 U.S.C. § 285. "A case is 'exceptional' if it 'stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Packet Intelligence LLC v. NetScout Sys.*, No. 2:16-CV-00230-JRG, 2019 U.S. Dist. LEXIS 64479, at *5

(E.D. Tex. Apr. 15, 2019) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) and citing *Whirlpool Corp. v. TST Water*, LLC, No. 2:15-cv-01528, 2018 U.S. Dist. LEXIS 52833, 2018 WL 1536874, at *11 (E.D. Tex. Mar. 29, 2018)). The Court has discretion in the finding whether a case is exceptional or not. *Id.* (citing *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014)).

IV.     ARGUMENT

A.     **Implicit's Infringement Allegations Were Reasonable**

Implicit's infringement allegations in this case were reasonable and supported, as detailed in Implicit's post-trial motions. Dkt. 249, at 1–5. Implicit did not violate the *Markman* Order, and NetScout did not lodge any objection on that ground during Implicit's opening statements, case-in-chief, cross-examination of NetScout's witnesses, or closing arguments.[1] And if Implicit's infringement theories were as frivolous as NetScout now asserts, they would not have survived summary judgment, *Daubert*, or the pre-verdict judgment as a matter of law stages.

The claims, of course, did survive those stages. NetScout lost the summary judgment and *Daubert* motions it filed on the "execute" and "convert" limitations. Dkt. 209, at 2. NetScout chose not to file a summary judgment motion on the "sequence of routines" limitations. And it lost its pre-verdict motion for judgment as a matter of law on both issues—raising the same arguments presented in this Motion. *See, e.g.*, Trial Tr. 12/12/2019 P.M., at 16:1–18:1 (arguing that "the only evidence of record" of NetScout's products described a "system [that] is expressly excluded by the Court's claim construction" and that Dr. Almeroth's testimony relating to "pointers as representations of packets" is "directly contrary to the Court's construction"); *id.* at

---

[1] NetScout lodged one objection during Implicit's rebuttal case with regard to the "convert" limitation, which the Court overruled. Trial Tr. 12/12/2019 A.M., at 95:4–97:25, 105:5–106:5.

2

22:23–23:1 (denying NetScout's motion for judgment as a matter of law).

These facts weigh against finding this case exceptional, and NetScout's Motion does not address any of them. NetScout has not alleged litigation misconduct, and, "[a]bsent misrepresentation to the court, a party is entitled to rely on a court's denial of summary judgment and JMOL . . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial." *Checkpoint Sys. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017)) (second alteration in original) (quoting *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010)). NetScout's decision to not seek summary judgment on the "sequence of routines" limitation further weighs against an exceptionality finding. *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 169080, at *16 (E.D. Tex. Aug. 6, 2014) ("There is little injustice in forcing [the Defendant] to bear its own attorney's fees for defending a claim it did not challenge on summary judgment.").

This case went to a jury trial in which NetScout predominantly stressed the credibility of its witnesses over Dr. Almeroth. *See, e.g.*, Trial Tr. 12/13/2019 A.M., at 56:10–57:10, 63:20–64:7, 81:22–82:5. NetScout prevailed. But the fact that it won the trial is not a basis to shift fees absent some fairly egregious circumstances. *Stragent*, 2014 U.S. Dist. LEXIS 169080, at *15 (E.D. Tex. Aug. 6, 2014) ("Every case will have a loser."); *Whirlpool*, 2018 U.S. Dist. LEXIS 52833, at *34-35 (E.D. Tex. Mar. 29, 2018) (declining to find the case exceptional under Section 285, even though the Court's enhanced-damages analysis under *Read* found that the case "was not close," that the defendant had copied the patented filter design, and that the defendant lacked a good faith belief that it was not liable for infringement). Those circumstances are not present here. Implicit's infringement allegations were reasonable. This is not an exceptional case.

3

### 1. Implicit's "Execute" and "Convert" Allegations Did Not Violate the *Markman* Order

Implicit's infringement allegations for the "execute" and "convert" limitations did not violate the *Markman* Order. The Court denied NetScout's summary judgment on this motion, which raised the same grounds as this Motion. The Court denied that Motion because there was a genuine issue of material fact under the Court's construction that required a trial: "Counsel, I am persuaded that there is a live factual dispute as to how these products function, what's the role of the ethernet header, if any, when the TCP header is being processed." Dkt. 209, at 2; Summ. Judg. Tr. 11/13/2019, at 60:22–25, attached as Exh. A. It is not exceptional conduct for Implicit to try a case that the Court concluded had enough evidence to get tried.

