**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:18-CV-00053-JRG |
| | § | |
| NETSCOUT SYSTEMS, INC., | § | **FILED UNDER SEAL** |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant NetScout System, Inc.'s ("NetScout") Motion for Attorneys'
Fees Under 35 U.S.C. § 285 (the "Motion"). (Dkt. No. 248.) Having considered the briefing, case
record, and relevant authorities, the Court is of the opinion that the Motion should be **DENIED**
for the reasons set forth herein.

## I.    BACKGROUND

Plaintiff Implicit, LLC ("Implicit") brought suit against NetScout for patent infringement
on March 8, 2018. (Dkt. No. 1.) Implicit alleged that NetScout infringed U.S. Patent Nos.
8,694,683 (the "'683 Patent"); 9,270,790 (the "'790 Patent"); and 9,591,104 (the "'104 Patent")
(collectively, the "Asserted Patents"). (*Id.* ¶ 8.) The Asserted Patents relate to a "method and
system for data demultiplexing." (*Id.* ¶¶ 9, 11, 13.) Concurrent with this action, Implicit brought a
parallel suit against Sandvine Corporation ("Sandvine") for infringing the Asserted Patents (the
"*Sandvine* Action"). (Case No. 2:18-cv-00054-JRG, Dkt. No. 1.)

On April 11, 2019, the Court held a Claim Construction Hearing in both the above-
captioned action and the *Sandvine* Action in which the Court construed seven groups of disputed
claim terms. (*See* Dkt. No. 111.) Included in these constructions were the terms "execute a

Transmission Control Protocol (TCP)" and "convert one or more packets having a TCP format into a different format." (*Id.* at 23, 29.) In its construction of these terms, the Court found that the claim terms required operation on the packets' *outermost* header. (*Id.* at 29, 36.) Additionally, the Court construed "sequence of [two or more] routines" to mean "an ordered arrangement of [two or more] software routines that was not selected from a set of arrangements created before receiving a first packet of the message." (*Id.* at 14.)

Beginning on December 9, 2019, the Court conducted a week-long jury trial which concluded when the jury returned a unanimous verdict of noninfringement in favor of NetScout. (Dkt. No. 222; Dkt. No. 225.) The Court then entered a Final Judgment in accordance with the jury's unanimous verdict. (Dkt. No. 225.)

The *Sandvine* Action was set for trial the week after the trial in this case. However, following the jury's verdict in this action, Implicit filed a Joint Stipulation and Proposed Final Judgment of Non-Infringement in the *Sandvine* Action (the "Sandvine Stipulation"). (Case. No. 2:18-cv-00054-JRG, Dkt. No. 17.) There, Implicit and Sandvine stipulated that under the Court's Claim Construction Order Sandvine did not infringe the Asserted Patents. (*Id.*)

NetScout filed the instant Motion arguing that Implicit's infringement claims were premised on theories that ignored or mischaracterized this Court's Claim Construction Order, and as such, Implicit prolonged this case in bad faith when it could not have reasonably expected success on the merits. (Dkt. No. 248 at 2–3.) Moreover, NetScout contends that Implicit should have stipulated to noninfringement following the Court's Claim Construction in the same fashion it did in the *Sandvine* Action. As such, NetScout seeks an award of its attorneys' fees and costs from the time that the Court issued its Claim Construction Order on April 15, 2019. (*Id.* at 14.)

## II.     LEGAL STANDARD

In "exceptional cases," a district court "may award reasonable attorney fees to the prevailing party" pursuant to the Patent Act. 35 U.S.C. § 285. An "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) (noting that "the word 'exceptional' in § 285 should be interpreted in accordance with its ordinary meaning" (citing *Octane Fitness*, 134 S. Ct. at 1755)). Notably, it is not necessary that the litigation conduct at issue be independently sanctionable, e.g., because it involves bad faith or some other misconduct. *See id*. at 1756–57 (holding that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees").