NetScout's Motion focuses on Dr. Almeroth's use of the term "representation" when testifying at trial about the packet in the TCP routines, asserting it was not the actual packet. This is semantics and not substance. This case contained a significant amount of source code. Source code contains written expressions of instructions that represent how a device operates when the source code is compiled and run on a device.

Both sides pointed to source-code representations of the packets—NetScout pointed to certain header-file definitions and Dr. Almeroth pointed to the TCP routines. The claims show that Dr. Almeroth took the right approach because the claims focus on the TCP routines: the sequence of routines include "*a routine* that is used to execute a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format." '683 Patent, claim 1 (emphasis added). Dr. Almeroth explained that, in the TCP routines, the packet has TCP as its outermost header based on the creation of a pointer to the TCP header in the source code:

> Q. . . . What is the packet that's actually processed in these routines?
>
> A. The packet that's processed in these routines is the result of creating a pointer to the TCP structure. So it's a representation

4

> where TCP is the outermost header.
>
> Q. And so -- and is that the packet?
>
> A. That is. That's the packet that's being processed at this point in the source code. . . .
>
> Q. So does it matter that the ethernet header in some structure might still be there and the IP structure in some structure might be there?
>
> A. No, it doesn't.
>
> Q. And why doesn't it matter?
>
> A. It doesn't matter because you can have other representations of the packet. You need those other representations when you're processing those headers. But when you're processing the TCP header, the outermost header is TCP because of that pointer.

Trial Tr. 12/10/19 P.M., at 53:7–54:17;

Implicit lost the verdict. That is not grounds to shift attorney fees. Implicit's infringement

5

allegations were reasonable under the Court's claim construction. They did not violate the *Markman* Order and they were not frivolous. This was not an exceptional case.

### 2. Implicit's "Sequence of Routines" Allegations Did Not Violate the *Markman* Order

Implicit's evidence for the "sequence of routines" did not violate the Court's *Markman* Order and were not frivolous. NetScout's own conduct confirm this and weighs against a finding of exceptionality. NetScout did not object to Implicit's testimony or argument on the "sequence of routines" issue—despite now asserting that Implicit was violating the Court's *Markman* Order the whole time. *See Stone Basket Innovations, LLC v. Cook Medical LLC*, 892 F. 3d 1175, 1181 (Fed. Cir. 2018) ("[A] 'party cannot simply hide under a rock, quietly documenting all the ways it's been wronged, so that it can march out its 'parade of horribles' after all is said and done.'") (quoting *Aten Int'l Co. v. Uniclass Tech.*, No. CV 15-04424-AG (AJWx), slip op. at 5 (C.D. Cal. Mar. 30, 2018)). NetScout also did not move for summary judgment on the "sequence of routines" term or challenge Dr. Almeroth's report for allegedly violating the *Markman* Order. *See, e.g.*, *Stragent*, 2014 U.S. Dist. LEXIS 169080, at *16 (finding case was not exceptional where, although the infringement argument was "certainly a weak one," the defendant's failure to move for summary judgment on the issue suggested that the defendant "not always view [the plaintiff's] infringement position as frivolous"). NetScout let this issue get tried.

On the merits, Implicit's infringement allegations were reasonable. The Court's construction of the "sequence of routines" terms incorporated statements made regarding Mosberger (SCOUT), which the Court analyzed. Dkt. 111, at 11–13. In connection with those statements, the Court found that "[t]he patentee did not disclaim the *existence* of software routines prior to receiving a first packet of the message. The patentee explained that the claimed invention uses software routine *arrangements* that *were not created* prior to receiving a first packet of the

6

message." *Id.* at 13 (emphasis in original). The Court then construed the term as "an ordered arrangement of [two or more] software routines that was not selected from a set of arrangements created before receiving a first packet of the message." *Id.* at 14.

Implicit's evidence followed that construction. ███████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████. The individual routines indicated within a flow-table entry may exist before the first packet arrives (*e.g.*, the TCP processing routine). But Implicit did not disclaim that. The NetScout products create the arrangement of routines for a given flow only *after* the first packet of a flow arrives—when they create and fill out the flow-table entry data structure. ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████  █████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████ The flow-table entry was the accused data structure. ██████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████ That is not how the products work.