The Supreme Court has been clear that district courts must determine whether any particular case is "exceptional" in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. Whether a case is "exceptional" or not "is a factual determination," *Forcillo v. Lemond Fitness, Inc.*, 168 F. App'x 429, 430 (Fed. Cir. 2006), and the court must make its discretionary determination by a "preponderance of the evidence." *Octane Fitness*, 134 S. Ct. at 1758 (rejecting the prior requirement that a patent litigant establish its entitlement to fees under § 285 by "clear and convincing" evidence). A district court's determination of whether a case is "exceptional" under § 285 is reviewed for an abuse of discretion. *See Highmark Inc.*, 134 S. Ct. at 1748; *see also Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d

1371, 1374 (Fed. Cir. 2017) ("On appeal, all aspects of a district court's § 285 determination are reviewed for an abuse of discretion." (citation omitted)).

In assessing the "totality of the circumstances," courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.9 (1994)) (addressing a similar fee-shifting provision in the Copyright Act). While a party's conduct need not be independently sanctionable to warrant an award of fees under § 285, *Id.* at 1756–57, fee awards should not be used "as a penalty for failure to win a patent infringement suit." *See id.* at 1753 (quotation omitted); *see also Checkpoint Sys., Inc.*, 858 F.3d at 1376.

While an exceptional case finding is no longer constrained to "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement," *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002), "the absence of such conduct also weighs against an award" of fees under § 285. *AstraZeneca AB v. Aurobindo Pharma Ltd.*, 232 F. Supp. 3d 636, 649 (D. Del. 2017).

## III.   DISCUSSION

There is no dispute that NetScout is the prevailing party in this case, (*see* Dkt. No. 225). As such, the Court proceeds to consider "whether [this] case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1757.

NetScout moves for attorneys' fees on two grounds: (1) Implicit pursued trial infringement theories on two distinct asserted claim requirements that were precluded by the Court's Claim

Construction Order and (2) Implicit should have stipulated to non-infringement and appealed the Court's Claim Construction Order as it did in the *Sandvine* Action.

**A. Implicit's Infringement Theories Were not Objectively Unreasonable.**

*1. Implicit's Characterization of the Outermost Header of a Packet*

NetScout contends that Implicit put forth frivolous and objectively unreasonable infringement theories at trial in view of the Court's Claim Construction Order. (Dkt. No. 248 at 3.) First, NetScout argues that Implicit ignored or mischaracterized the Court's claim constructions of "execute TCP" and "converting."[1] (*Id.*)

The Court construed "convert packets having a TCP format into a different format" as "convert the outermost header structure of the packet(s) from TCP to another type of header structure." (Dkt. No. 111 at 29.) However, NetScout contends Implicit's infringement theory at trial ignored this construction by arguing "that each NetScout product infringed the 'execute TCP' and 'converting' limitations because each of the [a]ccused [p]roducts created a made-up '*representation of* the packet' using a pointer . . . ." (Dkt. No. 248 at 4 (emphasis in original) (quoting Dkt. No. 230 at 22:15–18).) NetScout contends that Implicit could not find a packet that actually satisfied the Court's claim construction, so it argued that operation on "a representation of the packet" satisfied the Court's claim construction. (*Id.* at 5.)

NetScout further argues that Implicit mischaracterized the Court's claim constructions by presenting evidence at trial that the outermost header of the packet is determined at the time the

---

[1] The "execute" and "convert" terms include the following: "execute a Transmission Control Protocol (TCP)"; "executable to perform a Transmission Control Protocol (TCP)"; "execute a second, different protocol"; "execute a third, different protocol"; "execute a Transmission Control Protocol (TCP) to process packets having a TCP format"; "execute TCP to process at least one of the subsequent packets having a TCP format"; "execute a second protocol to process packets having a format other than the TCP format, wherein the second protocol is an application-level protocol"; "another session associated with a different protocol that is executed, wherein the different protocol corresponds to the different format"; "convert one or more packets having a TCP format into a different format"; "convert one of the packets of the message into a different format"; "convert one or more packets in a transport layer format into a different format"; and "convert packets of the different format into another format." (Dkt. No. 111.)

software executes a Transmission Control Protocol. (*Id.* at 7.) Specifically, NetScout complains as to Implicit's technical expert who testified: "[t]he Court's construction is -- is operating on the outermost header, but if you apply those -- those constructions in the context of the limitation, it needs to be the outermost header when you are executing a Transmission Control Protocol." (*Id.* (quoting Dkt. No. 230 at 53:24–54:3)) NetScout contends that this evinces an effort by Implicit to circumvent the Court's claim construction, and even though the jury was not persuaded, such renders this case exceptional. (*Id.* at 8.)