That is the difference between NetScout's products and a system like Mosberger (SCOUT) that Implicit discussed in prosecution. In Mosberger (SCOUT), the actual paths are pre-created before the first packet of a message arrives. Figure 3.6 from SCOUT (which was NetScout's "demonstrative") shows with the green lines (p1, p2, p3, p4, and p5) the pre-created "paths":

7



Figure 3.6: Paths Versus Classifiers

In this diagram, the green lines reflect the "paths." Those "paths" are created prior to Mosberger (SCOUT) receiving the first packet of a message. *See* Dkt. 111, at 11–13 (reproducing prosecution history regarding Figure 3.6). Then, Mosberger (SCOUT) selects from those pre-stored green paths (p1, p2, p3, p4, or p5) to handle the traffic as the packets arrive. *See id.*

NetScout's products do not do that. They do not pre-create any "path" like Mosberger (SCOUT) and then select from that existing "path." They do not fill out the flow table before receiving any packets and then simply select a pre-filled out flow-table entry for that flow.

NetScout's attempt to word-match excerpts from the trial transcript with the prosecution history is divorced from this basic distinction between Mosberger (SCOUT) and NetScout's products. Dr. Almeroth did not opine that NetScout's products select from pre-created "paths," as a review of the transcript surrounding NetScout's excerpted testimony shows:

> Q. (By Mr. Hurt) What did the -- how did the Court construe the sequence of routines limitation that's in this create a path element?
>
> A. The Court construed that as it appears here on Slide 54 as an ordered arrangement of two or more software routines that was not selected from a set of arrangements created before receiving the first packet of the message.
>
> Q. And do you recall the Defendant's witnesses testifying that the

8

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

> paths in their products were built years ago into the source code, way before any packets arrived?
>
> A. Yes, I remember that testimony.
>
> Q. And what is in the source code of the accused products?
>
> A. In the source code are possible paths.
>
> *Q. Are there created paths in the source code?*
>
> *A. No, there's not.*
>
> *Q. So what's the difference between a possible path and a created path?*
>
> *A. The difference between a possible path and a created path is that the created path includes information about what branch to actually take. So instead of being all the possible paths that you could take through the source code, it's the actual paths that you would take for particular packets.*
>
> Q. And what did the accused products actually do with regard to this sequence of routines limitation?
>
> A. What they actually do is they have a set of possible paths, and then when packets are received, *the exact processing modules that need to be used to process that packet is created at that point in time*.

*Compare* 12/12/2019 A.M. Trial Tr., at 100:18–101:21 (emphases added) *with* Mot. at 9 (omitting testimony); ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ To help explain the concept, Dr. Almeroth also provided a genetics-based analogy: the difference between the potential traits a future child of two parents could have (defined by parents' genes) versus the actual set of traits the child actually has upon creation. Trial Tr. 12/10/2019 A.M., at 14:2–16:3. NetScout did not assert that the analogy violated the *Markman* Oder—to the contrary, NetScout suggested in closing that the jury could use it in deciding infringement. 12/13/2019 A.M. Trial Tr., at 73:13–17 ("And if you want to think about Dr. Almeroth's -- I think he use genetic splicing

for children as an analogy. If you want to use that, use that analogy.").

The rest of NetScout's excised trial quotes were in the same vein as Dr. Almeroth's testimony above—distinguishing between: (1) creating a path after the first packet arrives (the NetScout products); and (2) having pre-created sets of arrangements like Mosberger (SCOUT) and then selecting from one of those. The Court's construction excluded the latter category when it held that the arrangement could not be "selected from a set of arrangements created before receiving the first packet of the message." Dkt. 111, at 14. Implicit alleged that NetScout's products fell in the former category and did not violate the *Markman* Order. Implicit lost the trial, but this was not an exceptional case.