Implicit responds that its infringement theories concerning the "execute" or "convert" claims did not violate the Court's Claim Construction Order. In fact, Implicit says it elicited testimony from its technical expert, Dr. Kevin Almeroth ("Dr. Almeroth"), that properly applied the Court's constructions. (Dkt. No. 258 at 4; Dkt. No. 266 at 1–2.) Specifically, Dr. Almeroth testified that the packet that is being operated on during the TCP routine is a packet with an outermost header of TCP. (Dkt. No. 258 at 4–5.) As such, Implicit contends that the testimony of its expert provides no basis for an exceptional case finding. (*Id.* at 6.)

The crux of the dispute between the parties is whether Dr. Almeroth defied the Court's Claim Construction Order by testifying the accused products create a *representation of the packet* where the outermost header of that representation is TCP. In the Court's Claim Construction Order, the Court rejected the notion that the conversion of packets from one format to another could be achieved "merely" by moving a reference. (Dkt. No. 111 at 27.) However, that rejection did not preclude the possibility that a pointer could create a *new packet* whose outermost header was different from the packet on which the pointer previously operated. In other words, testimony stating that the outermost header of a packet could be determined by moving a reference would

contradict the Claim Construction Order, but testimony stating that a new packet was created by a pointer would not contradict the Claim Construction Order.

The Court is not persuaded that Dr. Almeroth's testimony contradicted the Court's Claim Construction Order such that this case is exceptional.[2] Dr. Almeroth testified that the accused products "create a structure . . . where the TCP header is the outermost header . . . it's creating representations of the packet where the corresponding headers are the outermost header." (Dkt. No. 230 at 24:1–3, 27:7–9.) This testimony hews more closely to testimony that a new *structure* or packet was created by a pointer and that new packet's outermost header is TCP. Implicit was clear about this at the pretrial conference when questioned by the Court:

> **COURT:** Well, are you telling me that what is the outermost packet is determined from the perspective of a pointer?
>
> **IMPLICIT'S COUNSEL:** No. It's determined from the perspective of the routines that process packets up the protocol stack. . . Now, the way you get ***that packet*** is you use -- you use a pointer -- in some cases, two pointers to pull it down.

(Dkt. No. 206 at 46:19–24; 47:7–9 (emphasis added).)

The Court finds that Dr. Almeroth's testimony was not inconsistent with the above representations. Accordingly, the Court is not persuaded that Dr. Almeroth's testimony in this regard was in contravention of the Court's Claim Construction Order such that it would serve as a basis for finding this case exceptional. Zealous advocates within the crucible of a jury trial often live or die by fine and narrow distinctions which are ultimately decided by that jury. The reality that the parties' competing positions were factually narrow or close does not mean the party who did not prevail engaged in exceptional conduct. Exceptionality should not

---

[2] The Court is not blind to the fact that at times Dr. Almeroth's testimony was not flawlessly faithful to the Court's Claim Construction Order. (*See* Dkt. No. 230 at 28:2–5 (". . . using a pointer to the header so that the first byte of that pointer points to the TCP packet, making it the outermost packet.").) However, the Court is not persuaded that this alone was a deliberate attempt to side-step the Claim Construction Order, and as such, NetScout has not met its burden in this regard.

be judged primarily through the rear view mirror of an after-the-fact result, especially when the positions of the parties at trial were narrowly distinct. Such is the case here.

### 2. *Implicit's Theory of Infringement Based on Disclaimed Subject Matter*

Second, NetScout argues that Implicit pursued a theory of infringement based on subject matter that was disclaimed during patent prosecution with such disclaimer serving as a source for the Court's claim construction of "sequence of routines." (Dkt. No. 248 at 8.) The Court construed "sequence of [two or more] routines" to mean "an ordered arrangement of [two or more] software routines that was not selected from a set of arrangements created before receiving a first packet of the message." (Dkt. No. 111 at 14.)