### B. The *Sandvine* Stipulation Does Not Render This Case Exceptional

Implicit's decision to enter into a stipulation in the *Sandvine* case after the *NetScout* trial does not make this an exceptional case. Entering the stipulation was not a reflection that Implicit allegedly believed that that the *Sandvine* case was exceptionally weak or that the *NetScout* case was exceptionally weak, a fact NetScout should understand. Trial Tr. 12/9/2019 P.M., at 68:4–5 ("[P]eople settle lawsuits for a lot of reasons[.]") (NetScout Opening Statement). At the time of the stipulation, the jury had just returned a noninfringement verdict in this case. The *Sandvine* case involved the same counsel and experts, resulting in the same general noninfringement themes. With the jury's verdict in *NetScout*, it was reasonable for Implicit to enter the *Sandvine* stipulation to conserve the resources of the parties and the Court and allow an appeal of the legal issues in the *Sandvine* case.

Even Sandvine, represented by the same counsel as NetScout, stipulated that it would "bear its own costs and fees" in the litigation. Case No. 2-18-cv-54, Dkt. 17, at 4. This confirms that Implicit took a reasonable approach—otherwise Sandvine would have sought fees. And that

10

NetScout's counsel, after agreeing to the *Sandvine* stipulation, then turned around and used the stipulation to try and shift fees in this case weighs against an exceptional case finding.

NetScout contends that the *Sandvine* stipulation shows that Implicit should have stipulated to a noninfringement judgment in this case after the *Markman* Order issued. That is post-verdict hindsight. Implicit could have won the *NetScout* trial. It was not unreasonable at the time of the *Markman* Order for Implicit to try this case, as subsequent events confirmed: (1) the Court reviewed the infringement evidence on the "execute" and "convert" terms and found it sufficient to warrant a trial; and (2) NetScout itself did not lodge any pretrial attack on the "sequence of routine" limitations and let the issue get tried. Entering the *Sandvine* stipulation after the *NetScout* verdict does not rewrite that history and make this an exceptional case.

### C. The Parties' Conduct Weighs Against an Exceptional Case Finding

The conduct of the parties also weighs against an exceptional finding in this case. *Packet Intelligence LLC v. Sandvine Corp.*, No. 2:16-CV-00147-JRG, 2018 U.S. Dist. LEXIS 230932, at *13-15 (E.D. Tex. Sep. 7, 2018) (considering a number of objective criteria). Overall, this was a case in which counsel worked in a cooperative fashion to avoid and resolve side disputes and focus on the merits. There was only one discovery motion that Implicit raised (which was then resolved and submitted to the Court via a Joint Motion, Dkt. 122, at 3–4). NetScout did not bring a discovery or sanctions motion against Implicit. There were no emergency motions. There were fairly limited disputes at the pretrial conference. The parties resolved all exhibit disputes. There were few disputes at trial requiring the Court's time outside the presence of the jury. Implicit litigated this case in a reasonable manner, and NetScout's Motion does not assert otherwise.

There are also additional circumstances that further weigh against an exceptional case finding. First, NetScout raised a resource-intensive invalidity defense, including re-plowing the validity grounds already considered and decided by the Patent Office—only to drop its entire

11

invalidity case less than two weeks before trial started. *See* Dkt. 211 (Stipulation). Had Implicit prevailed at trial, this conduct could have weighed in favor of an exceptional-case finding in Implicit's favor. *Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 745 (E.D. Tex. 2019) (finding that "[d]efendants' continued assertion of claims and defenses and belated streamlining of issues wasted significant resources" and supported a finding of exceptionality).

NetScout's invalidity case consumed more resources than a typical case. NetScout deposed approximately 10 third-party witnesses related to this defense, which outnumbered the number NetScout-produced witnesses. NetScout also produced over 300,000 pages of invalidity-related documents—about three times the amount of NetScot's own production. NetScout's exhibit list likewise contained almost three times the number of exhibits relating to invalidity as compared to noninfringement. Dkt. 191-7 (showing over 350 invalidity exhibits), 191-8 (showing about 120 rebuttal exhibits). Dr. Jeffay served a near-500-page invalidity report that required a response. The invalidity case required a lot of work, and Implicit prepared to defend the validity of its Patents at trial. NetScout then dropped its invalidity case right before trial.