NetScout argues that the accused products have a pre-created arrangement of routines, such that all paths are pre-created in the accused products. (Dkt. No. 261 at 3.) NetScout also contends that Implicit disclaimed systems using pre-created paths during patent prosecution but then made the conscious decision to accuse NetScout's pre-created sets of arranged software routines of infringement. (Dkt. No. 248 at 12.) As such, NetScout says that Implicit's argument of infringement under this theory was frivolous, unreasonable, and supports a finding that this case is exceptional. (*Id.* (citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 917–18 (Fed. Cir. 2012) (affirming exceptional case finding because plaintiff subjectively knew it had no basis for a claim where it represented to the PTO that the claims exclude certain material)).)

Implicit responds that its evidence for "sequence of routines" did not violate the Court's Claim Construction Order and NetScout's failure to object to Implicit's evidence confirms that no such violation occurred. (Dkt. No. 258 at 6.) Implicit argues that NetScout's characterization of the Court's Claim Construction Order in this regard is inaccurate because the Court found that "[t]he patentee did not disclaim the existence of software routines prior to receiving a first packet

of a message. The patentee explained that the claimed invention uses software routine arrangements that were not created prior to receiving a first packet of the message." (*Id.* at 6–7 (quoting Dkt. No. 111 at 13).)

Additionally, Implicit contends that its evidence followed the Court's construction. (*Id.* at 7.) Specifically, Implicit explains that the data structure that indicates an ordered arrangement of software routines for a message is the flow-table entry and the accused products do not create such a table until after the first packet arrives. (*Id.*) Implicit says it did not disclaim that individual routines located within a flow-table entry may exist before the first packet arrives. (*Id.*) In short, Implicit argues it disclaimed systems that pre-create paths for packets to follow but did not disclaim systems, like the accused products, which do not fill out the flow-entry table before receiving any packets. (*Id.* at 8.) As such, Implicit argues its infringement theories did not violate the Court's Claim Construction Order and do not render this case exceptional. (*Id.* at 10.)

As an initial matter, it is worth noting that NetScout failed to move for summary judgment on this issue, and such decision by NetScout suggests that it did not always view this theory of infringement as frivolous. *See Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 WL 6756304, at *5 (E.D. Tex. Aug. 6, 2014) ("There is little injustice in forcing Intel to bear its own attorney's fees for defending a claim it did not challenge on summary judgment."). Further, the Court agrees with Implicit's characterization of the Court's findings of disclaimer in the Court's Claim Construction Order. Implicit "did not disclaim the *existence* of software routines prior to receiving a first packet of the message." (Dkt. No. 111 at 13 (emphasis in original).) Implicit only disclaimed systems that contain pre-defined paths existing prior to receiving the first packet. (*See id.* at 12–13.)

The Court finds that Implicit's evidence at trial was consistent with this disclaimer. Dr. Almeroth testified that: "[t]he difference between a possible path and a created path is that the created path includes information about what branch to actually take." (Dkt. No. 237 at 101:10–12.) Also, Implicit sought to elicit testimony distinguishing the accused products from the disclaimed subject matter. (*Id.* at 101:18–21 ("[the accused products] have a set of possible paths, and then when packets are received, the exact processing modules that need to be used to process that packet is created *at that point in time*.") (emphasis added).) Such persuades this Court that, Implicit was not consciously attempting to base its infringement theory on the disclaimed subject matter.

Moreover, NetScout argued to the Court at trial that Dr. Almeroth's infringement theory covered the disclaimed subject matter and the Court gave it leave to pursue this argument on cross-examination. (Dkt. No. 237 at 111:7–13.) Despite this, Dr. Almeroth continued to testify on cross-examination that code selecting a *pre-created path* does not infringe. (*Id.* at 117:3–118:15.) Finally, in summarizing the evidence to the jury, Implicit's counsel characterized the evidence consistent with the infringement theory that the paths could not be pre-created. (Dkt. No. 240 at 42:19–23 ("NetScout doesn't dispute that its products have the flow tables, that they have flow entries, that those flow entries get populated after the first packet arrives with determining the protocol, determining the application.").) Accordingly, Implicit's infringement theory put forward at trial did not encompass what was earlier disclaimed. Such conduct is not objectively unreasonable and does not cause the case to be exceptional.