NetScout's invalidity case also re-plowed much of the same ground that the Patent Office and prior defendants went down when assessing the validity of the Implicit Patents. The Patent Office has thoroughly examined the Implicit Patents and has reexamined patents from the same patent family. The Implicit Patents cite in the neighborhood of 400 references on their face. Despite that, NetScout relied on references that the Patent Office had already considered and discussed in allowing the Patents, such as Mosberger (SCOUT) and Decasper. And many of the third-party witnesses that NetScout deposed had already been deposed in prior Implicit cases. NetScout deposed Dr. Decasper even though he had already been deposed twice in prior Implicit

12

████████████████████████████████████

cases. *E.g.*, Ex. B, at 202:11–17. NetScout also re-deposed former Implicit personnel, including an accountant that worked at the company from 1996–97. *E.g.*, Ex. C, at 7:3–18, 9:25–12:2.

Much of this effort was unnecessary and duplicative. It then became a deadweight loss when NetScout dropped its invalidity defenses right before trial. *See Packet Intelligence*, 2018 U.S. Dist. LEXIS 230932, at *14 (finding that defendant's dropping of on-sale bar and inequitable conduct defenses at the close of fact discovery and its dropping of a Section 101 defense before trial were objective criteria that weighed against an exceptionality finding).

Second, NetScout submitted declarant testimony that was, at most, misleading and not accurate. In seeking summary judgment, NetScout submitted a ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Mr. Curtin testified at trial, however, that the packet's application data (*e.g.*, SIP application data) for a number of packets is copied over ***without*** the Ethernet header (and without the IP or TCP headers) during reassembly processing in the GeoProbe. Trial Tr. 12/11/2019 P.M., at 33:4–14 ("Q. And it's copied over without the ethernet header? A. That's correct."); *see also* Dkt. 249, at 5.[2]

---

[2] NetScout's counsel also submitted declarations on behalf of Sandvine with similar issues. *See, e.g.*, Dkt. 178, at 5–6. Counsel also submitted a declaration from Sandvine's general counsel in support of a motion to dismiss that swore that "Sandvine . . . does not maintain an office in the United States" and that "Sandvine has never maintained, owned, or rented any offices, real estate, or any other physical space in Texas." Dkt. 18-2, at ¶¶ 4, 8. ████████████████ ████████████████████████████████████████████████████████████

████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████

Third, NetScout presented arguments at trial that weigh against finding this case exceptional, which are laid out in Implicit's post-trial motions (Dkt. 249, at 9–15). For example, NetScout solicited evidence that its products were different than the Implicit Patents because the NetScout products are not "end systems," a restriction of the claims that the Court rejected in the *Markman* Order. *See id.* at 14 (reproducing Dkt. 111, at 34). NetScout also presented Figure 3.6 from the Mosberger (SCOUT) reference as a "demonstrative" right at the close of the evidence to argue noninfringement—despite its stipulating that it would not present the reference without approaching the Court first if Implicit opened the door. *See id.* at 14–15 (quoting Dkt. 211, at 1). While this conduct forms the basis of a new trial, it also weighs against an exceptionality finding.

      **D.**      **If the Court Does Not Deny NetScout's Motion on the Merits, Implicit Respectfully Requests That the Court Deny the Motion Without Prejudice Pending the Exhaustion of Any Appeals**

The Advisory Committee notes to Rule 54 allows a Court to defer ruling on a motion for attorney fees until after an appeal is completed. It states that that "[i]f an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved." Advisory Committee Notes on 1993 Amendments to Rule 54. The *Sandvine* case is already on appeal, and it is expected that this case will likely go up

14

on appeal as well after resolution of post-trial motions. Resolution of those appeals may affect the exceptional case analysis, including whether NetScout remains the prevailing party. Implicit submits that the Court should deny NetScout's Motion on the merits. In the alternative, Implicit respectfully requests that the Court deny the Motion without prejudice and address any Section 285 Motion after the exhaustion of all appeals.

V.  CONCLUSION

For these reasons, Implicit respectfully requests that the Court deny NetScout's Motion.

Dated: January 24, 2020

Respectfully submitted,

By: /s/ Christian Hurt

William E. Davis, III (TX Bar No. 24047416)
Christian J. Hurt (TX Bar No. 24059987)
Edward Chin (Of Counsel)
(TX Bar No. 50511688)
Debra Coleman (Of Counsel)
(TX Bar No. 24059595)
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas  75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
Bdavis/churt/echin/dcoleman@bdavisfirm.com

*Counsel for Plaintiff Implicit, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(V).  Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email on this 24th day of January, 2020.

/s/ Christian Hurt
Christian Hurt