**B.  Implicit's Stipulation in the *Sandvine* Action Does not Make this Case Exceptional.**

Finally, NetScout argues that Implicit's decision to stipulate to non-infringement in the *Sandvine* Action after losing at trial in this action is evidence that Implicit knew its theories were objectively weak and supports a finding that this case is exceptional. (Dkt. No. 248 at 13.)

Implicit responds that its decision to enter a stipulation in the *Sandvine* Action is not an indication that Implicit believed its infringement case to be exceptionally weak. (Dkt. No. 258 at 10.) Implicit contends that it considered that the *Sandvine* Action had less than ten percent of the exposure of this action and given the jury's verdict in this case, it was reasonable for Implicit to conserve resources and allow for an appeal of the legal issues in the *Sandvine* Action. (*Id.*) Implicit argues that such a decision does not convert this into an exceptional case. (*Id.* at 11.) The Court agrees.

Implicit's post-verdict decision to enter a stipulation of non-infringement in a companion case cannot be fairly viewed to establish that Implicit was frivolous or unreasonable in proceeding to trial in this case against NetScout. To do so would put that party in the unenviable position of deciding whether to waste judicial resources in one case in an attempt to avoid an exceptional case finding in another case. The Court finds that the Sandvine Stipulation does not support an exceptional case finding in this case.

**C.  The Parties' Other Conduct Weighs Against Finding an Exceptional Case.**

As an additional matter for the Court to consider, Implicit argues that the parties' conduct throughout this litigation weighs against an exceptional case finding. (Dkt. No. 258 at 11.) Implicit notes that there were no emergency motions, fairly limited disputes at the pretrial conference, no exhibit disputes that required court resolution, and very few disputes at trial requiring the Court's time outside the presence of the jury. (*Id.*) Implicit further argues that NetScout's conduct in (1)

raising a resource-intensive invalidity defense which it dropped less than two weeks before trial and (2) submitting misleading declarant testimony in conjunction with a motion for summary judgment might have supported an exceptional case finding against NetScout had Implicit prevailed at trial (*Id.* at 11–13.)

NetScout replies that the parties' litigation conduct in this case has no impact on whether an exceptional case finding is warranted. (Dkt. No. 261 at 4.) NetScout argues that the Motion is premised on Implicit's objectively weak claims, not on improper conduct during litigation. (*Id.*) Further, NetScout's decision to drop its invalidity defense was not for improper purposes but was based on practical considerations, including the availability of third-party witnesses for trial and the amount of time designated for trial. (*Id.* at 4–5.) NetScout also argues that it did not submit a misleading declaration in support of a motion for summary judgment. (*Id.* at 5.)

The Court agrees with Implicit that the parties' conduct during the entirety of this litigation should be considered, and such weighs against an exceptional case finding. Throughout this litigation, and in particular during the course of trial, the parties worked to resolve disputes without court intervention. In total, the Court found the parties' efforts during trial to be highly commendable. Such is not always the case, as the Court knows all too well.

In view of both parties' commendable efforts during development of this case and at trial, and given the fact that the Court is not otherwise persuaded that Implicit's continuation of this case through the return of a verdict merits an exceptional case finding, the Court need not consider whether NetScout's conduct in dropping its invalidity defense late in the case and the submission of a possibly misleading expert declaration during dispositive motion practice further supports the Court's ultimate decision.

## IV.    CONCLUSION

Based on the foregoing and carefully considering the totality of the circumstances before it throughout this case, the Court finds that this is not an exceptional case, and an award of attorneys' fees to NetScout is not warranted. Accordingly, NetScout's Motion for Attorneys' Fees Under 35 U.S.C. § 285 (Dkt. No. 248) is **DENIED**. It is **ORDERED** that this ruling is **PROVISIONALLY SEALED**. The parties shall file joint proposed redactions, with explanations for the necessity of such redactions, within seven (7) days, after which the Court will enter a redacted and public version hereof on the docket.

So ORDERED and SIGNED this 3rd day of June, 2020.

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

13